ACCEPTED
15-25-00104-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
10/8/2025 4:44 PM
CHRISTOPHER A. PRINE
CLERK

**NO. 15-25-00104-CV**

IN THE FIFTEENTH COURT OF APPEALS AUSTIN, TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
10/8/2025 4:44:43 PM
CHRISTOPHER A. PRINE
Clerk

_____

PUBLIC UTILITY COMMISSION, *et al.*, Appellants

v.

CITY OF FULSHEAR, Appellee

_____

On appeal from the 53rd District Court of Travis County, Texas

_____

**BRIEF OF APPELLANT
NORTH FORT BEND WATER AUTHORITY**

_____

ANDREW S. "DREW" MILLER
State Bar No. 00786857
drew.miller@kempsmith.com
KEMP SMITH LLP
2905 San Gabriel St., Suite 205
Austin, TX  78705
(512) 320-5466
(512) 320-5431 (fax)

**ATTORNEYS FOR APPELLANT
NORTH FORT BEND WATER
AUTHORITY**

ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.1(a), the following is a complete list of all parties to this litigation, and the names and addresses of all counsel.

**Parties to the Trial Court's Judgment:**

| Name of Party | Designation in the Trial Court | Counsel |
|---|---|---|
| City of Fulshear | Plaintiff | C. Joe Freeland<br>State Bar No. 07417500<br>MATHEWS & FREELAND, LLP<br>2105 East MLK Jr. Blvd<br>Austin, Texas 78702<br>Telephone: (512) 404-7800<br>Facsimile: (512) 703-2785<br>jfreeland@mandf.com |
| Public Utility Commission of Texas | Defendant | Jordan Pratt<br>Assistant Attorney General<br>State Bar No. 24140277<br>Environmental Protection Division<br>Office of the Attorney General<br>P.O. Box 12548, MC-066<br>Austin, Texas 78711-2548<br>512-463-2012 tel.<br>512-320-0911 fax<br>Jordan.Pratt@oag.texas.gov |
| North Fort Bend Water Authority | Defendant-Intervenor | Andrew. S. "Drew" Miller<br>State Bar No. 00786857<br>Kemp Smith LLP<br>2905 San Gabriel St., Suite 205<br>Austin, Texas 78705<br>512-320-5466 tel.<br>512-320-5431 fax<br>drew.miller@kempsmith.com |

**Parties in the Court of Appeals:**

| Party | Designation in Court of Appeals | Counsel |
|---|---|---|
| Public Utility Commission of Texas | Appellant | Jordan Pratt<br>Assistant Attorney General<br>State Bar No. 24140277<br>Environmental Protection Division<br>Office of the Attorney General<br>P.O. Box 12548, MC-066<br>Austin, Texas 78711-2548<br>512-463-2012 tel.<br>512-320-0911 fax<br>Jordan.Pratt@oag.texas.gov |
| North Fort Bend Water Authority | Appellant | Andrew. S. "Drew" Miller<br>State Bar No. 00786857<br>Kemp Smith LLP<br>2905 San Gabriel St., Suite 205<br>Austin, Texas 78705<br>512-320-5466 tel.<br>512-320-5431 fax<br>drew.miller@kempsmith.com |
| City of Fulshear | Appellee | C. Joe Freeland<br>State Bar No. 07417500<br>Mathews & Freeland, LLP<br>8140 N. MoPac Expy., Suite 4-240<br>Austin, Texas 78759<br>512-404-7800 tel.<br>512-703-2785 fax<br>jfreeland@mandf.com |

**TRIAL JUDGE:**

The Honorable Maya Guerra Gamble
1700 Guadalupe, 11th Floor
Austin, TX 78701
512-854-9384 tel.
512-854-9338 fax

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ..................................................................i

TABLE OF CONTENTS........................................................................................iv

INDEX OF AUTHORITIES................................................................................ viii

ABBREVATIONS AND RECORD REFERENCES ........................................... xiii

STATEMENT OF THE CASE.............................................................................xvi

STATEMENT REGARDING ORAL ARGUMENT ......................................... xvii

ISSUES PRESENTED...................................................................................... xviii

STATEMENT OF FACTS ......................................................................................1

    Background.......................................................................................................1

        A.    The Fort Bend Subsidence District and the Control and
              Prevention of Subsidence in Fort Bend County..........................1

        B.    NFBWA and its Role with Respect to the Subsidence ..............2

        C.    NFBWA's GRP Fee ..................................................................4

        D.    In return for paying the GRP Fee, NWBWA's GRP
              Participants achieve collective compliance with FBSD's
              groundwater reduction requirements. ........................................5

        E    NFBWA is Designated as "Permittee" on Permits for
              Wells Owned and Operated by its GRP Participants
              as a Regulatory Tracking Tool...................................................6

    Procedural History ..........................................................................................7

        A.    NFBWA Increases its GRP Fee....................................................7

B. Fulshear files its Petition with the Commission .........................7

C. The Commission "bifurcates" the agency proceeding ...............7

D. NFBWA's Motion to Dismiss and the ALJ's First PFD............8

E. The Commission's Remand Order adopted the First PFD in part, rejected it in part, and remanded the proceeding to SOAH ....................................................................................10

F. Agency Proceedings Following Remand .................................11

G. Commission's Final Order .......................................................13

H. Fulshear's Motion for Rehearing.............................................13

I. Fulshear's Lawsuit in District Court ........................................14

J. The District Court's Final Judgment and Order .......................15

K. This appeal was timely perfected .............................................16

SUMMARY OF THE ARGUMENT .........................................................16

ARGUMENT ..............................................................................................19

I. Standard of Review....................................................................19

II. It was established in the proceeding below that Fulshear does not receive water from NFBWA ....................................................23

III. Fulshear does not receive groundwater from NFBWA by pumping its own groundwater from its own wells .....................................26

IV. The GRP Fee is not a rate or fee paid for groundwater.............29

V. Fulshear does not receive water service from NFBWA and does not pay NFBWA for water service.......................................30

v

A.   Fulshear does not receive *water service* from NFBWA .....................32

    1.   NFBWA does not perform any act for Fulshear pursuant to a duty under Chapter 13 ........................................................32

    2.   NFBWA does not "furnish" or "supply" anything (including water) to Fulshear ......................................................34

    3.   NFBWA does not use and has not committed facilities or lines to deliver water to Fulshear generally or in performance of any duty under Chapter 13 ........................................................36

B.   Fulshear does not pay NFBWA for water service ..............................39

C.   The Commission's determination that Fulshear does not receive water service from NFBWA should be given consideration .............39

VI.   The Commission's finding that Fulshear does not receive water service from NFBWA is rationally connected to facts in the record and therefore not arbitrary and capricious .........................................................40

A.   The Commission's finding is rationally connected to facts in the record even though Fulshear is a member of a group of GRP Participants some of whom receive surface water from NFBWA .................................................................42

B.   The Commission's finding is rationally connected to facts in the record despite evidence suggesting that NFBWA has constructed facilities that might someday be used to provide surface water to Fulshear.................................................................45

C.   The Commission's finding is rationally connected to facts in the record even though NFBWA is listed as "permittee" on permits issued by FBSD.................................................................46

VII.   The Commission's conclusion that Fulshear does not receive water service from NFBWA is supported by substantial evidence in the record................48

VIII. The Commission has correctly refused to assert jurisdiction over a matter for which the Legislature has not authorized it to hear via clear and express statutory language .................................................................................52

PRAYER ................................................................................................................53

CERTIFICATE OF COMPLIANCE .......................................................................55

CERTIFICATE OF SERVICE ................................................................................56

APPENDICES

Appendix 1 (Necessary Items)
    Tab A    Final Order of the Commission (AR 86)
    Tab B    Trial Court Judgment (CR 622-23)
    Tab C    Tex. Water Code § 13.043(f)
    Tab D    Tex. Water Code § 13.002(21)

Appendix 2 (Optional Items)

    Tab A    List of Stipulated Facts and Motion to Admit Evidence (AR 64)
    Tab B    North Fort Bend Water Authority Enabling Act (TEX. SPEC. DIST. LOCAL LAWS CODE §§ 8813.001-.151)
    Tab C    Affidavit of Matthew L. Froehlich, P.E. (dated 12-15-2022) (AR 106)
    Tab D    NFBWA's Amended Rate Order (AR 93)
    Tab E    First Proposal for Decision (AR 46)
    Tab F    Proposal for Decision on Remand (AR 74)
    Tab G    Fulshear's Motion for Rehearing (AR 88)
    Tab H    Fort Bend Subsidence District Water Well Permit (AR 96)

# INDEX OF AUTHORITIES

## <u>CASES</u>

*In re Centerpoint Energy Houston Electric, LLC*,
629 S.W.3d 149 (Tex. 2021)......................................................................53

*Chaves v. State*, 630 S.W.3d 541
(Tex. App.–Houston [1st Dist.] 2021, no pet.) .......................................49

*Citizens Against Landfill Location v. Tex. Com'n on Env't Quality*,
169 S.W.3d 258 (Tex. App.–Austin 2005, pet. denied) ..........................20, 21

*City of El Paso v. Publ. Util. Com'n of Tex.*, 883 S.W.2d 179
(Tex. 1994)...........................................................................................20, 22, 41

*City of San Marcos v. Texas Com'n on Envir. Qual,*
128 S.W.3d 264 (Tex. App.–Austin 2004, pet. denied) .........................27

*City of Waco v. Texas Com'n on Envt'l Quality*,
346 S.W.3d 781 (Tex. App.–Austin 2011), *rev'd on other grounds*,
413 S.W.3d 409 (2013) ...........................................................................22, 41

*Dyer v. Texas Com'n on Envir. Qual.,* 646 S.W.3d 498 (Tex. 2022) ............22

*Edwards Aquifer Auth. v. Day,* 369 S.W.3d 814 (Tex. 2012) .......................27

*Employees Retirement System of Texas v. Garcia,*
454 S.W.3d 121 (Tex. App.–Austin 2014, pet. denied) ........................21

*In re Entergy Corp.*, 142 S.W.3d 316 (Tex. 2004)......................................53

*General Land Office v. Crystal Clear Water Supply Corp.*,
449 S.W.3d 130 (Tex. App.–Austin 2014, pet. denied) .........................10, 11

*Gerst v. Goldsbury*, 434 S.W.2d 665 (Tex. 1968)......................................23

*Heritage on San Gabriel Homeowners Ass'n v. Texas Com'n on Env'l Qual.*,

393 S.W.3d 417 (Tex. App.–Austin 2012, pet. denied) ..............................23, 42

*Jones v. Univesco, Inc.*, 529 F. Supp. 3d 627 (E.D. Tex. 2021) ...........................35

*McMullen v. Employees Retirement System of Texas,*
935 S.W.2d 189 (Tex. App.–Austin 1996, writ denied)....................................21

*Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436 (Tex. 1997) ........................34

*Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937 (Tex. 1993)......34

*New World Car Nissan, Inc. v. Hyundai Motor America,*
658 S.W.3d 754 (Tex. App.–El Paso 2022, pet. denied)..................................21

*Oncor Elec. Delivery Co. LLC v. Publ. Util. Com'n of Texas,*
406 S.W.3d 253 (Tex. App.–Austin 2013, no pet.)..........................................23

*Poindexter v. Brown,*
665 S.W.3d 842 (Tex. App.–Houston [14th Dist.] 2023, pet. denied)...............22

*Public Utility Com'n of Texas v. City Publ. Serv. Bd. of San Antonio,*
53 S.W.3d 310 (Tex. 2001).......................................................................52, 53

*Panda Power Generation Infrastructure Fund, LLC v. ERCOT,*
641 S.W.3d 893 (Tex. App.–Dallas 2022, pet. filed) ........................................52

*Railroad Com'n of Tex. v. Torch Operating Co.*, 912 S.W.2d 790 (Tex. 1995).....20

*Santulli v. Texas Bd. of Law Examiners*, No. 03-06-00392–CV,
2009 WL 961568 (Tex. App.–Austin Apr. 10, 2009, pet. denied)....................23

*Southwestern Electric Power Co. v Public Utility Com'n,*
419 S.W.3d 414 (Tex. App.–Amarillo 2011, pet. denied)................................52

*Starr County v. Starr Indus. Servs., Inc.,*
584 S.W.2d 352 (Tex. Civ. App.–Austin 1979, writ ref'd n.r.e.).....22, 23, 41, 42
*Texas Alcoholic Beverage Com'n v. Quintana,*
225 S.W.3d 200 (Tex. App.–El Paso 2005, pet. denied)..................................25

*Texas State Bd. of Dental Examiners v. Silagi*,
   766 S.W.2d 280 (Tex. App.–El Paso 1989, writ denied) .............................23, 42

*Thomas v. State*, 733 S.W.2d 675 (Tex. App.–Tyler 1987, writ ref'd) ...................35

*TJFA, L.P. v. Texas Com'n on Envir. Qual.*,
   632 S.W.3d 660 (Tex. App.–Austin 2021, pet. denied) ....................................21

**CONSTITIONAL PROVISIONS, STATUTES AND RULES**

Constitutional Provisions

TEX. CONST. Article XVI, § 59 ............................................................................2

Statutes

TEX. GOV'T CODE § 311.011(a) ...........................................................................35

TEX. GOV'T CODE § 312.005...............................................................................34

TEX. GOV'T CODE § 2001.174 .......................................................................19, 20

TEX. GOV'T CODE § 2001.174(2).........................................................................21

TEX. GOV'T CODE § 2001.1721(b).................................................................22, 40

TEX. GOV'T CODE § 2001.174(2)(E) ...................................................................18

TEX. GOV'T CODE § 2001.174(2)(F) ...................................................................22

TEX. GOV'T CODE § 2001.175(e) ........................................................................20

TEX. SPEC. DIST. LOCAL LAWS CODE §§ 8813.001-.151 ..........................................2

TEX. SPEC. DIST. LOCAL LAWS CODE § 8813.001(6).................................................3

TEX. SPEC. DIST. LOCAL LAWS CODE § 8813.002.....................................................3

TEX. SPEC. DIST. LOCAL LAWS CODE § 8813.005.....................................................3

TEX. SPEC. DIST. LOCAL LAWS CODE § 8813.008.....................................................3

TEX. SPEC. DIST. LOCAL LAWS CODE § 8813.101.....................................................3

TEX. SPEC. DIST. LOCAL LAWS CODE § 8813.103.....................................................4

TEX. SPEC. DIST. LOCAL LAWS CODE § 8813.103(b)..................................................4

TEX. SPEC. DIST. LOCAL LAWS CODE § 8813.103(g)..................................................4

TEX. SPEC. DIST. LOCAL LAWS CODE § 8813.111.....................................................3

TEX. SPEC. DIST. LOCAL LAWS CODE § 8813.112.....................................................3

TEX. SPEC. DIST. LOCAL LAWS CODE § 8813.113....................................................43

TEX. SPEC. DIST. LOCAL LAWS CODE § 8834.001(6)........................................... xiii, 1

TEX. SPEC. DIST. LOCAL LAWS CODE § 8834.003(a).......................................... xiii, 1

TEX. SPEC. DIST. LOCAL LAWS CODE § 8834.203 .............................................. xiii, 1

TEX. SPEC. DIST. LOCAL LAWS CODE § 8834.214(b)......................................... xiii, 2

TEX. SPEC. DIST. LOCAL LAWS CODE § 8834.215............................................. xiii, 1

TEX. SPEC. DIST. LOCAL LAWS CODE § 8834.215(a)(2).................................... xiii, 2

TEX. WATER CODE § 12.013 ...................................................... 8, 9, 10, 14, 24, 25

TEX. WATER CODE § 12.013(a).............................................................................13, 24

TEX. WATER CODE § 12.013(d)...................................................................................8

TEX. WATER CODE § 13.001-.151 ................................................................... xiii, 2

TEX. WATER CODE § 13.002.................................................................30, 34

TEX. WATER CODE § 13.002(19)...................................................................32

TEX. WATER CODE § 13.002(21)............................................................31, 53

TEX. WATER CODE § 13.002(23)...................................................................32

TEX. WATER CODE § 13.043 .......................................................................8, 30

TEX. WATER CODE § 13.043(f) ...........................................................*passim*

TEX. WATER CODE § 13.2541......................................................................10

TEX. WATER CODE § 36.001(1) ...................................................................30

TEX. WATER CODE § 36.116(a)(2)..............................................................30

TEX. WATER CODE § 36.205(c)....................................................................30

TEX. WATER CODE § 54.203 ........................................................................34

Court Rules

TEX. R. APP. P. 38.1 ..................................................................................i, 49

Local Rules of Civil Procedure and Rules of Decorum, Travis County
   District Courts (eff. Nov. 15, 2024), Rule 10.5(e)...............................49

**OTHER MATERIALS**

BLACK'S LAW DICTIONARY 608 (5th Ed. 1979) ........................................35

Merriam-Webster.com Dictionary (accessed Sept. 22, 2025)................35

# ABBREVIATIONS AND RECORD REFERENCES

## Abbreviations

| | |
|---|---|
| ALJ | Administrative Law Judge |
| APA | Administrative Procedure Act – Chapter 2001, Texas Government Code (Tex. Gov't Code §§ 2001.001–.902) |
| App. | Appendix |
| Chapter 13 | Chapter 13, Texas Water Code (Tex. Water Code §§ 13.001–.515) |
| COL | Conclusion of Law |
| FBSD | Fort Bend Subsidence District |
| FBSD Enabling Act | Chapter 8834, Texas Special District Local Laws Code, (Tex. Spec. Dist. Local Laws Code §§ 8834.001–.252) |
| Final Judgment and Order | CR 622-23 (Final Judgment and Order) |
| First PFD | AR 46 (Proposal for Decision) |
| FOF | Finding of Fact |
| Fulshear | City of Fulshear |
| GRP | Groundwater Reduction Plan |
| GRP Participants | Non-exempt well-owners participating in a GRP |
| NFBWA | North Fort Bend Water Authority |

| | |
|---|---|
| NFBWA Enabling Act | Chapter 8813, Texas Special District Local Laws Code (Tex. Spec. Distr. Local Laws Code §§ 8813.001–.151) |
| NFBWA's GRP | AR 94 (NFBWA's 2008 Groundwater Reduction Plan) |
| Final Order | AR 86 (Order) |
| PFD on Remand | AR 74 (Proposal for Decision on Remand) |
| SOAH | State Office of Administrative Hearings |
| PUC or Commission | Public Utility Commission of Texas |
| TAC | Texas Administrative Code |
| TWC | Texas Water Code |
| PURA | Public Utility Regulatory Act (Title 2, Texas Utilities Code) |

## **Record References**

Citations to the Clerk's Record shall be to "CR __."

Citations to the Reporter's Record shall be to "RR at __."

The PUC filed an Administrative Record in this case and one supplement to that record with the District Clerk.[1] The Administrative Record and the supplement were admitted into evidence at trial.[2] The District Court issued an order releasing the Administrative Record to the Court of Appeals and the Court of Appeals has

---

[1] *See* CR 44-54, 368-79.

[2] RR at 6-7.

acknowledged receipt of the Administrative Record and its supplement. Citations to the Administrative Record shall be to: "AR __."

**STATEMENT OF THE CASE**

| | |
|---|---|
| *Nature of Agency Proceeding* | Fulshear attempted to appeal a decision of NFBWA to increase certain fees to PUC. AR 1. |
| *Course of Proceedings before Agency* | In response to NFBWA's motion to dismiss, a SOAH ALJ issued a PFD recommending that PUC dismiss Fulshear's attempted appeal for lack of jurisdiction and for failure to state a claim upon which relief may be granted. *See* AR 46. The PUC Commissioners adopted that recommendation in part, and remanded the proceeding to SOAH, in part. *See* AR 58.<br><br>Following the filing of stipulated facts and agreed-upon exhibits, and additional briefs, the ALJ issued a *second* PFD (PFD on Remand), again recommending that the PUC dismiss Fulshear's attempted appeal for lack of jurisdiction and for failure to state a claim upon which relief may be granted. *See* AR 74.<br><br>The PUC adopted the PFD on Remand and issued its Final Order dismissing Fulshear's attempted appeal for lack of jurisdiction and for failure to state a claim upon which relief may be granted. *See* AR 86 [App. 1, Tab A]. |
| *Nature of the Case before Trial Court* | Fulshear filed an administrative appeal under the judicial review provisions of Texas' APA (TEX. GOV'T CODE §§ 2001.171-.178) against PUC, seeking the reversal and remand of PUC's final decision dismissing Fulshear's attempted appeal for lack of jurisdiction and for failure to state a claim upon which relief may be granted. *See* CR 4-29. |
| *Course of Proceedings at Trial Court* | NFBWA, respondent in the agency proceeding below, intervened in this case before the trial court as Defendant/Intervenor. *See* CR 34-37. All parties submitted briefings to the trial court and the court held a hearing on the merits. *See* CR 380-623. |

| | |
|---|---|
| *Trial Court* | 53rd Judicial District for Travis County<br>Hon. Maya Guerra Gamble presiding. |
| *Disposition* | The trial court issued a final judgment reversing and remanding the PUC's Order. *See* CR 622-23. [App. 1, Tab B] |
| *Appeal* | Both PUC (Defendant below) and NFBWA (Intervenor/Defendant below) have appealed the trial court's judgment (reversing and remanding the PUC's Order) to the Fifteenth Court of Appeals. *See* CR 624-34. |

## STATEMENT REGARDING ORAL ARGUMENT

NFBWA hereby requests that the Court grant oral argument in this appeal. Because of the unique nature of the issues presented in this appeal and because it involves an important question regarding the jurisdiction of a state agency, oral argument would be helpful to the Court in understanding the issues and in reaching a decision.

# ISSUES PRESENTED

1.      Is the Commission's conclusion that Fulshear *does not receive water service* from NFBWA for purposes of Tex. Water Code § 13.043(f) arbitrary and capricious on the ground that there is no rational connection between that conclusion and the facts in the record before the Commission?

2.      Is the Commission's conclusion that Fulshear *does not receive water service* from NFBWA for purposes of Tex. Water Code § 13.043(f) supported by substantial evidence in the record before the Commission?

# STATEMENT OF FACTS

## Background

### A. The Fort Bend Subsidence District and the Control and Prevention of Subsidence in Fort Bend County

An understanding of the issues presented in this appeal begins with an understanding of the Fort Bend Subsidence District ("FBSD") and its legislatively-mandated efforts to control and prevent subsidence in Fort Bend County.[3] "Subsidence" is "the lowering in elevation of the surface of land by groundwater withdrawal" and contributes to flooding and damage to infrastructure. *See* TEX. SPEC. DIST. LOCAL LAWS CODE § 8834.001(6).

FBSD is a political subdivision and a conservation and reclamation district created by the Texas Legislature in 1989 to regulate the withdrawal of groundwater withdrawals to prevent subsidence in Fort Bend County.[4] FBSD requires the reduction of groundwater use by well owners within its jurisdiction to control or prevent subsidence. *See id.* §§ 8834.203, 8834.215. A well owner that fails to comply with FBSD's groundwater reduction requirements must pay a "disincentive

---

[3] FBSD is not a party to in this appeal and was not a party to the agency proceeding below.

[4] AR 64 (List of Stipulated Facts and Motion to Admit Evidence) (copy included in Appendix 2 to this brief at Tab A), Stipulation No. 3; *see also* TEX. SPEC. DIST. LOCAL LAWS CODE § 8834.003(a).

1

fee" to FBSD; this fee provides an economic incentive for compliance with FBSD's regulatory requirements.[5]

Persons subject to FBSD's requirements to reduce groundwater pumping (including municipalities and water districts) may comply with FBSD's regulatory requirements (and thus avoid paying a disincentive fee) either: (1) individually; or (2) by aggregating their wells with other wells managed by an entity such as NFBWA and participating in that entity's Groundwater Reduction Plan ("GRP"). *See* TEX. SPEC. DIST. LOCAL LAWS CODE § 8834.215(a)(2); *see also id*. § 8834.214(b).

## B.    NFBWA and its Role with Respect to the Subsidence

NFBWA is a political subdivision of the State, a regional water authority, and a conservation and reclamation district created by the Texas Legislature in 2005 under Article XVI, § 59, of the Texas Constitution.[6]

NFBWA is authorized by the Texas Legislature to provide for the reduction of groundwater withdrawals to control subsidence caused by such withdrawals; acquire and develop alternative water supplies (including but not limited to surface water); and sell and deliver such water to persons and entities inside and outside of

---

[5] AR 95 (Fort Bend Subsidence District Rules), § 5.6.

[6] AR 64, Stipulation No. 4; TEX. SPEC. DIST. LOCAL LAWS CODE §§ 8813.001-.151 ("NFBWA Act") (copy included in Appendix 2 to this brief at Tab B).

2

NFBWA's boundaries. *See* TEX. SPEC. DIST. LOCAL LAWS CODE §§ 8813.002, 8813.008, 8813.101, 8813.111, and 8813.112.

Pursuant to its statutory authority, NFBWA has adopted a Groundwater Reduction Plan ("GRP").[7] As explained in this plan:

> The primary mission of [NFBWA] is to develop a strategy to comply with regulations set forth by [FBSD]. [FBSD's] regulations require water users within [NFBWA's] territory and subject to FBSD's disincentive fee to limit groundwater pumpage to a percentage of their total water demand beginning in 2013. The water supply exceeding this amount must come from an alternative supply. Typically, this supply is surface water.[8]

Water districts and municipalities located within NFBWA's boundaries (including Fulshear) had the opportunity to opt out of NFBWA's jurisdiction and from participation in NFBWA's GRP. *See* TEX. SPEC. DIST. LOCAL LAWS CODE § 8813.005. Despite having the chance to opt-out and comply with FBSD's groundwater reduction requirements on its own, Fulshear did not do so and therefore falls within NFBWA's jurisdiction and participates in NFBWA's GRP.[9]

## C.   NFBWA's GRP Fee

NFBWA is authorized to establish and impose fees, rates and other charges as necessary to fulfill its purposes and regulatory functions. *See* TEX. SPEC. DIST.

---

[7] *See* AR 94 (NFBWA's GRP); *see also* TEX. SPEC. DIST. LOCAL LAWS CODE §§ 8813.001(6), 8813.111.

[8] *See* AR 94 at 1.

[9] *See* AR 64, Stipulation No. 11; TEX. SPEC. DIST. LOCAL LAWS CODE § 8813.005.

LOCAL LAWS CODE § 8813.103. NFBWA "may charge the owner of a well located within [its] boundaries a fee or user fee according to the amount of water pumped from the well." *Id*. § 8813.103(b).

Pursuant to this authority, NFBWA has adopted a Groundwater Reduction Plan Fee ("GRP Fee"). The GRP Fee is paid by participants in NFBWA's GRP that pump their own groundwater from their own wells – and is based on the amount of groundwater pumped by that participant.[10]

NFBWA has also adopted a Surface Water Fee whereby each entity "that receives Surface Water from the Authority shall pay [NFBWA] the Surface Water Fee for surface water *received* on a monthly basis."[11]

Those GRP Participants who pay only the GRP Fee (including Fulshear) receive no surface water from NFBWA. It is uncontested that Fulshear receives no surface water from NFBWA and pays no Surface Water Fee to NFBWA.[12]

---

[10] *See* AR 106 (Affidavit of Matthew L. Froehlich, P.E.) (Dec. 15, 2022) (copy included in Appendix 2 to this brief at Tab C), ¶¶ 10, 11.

[11] *See* AR 86 at 6; *see also* TEX. SPEC. DIST. LOCAL LAWS CODE § 8813.103(g); AR 106, ¶ 12.

[12] AR 64 [App. 2, Tab B], Stipulation No. 6.

4

**D.** **In return for paying the GRP Fee, NFBWA's GRP Participants achieve collective compliance with FBSD's groundwater reduction requirements.**

As noted above, the GRP Fee is *based on the amount of groundwater* pumped by each GRP participant from its own well or wells. The GRP Fee is not a rate or fee paid *for* groundwater.

The benefit gained by the GRP Participants in return for paying the GRP Fee is that they achieve collective compliance with FBSD's groundwater reduction requirements, thus avoiding the imposition of FBSD's disincentive fee. Fulshear concedes and agrees that that the benefit that it receives from NFBWA is collective compliance with FBSD's groundwater reduction requirements.[13] By achieving collective compliance, these GRP Participants (including Fulshear) do not have to "go it alone" with respect to complying with those requirements. GRP Participants that pay the GRP Fee (including Fulshear) also receive the benefit of the control and prevention of subsidence in their region.

Other GRP participants pay a Surface Water Fee for surface water received from NFBWA. Those who pay a Surface Water Fee also receive the benefit of

---

[13] *See*, *e.g.*, CR 579-621 (Reply Brief of City of Fulshear) at 1 (stating that the primary service provided by NFBWA is collective compliance with FBSD's groundwater reductions requirements), 5 (agreeing that Fulshear receives the benefit of collective regulatory compliance from NFBWA).

collective compliance with the groundwater reduction requirements of FBSD in addition to receiving surface water.

E. **NFBWA is Designated as "Permittee" on Permits for Wells Owned and Operated by its GRP Participants as a Regulatory Tracking Tool**

NFBWA is designated as a "permittee" on permits issued by FBSD for wells owned and operated by NFBWA's GRP Participants (including Fulshear) as a regulatory tracking tool, so that NFBWA (and in turn, FBSD) can easily determine whether NFBWA's GRP Participants *as a group* are *collectively* meeting FBSD's groundwater reduction requirements. As "permittee," NFBWA is responsible for assuring that its GRP Participants are *collectively* meeting FBSD's groundwater reduction requirements.[14] NFBWA is also responsible for maintaining records on the amount of groundwater withdrawn from each permitted well owned by its GRP Participants and must provide such records to FBSD and make them available for inspection.[15]

Although designated as "permittee" on FBSD's permits issued to NFBWA's GRP Participants as a regulatory tracking tool, NFBWA does not control the

---

[14] *See* AR 95, Rule 5.3.

[15] *See id*.

amount of groundwater pumped by the well owner and does not own or operate those wells.[16]

## Procedural History

### A.     NFBWA Increases its GRP Fee

In December 2021, NFBWA issued an Amended Rate Order to increase the fees that NFBWA is authorized by the NFBWA Enabling Act to impose on certain entities within its jurisdiction, including its GRP Fee.[17] The GRP Fee was increased from $4.25 to $4.55 per 1,000 gallons of groundwater pumped.

### B.     Fulshear files its Petition with the Commission

Fulshear thereafter filed a petition with the Commission seeking to appeal NFBWA's decision to increase its fees (including its GRP Fee).[18]

### C.     The Commission "bifurcates" the agency proceeding.

After referring this matter to SOAH, the Commission issued a Preliminary Order in which it bifurcated the proceeding into two phases – "phase one to

---

[16] *See infra* at 31-32.

[17] *See* AR 1 (*Petition by the City of Fulshear Appealing the Decision of North Fort Bend Water Authority Affecting the Amount Paid for Water Service* (Mar. 16, 2022) ("*Fulshear Petition to PUC*"), Exhibit A (NFBWA Rate Order, Dec. 16, 2021) (copy included in Appendix 2 to this brief at Tab D).

[18] *See* AR 1.

7

determine whether Fulshear's appeal is properly before the Commission and phase two, if necessary, to set just and reasonable rates."[19]

The Commission then issued a Preliminary Order which identified various phase one (jurisdictional) issues and sub-issues including:

> 9.  Do the facts demonstrate that the Commission has authority under [TWC] § 12.013 to decide this appeal? In answering this issue, please address the following subissues.
> . . .
> b.  Does [NFBWA] *furnish water* to Fulshear on a wholesale basis under TWC § 12.013(d)?
>
> 10.  Do the facts demonstrate that the Commission has authority under TWC § 13.043 to decide this appeal?
>
> a.  Does Fulshear *receive water service* under TWC § 13.043(f) from [NFBWA]?
>
> b.  Did [NFBWA's] . . . decision to increase its . . . fees affect the amount Fulshear pays for water service?[20]

## D.      NFBWA's Motion to Dismiss and the ALJ's First PFD

NFBWA filed a Motion to Dismiss challenging whether Fulshear's appeal is proper under §§ 12.013 and 13.043(f), Water Code.[21] Specifically, NFBWA's Motion to Dismiss argued that: (1) because NFBWA does not *furnish* water to Fulshear, the Commission lacks *ratemaking* authority in this matter under

---

[19] AR 17 (*Preliminary Order on Phase One Issues* (Aug. 25, 2022)) at 2.

[20] *Id.* at 3 (emphases added).

[21] *See* AR 22 (*Motion to Dismiss of North Fort Bend Water Authority*) ("NFBWA's Motion to Dismiss").

§ 12.013; and (2) because Fulshear does not *receive water service* from NFBWA (or pay NFBWA for water service), the Commission lacks jurisdiction over this matter under § 13.043(f) and that Fulshear's petition fails to state a claim for which relief may be granted under that provision.[22]

Following argument on written submission, SOAH's ALJ issued the first Proposal for Decision, which granted NFBWA's Motion to Dismiss, finding, based on uncontested facts, that:

- NFBWA does not *furnish water* to Fulshear – and therefore "the Commission does not have rate-fixing jurisdiction over Fulshear's appeal under [TWC §] 12.013";[23] and

- Fulshear neither *receives water service* from NFBWA nor does it pay NFBWA for *water service* – and therefore "the Commission does not have jurisdiction over Fulshear's appeal under [TWC §] 13.043(f)."[24]

Accordingly, the ALJ recommended that the Commission dismiss Fulshear's rate appeal for lack of jurisdiction and failure to state a claim for which relief can be granted under either §§ 12.013 or 13.043(f).[25]

---

[22] AR 22 (NFBWA's Motion to Dismiss) at 7-14.

[23] AR 46 (*Proposal for Decision*) ("First PFD") (copy included with Appendix 2 of this brief at Tab E) at 14.

[24] *Id*. at 20.

[25] *Id*.

9

**E. The Commission's Remand Order adopted the First PFD in part, rejected it in part, and remanded the proceeding to SOAH**

The First PFD was presented to the Commissioners at an open meeting in September 2023. At that meeting, the Commissioners voted to adopt the First PFD in part, to reject it in part, and remand this docket to SOAH for further processing. Soon thereafter, the Commission issued its Remand Order reflecting the Commissioners' vote at their open meeting.[26] The Remand Order adopted the First PFD to the extent it dismisses Fulshear's appeal under § 12.013 based on the finding the NFBWA does not furnish water to Fulshear, rejected the First PFD to the extent it dismisses Fulshear's appeal under § 13.043(f), and remanded the matter to SOAH for further processing.[27]

In addressing the ALJ's conclusion that the Commission lacks jurisdiction over this proceeding under § 13.043(f), the Remand Order notes that in reaching this conclusion, the ALJ improperly applied a standard created by the Austin Court of Appeals in *General Land Office v. Crystal Clear Water Supply Corp.*, 449 S.W.3d 130 (Tex. App.–Austin 2014, pet. denied) ("*Crystal Clear*"), to determine whether a ***tract of land*** is receiving service for the purposes of a different Water Code provision, the streamlined expedited release provision (§ 13.2541). The

---

[26] AR 58 (Order Remanding Proceeding (Nov. 1, 2023) ("Remand Order")).

[27] AR 58 (Remand Order) at 5.

Commission disagreed that the *Crystal Clear* standard is the proper standard for determining whether a **retail public utility** is receiving *water service* for the purposes of a rate appeal under § 13.043(f). As noted by the Commission, "the *Crystal Clear* standard focuses on facilities and lines committed, actions taken, and things supplied by a retail public utility to a *specific tract of land*."[28] The Remand Order states that to obtain review under § 13.043(f), a petitioner seeking to appeal a water rate increase must show that it is "receiving [water] service" from the entity being challenged, adding that "there is sufficient guidance from the Water Code's broad definition of the term *service* alone for the ALJ to determine whether Fulshear is receiving water service from [NFBWA]."[29]

### F.    Agency Proceedings Following Remand

Following remand, NFBWA and Fulshear jointly filed stipulations and a motion to admit agreed-upon evidence to the SOAH ALJ.[30] That evidence was admitted by the ALJ.[31] Following briefing,[32] the SOAH ALJ issued a second PFD

---

[28] *Id*. at 3 (emphasis added).

[29] *Id*. at 4 (emphasis added).

[30] AR 64 (*List of Stipulated Facts and Motion to Admit Evidence*).

[31] AR 69 (*Order No. 12 – Admitting Evidence and Granting Motion for Extension of Time*).

[32] AR 65 (Initial Post-Remand Brief of NFBWA), 66 (Fulshear's Initial Brief on Preliminary Order Issue No. 10a), 67 (Commission Staff's Initial Brief on Preliminary Order Issue No. 10.A), 70 (NFBWA's Reply to City of Fulshear's Initial Post-Remand Brief), 71 (NFBWA's Reply to Commission Staff's Initial Post-Remand Brief), 72 (City of Fulshear's Reply Brief on Preliminary Order Issue No. 10a).

which *again* concluded that Fulshear does not *receive water service* from NFBWA and therefore the Commission does not have jurisdiction over Fulshear's attempted rate appeal.[33] Accordingly, the PFD on Remand recommended that Fulshear's petition seeking a rate appeal before the Commission be dismissed in its entirety.[34]

In the PFD on Remand, the ALJ appears to have initially conflated the GRP Fee charged by NFBWA with the disincentive fee imposed by FBSD.[35] Both NFBWA and Fulshear filed exceptions to the PFD on Remand alerting the ALJ to this issue.[36] In response, the ALJ recommended corrections to the PFD on Remand to clarify the difference between NFBWA's GRP Fee and FBSD's disincentive fee.[37] These clarifications did "not change the ALJ's analysis, findings, conclusions, or recommendations" set forth in the PFD on Remand.[38]

---

[33] AR 72 (PFD on Remand) (copy included in Appendix 2 to this brief at Tab F) at 1, 11.

[34] *Id.* at 15.

[35] AR 74 (PFD on Remand) at 5, 8.

[36] *See* AR 76 (Exceptions of North Fort Bend Water Authority to Proposal for Decision on Remand) at 4-6, AR 77 (City of Fulshear's Exceptions to Proposal for Decision on Remand) at 6-7.

[37] *See* AR 85 (Exceptions Letter) at 2.

[38] *Id.*

### G. Commission's Final Order

Following the filing of exceptions and replies, the Commission issued a Final Order which adopted the PFD on Remand (with some changes and deletions).[39] Importantly, the Commission found that:

8. Fulshear does not receive *water service* from [NFBWA] under TWC § 13.043(f); and

9. [NFBWA's] decision to change its [fees, including its GRP Fee,] did not affect the amount Fulshear pays for *water service . . . .*[40]

The Commission concluded that, therefore, "Fulshear's petition does not invoke the Commission's jurisdiction under TWC §§ 12.013(a) or 13.043(f) and fails to state a claim for which relief can be granted" and that "Fulshear's appeal under TWC § 13.043(f) should be dismissed . . . for lack of jurisdiction and failure to state a claim."[41]

### H. Fulshear's Motion for Rehearing

Fulshear filed a motion for rehearing challenging the Commission's conclusion that Fulshear does not *receive water service* from NFBWA and the Commission's determination that it therefore lacks jurisdiction to hear Fulshear's attempted appeal of NFBWA's decision to increase its GRP Fee under

---

[39] AR 86 (Order).

[40] *Id.* at 5.

[41] *Id.* at 6.

§ 13.043(f).[42] Fulshear did ***not*** seek rehearing of the Commission's determination that it lacks ratemaking jurisdiction over Fulshear's attempted appeal under § 12.013, or the finding underlying that determination that NFBWA does not *furnish* water to Fulshear.[43]

## I.    Fulshear's Lawsuit in District Court

Fulshear filed an administrative appeal pursuant to the judicial review provisions of Texas' Administrative Procedure Act ("APA") against the Commission in Travis County District Court, seeking reversal and remand of the Commission's Final Order.[44] Fulshear's petition to District Court challenged the Commission's decision that it lacks jurisdiction over Fulshear's attempted appeal under § 13.043(f) but did not challenge the Commission's decision that it lacks ratemaking authority over NFBWA's decision to increase its fees under § 12.013.[45]

The case was thereafter assigned to Judge Maya Guerra Gamble.[46] The Commission filed the Administrative Record made before it as required,[47] the

---

[42] AR 88 (Fulshear's Motion for Rehearing) (copy included in Appendix to this brief at Tab G).

[43] *Id.*

[44] CR 4-29.

[45] *Id.*

[46] CR 41-43.

[47] CR 44-54, 368-69.

parties submitted briefs,[48] and a hearing on the merits was held before Judge Gamble. At that hearing, the Court admitted the Administrative Record into evidence[49] and heard arguments by the parties.

## J.      The District Court's Final Judgment and Order

Following the hearing, the District Court issued its Final Judgment and Order reversing and remanding the Commission's Final Order.[50] The District Court's Final Judgment and Order states that "[i]t is the opinion of the Court that the Commission's Final Order erred by finding that [Fulshear] does not receive water service from [NFBWA] under Texas Water Code § 13.043(f)."[51] The District Court elaborated as follows:

> The Commission's finding that Fulshear does not receive water service from [NFBWA] . . . was arbitrary and capricious because there is no rational connection between the uncontroverted facts in the record and the Commission's finding. These facts include (1) Fulshear's status as a member of a group (the "GRP Participants") that receive surface water from [NFBWA], (2) [NFBWA's] construction of facilities to eventually provide surface water specifically to Fulshear, and (3) [NFBWA's] control, as the permittee, of the production of groundwater from Fulshear's groundwater wells, and the fact that Fulshear pays [NFBWA] for all of these services.[52]

---

[48] CR 57-367, 380-621.

[49] RR 6-7.

[50] *See* CR 622-23 (Final Judgment and Order).

[51] CR 622.

[52] CR 622-23.

15

**K.     This appeal was timely perfected**

The Commission and NFBWA each filed notices of appeal timely perfecting this appeal of the District Court's Final Judgment and Order to the Fifteenth Court of Appeals.[53]

## SUMMARY OF THE ARGUMENT

Fulshear attempted to appeal, to the Commission, a decision by NFBWA to increase its GRP Fee, a statutorily authorized fee charged by NFBWA to its GRP Participants that pump groundwater from their own wells. Those that pay the GRP Fee to NFBWA (including Fulshear) do not receive surface water (or any water) from NFBWA but, rather, achieve collective compliance with the groundwater reduction requirements of FBSD (another governmental entity) and benefit from the control of subsidence in their region.

The Commission issued a Final Order correctly dismissing Fulshear appeal based on its findings that NFBWA does not *furnish* water to Fulshear, Fulshear does not *receive water service* from NFBWA, and NFBWA's decision to increase its GRP Fee did not affect the amount that Fulshear pays for water service.

The District Court reversed, holding that the Commission's finding – that Fulshear does not receive water service from NFBWA – was arbitrary and

---

[53] CR 624-34.

capricious because there is no rational connection between the uncontroverted facts in the record and that finding.

The District Court's holding is in error and should be reversed. The Commission's finding that Fulshear does not receive water service from NFBWA is not arbitrary and capricious as there is a rational connection between the facts in the record and this finding.

It was established in the proceeding below that NFBWA does not *furnish* water to Fulshear. The corollary is that Fulshear does not receive water from Fulshear. Moreover, Fulshear does not receive groundwater from NFBWA when Fulshear pumps its own groundwater from its own wells, even though NFBWA is listed as the permittee on permits issued for Fulshear's wells as a regulatory tracking tool.

Fulshear does not receive *water service* from NFBWA (or pay NFBWA for *water service*) for the purposes of § 13.043(f) under the definition of the term *service* set forth in Chapter 13. Under an analysis focusing on that definition, NFBWA does not: (1) perform any act for Fulshear pursuant to a duty under Chapter 13, Water Code; (2) furnish or supply anything (including water) to Fulshear generally or in the performance of any duty under Chapter 13; (3) use and has not committed facilities or lines to deliver water to Fulshear, generally or in

performance of any duty under Chapter 13. It follows that Fulshear does not pay NFBWA for *water service*.

Moreover, a rational connection between the Commission's finding that Fulshear does not receive water service from NFBWA and the evidence in the record exists despite: (1) Fulshear's membership in a group of GRP Participants, some of which (but not Fulshear) receive surface water from NFBWA; (2) evidence suggesting that NFBWA has constructed facilities that may *someday* be used to provide surface water to Fulshear; and (3) the fact that NFBWA is listed as "permittee" on permits issued by FBSD for Fulshear's wells as a regulatory tracking tool.

Although the District Court did not reverse the Commission's decision on the ground that the Commission's findings (or its decision) are not supported by substantial evidence in the record before the Commission (*see* TEX. GOV'T CODE § 2001.174(2)(E)), and Fulshear never argued (and has therefore waived) that point, the Commission's determination that Fulshear does not receive water service from NFBWA is amply supported by substantial evidence in the record before the Commission.

The Commission is a creature of the Legislature and has only those powers that are expressly conferred on it, plus those implied powers that are reasonably

necessary to carry out those express responsibilities. The Commission has not been legislatively authorized to assert ratemaking jurisdiction over NFBWA's decision to increase its GRP Fee, a fee paid by well owners to achieve collective compliance with a regulatory requirement (and not for water service). The Commission's Final Order correctly refused to assert such jurisdiction over NFBWA's decision to increase its GRP Fee. The Commission's Final Order should be affirmed (and the District Court's Final Judgment and Order should be reversed).

## ARGUMENT

### I.    Standards of Review

The Court's review of the Commission's Order is governed by the judicial review provisions of Texas' APA and, more particularly, by § 2001.174, which states that:

> a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion but:
> (1) may affirm the agency decision in whole or in part; and
> (2) shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
> (A) in violation of a constitutional or statutory provision;
> (B) in excess of the agency's statutory authority;
> (C) made through unlawful procedure;
> (D) affected by other error of law;

19

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

TEX. GOV'T CODE § 2001.174.

When reviewing an agency order under the substantial evidence standard, a court gives significant deference to the agency in its field of expertise. *See Railroad Com'n of Tex. v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995). The court reviews the evidence as a whole to determine if reasonable minds could have reached the same conclusion as the agency in the disputed action. *See City of El Paso v. Publ. Util. Com'n of Tex.*, 883 S.W.2d 179, 186 (Tex. 1994) ("*City of El Paso*"). The reviewing court may not substitute its judgment for that of the agency and may consider only the record on which the agency based its decision. *See* TEX. GOV'T CODE § 2001.175(e); *Citizens Against Landfill Location v. Tex. Com'n on Env't Quality*, 169 S.W.3d 258, 264 (Tex. App.–Austin 2005, pet. denied) ("*Citizens*").

The issue before the court is not whether the agency reached the correct conclusions but whether there is some basis in the record for its action. *Citizens*, 169 S.W.3d at 264. Reviewing courts need only be concerned with the reasonableness of an administrative order, not its correctness. *See New World Car*

*Nissan, Inc. v. Hyundai Motor America,* 658 S.W.3d 754, 760 (Tex. App.–El Paso 2022, pet. denied). Moreover, a court reviewing an agency order under the APA may not reverse the order unless the record made before the agency demonstrates that plaintiff's substantial rights were prejudiced by the agency committing one (or more) of the errors listed in APA § 2001.174(2) and must affirm the order on any legal basis shown in record even if the agency gave an erroneous legal basis for its decision. *See McMullen v. Employees Retirement System of Texas,* 935 S.W.2d 189, 191 (Tex. App.–Austin 1996, writ denied).

Although "substantial evidence" is more than a scintilla, it does not mean a large or considerable amount of evidence – in fact, the evidence may even preponderate against the agency's finding – but requires only such relevant evidence as a reasonable mind might accept as adequate to support a finding of fact. *See Employees Retirement System of Texas v. Garcia,* 454 S.W.3d 121, 132-33 (Tex. App.–Austin 2014, pet. denied); *TJFA, L.P. v. Texas Com'n on Envir. Qual.,* 632 S.W.3d 660, 676 (Tex. App.–Austin 2021, pet. denied). An agency's decision is presumed to be supported by substantial evidence, and the burden is on the plaintiff to prove otherwise. *See Dyer v. Texas Com'n on Envir. Qual.,* 646 S.W.3d 498, 514 (Tex. 2022).

Moreover, a reviewing court may give "consideration to a legal determination made by a state agency that is reasonable and does not conflict with the plain language of the statute." TEX. GOV'T CODE § 2001.1721(b).

With respect, in particular, to the "arbitrary and capricious" ground for reversal set forth in APA § 2001.174(2)(F), "[a]n administrative agency is said to act arbitrarily or capriciously where, among other things, it fails to consider a factor the Legislature has directed it to consider, considers an irrelevant factor, or considered relevant factors but still reaches a completely unreasonable result." *City of Waco v. Texas Com'n on Envt'l Quality*, 346 S.W.3d 781, 819 (Tex. App.–Austin 2011), *rev'd on other grounds*, 413 S.W.3d 409 (2013) ("*City of Waco*") (*citing City of El Paso*, 883 S.W.2d at 184). "An agency also acts arbitrarily . . . if . . . there does not 'appear a rational connection between the facts and the decision.'" *City of Waco,* 246 S.W.3d at 819 (*quoting Starr County v. Starr Indus. Servs., Inc.*, 584 S.W.2d 352, 356 (Tex. Civ. App.–Austin 1979, writ ref'd n.r.e.) ("*Starr County*"); *see also Poindexter v. Brown,* 665 S.W.3d 842, 860 (Tex. App.–Houston [14th Dist.] 2023, pet. denied). "In other words, [a court] must remand for arbitrariness if [it] conclude[s] that the agency has not 'genuinely engaged in reasoned decision-making.'" *Heritage on San Gabriel Homeowners Ass'n v. Texas*

*Com'n on Env'l Qual.*, 393 S.W.3d 417, 423-24 (Tex. App.–Austin 2012, pet. denied) ("*Heritage on San Gabriel*") (*quoting Starr County*, 584 S.W.2d at 356).

Moreover, a judicial finding that an agency action is arbitrary and capricious "must be based on a violation of due process or some other unfair or unreasonable conduct that *shocks the conscience*." *Texas State Bd. of Dental Examiners v. Silagi*, 766 S.W.2d 280, 285-86 (Tex. App.–El Paso 1989, writ denied) ("*Silagi*") (emphasis added) (*citing Gerst v. Goldsbury*, 434 S.W.2d 665 (Tex. 1968)); *see also Santulli v. Texas Bd. of Law Examiners*, No. 03-06-00392–CV, 2009 WL 961568, *4, fn 5 (Tex. App.–Austin, Apr. 10 2009, pet. denied). An agency's decision is arbitrary when its final order denies parties due process of law. *See Oncor Elec. Delivery Co. LLC v. Publ. Util. Com'n of Texas,* 406 S.W.3d 253, 265 (Tex. App.–Austin 2013, no pet.).

## II.    It was established in the proceeding below that Fulshear does not receive *water* from NFBWA.

It was conclusively established in the agency proceeding below that Fulshear does not receive *water* (of any sort) from NFBWA.

As noted above, in the First PFD, the SOAH ALJ found, based on uncontroverted evidence, that NFBWA does not *furnish* water to Fulshear.[54] This finding was part of, and necessary to, the ALJ's conclusion that the Commission

---

[54] AR 46 (Proposal for Decision) at 13-14, 23 (FOF 21), 24 (COL 7); *see supra* at 9.

does not have rate-fixing jurisdiction under § 12.013 with respect to NFBWA's decision to increase its GRP Fees.[55]

The Commission adopted the First PFD to the extent it dismissed Fulshear's appeal under § 12.013.[56] In doing so, the Commission adopted the ALJ's underlying finding that NFBWA does not *furnish* water to Fulshear. Later, in its Final Order, the Commission *repeated* its conclusion that "Fulshear's petition does not invoke the Commission's jurisdiction under TWC § 12.013(a)."[57]

Fulshear *chose* to **not** appeal or otherwise challenge the Commission's determination that the Commission lacks jurisdiction over NFBWA's decision to increase in its GRP Fee under § 12.013 (which was based on the Commission's conclusion that NFBWA does not *furnish* water to Fulshear). No issue regarding, nor mention of, the Commission's determination that it lacks rate-fixing jurisdiction pursuant to § 12.013 was included in Fulshear's judicial appeal.[58]

Moreover, the Commission's determination – that Fulshear's petition did not invoke the Commission's jurisdiction under §12.013 (because NFBWA does not *furnish* water to Fulshear) – was not addressed in Fulshear's motion for rehearing

---

[55] AR 58 (Order Remanding Proceeding) at 5.

[56] AR 46 at 13-14, AR 58 at 1, 5.

[57] AR 86 at 6 (COL 13).

[58] CR 4-29, 57-90, 579-612.

to the Commission and therefore any challenge to this conclusion has been waived by Fulshear for this reason as well. *See*, *e.g.*, *Texas Alcoholic Beverage Com'n v. Quintana*, 225 S.W.3d 200, 203-204 (Tex. App.–El Paso 2005, pet. denied) (stating that to preserve an issue for judicial review, the plaintiff's motion for rehearing before the agency "must set forth: (1) the particular finding of fact, conclusion of law, ruling, or other action by the agency which the complaining party asserts was error; and (2) the legal basis upon which the claim of error rests").

Because NFBWA does not *furnish* water (of any sort) to Fulshear, it necessarily follows that Fulshear *does not receive water* (or any sort) from NFBWA.

## III. Fulshear does not receive *groundwater* from NFBWA by pumping its own groundwater from its own wells.

Fulshear argued to the Commission and the District Court that *it receives actual potable groundwater* from NFBWA when Fulshear pumps groundwater from its own water wells due to NFBWA's purported control of Fulshear's wells.[59]

___

[59] *See*, *e.g.*, CR 77-79; AR 66 at 8. It is interesting that Fulshear's petition to the Commission initiating its attempted rate appeal made no mention of this "creative" theory. *See* AR 1.

As shown below, Fulshear does not receive groundwater from NFBWA by pumping its own groundwater from its own wells.

Fulshear admits that its groundwater wells are *owned and operated* by Fulshear (and not by NFBWA). In its petition initiating the proceeding before the Commission, Fulshear stated that it "owns and operates seven non-exempt wells used to provide retail water utility service."[60] The permits for these wells themselves confirm this fact by naming Fulshear as the well owner.[61]

The record before the agency is devoid of any evidence that NFBWA: (1) is authorized to withdraw groundwater from Fulshear's wells; (2) is responsible for the operation and maintenance of Fulshear's wells; (3) otherwise controls or determines when Fulshear's wells pump groundwater, the amount of groundwater pumped, or the rate of pumping; or (4) provides and/or manages the licensed operators that operate Fulshear's wells.

Importantly, the groundwater that Fulshear pumps from its own wells is owned by Fulshear (and not by NFBWA). The law is clear that groundwater in Texas is owned in place by the landowner, and the landowner is regarded as having absolute title to the groundwater underneath the surface as a result of its

---

[60] *See, e.g.,* AR 1 (Petition) at 3; *see also* AR 64, Stipulation No. 5 (stating that "Fulshear owns groundwater wells used to provide retail water service").

[61] *See* AR 96 (Fort Bend Subsidence District Water Well Permit No. 2022-107-29287-0, Well No. 493 (Oct. 6, 2022) (copy included in Appendix 2 to this brief at Tab H).

proprietorship of the land. *See Edwards Aquifer Auth. v. Day,* 369 S.W.3d 814, 831-32 (Tex. 2012). Once groundwater is pumped from a well and reduced to possession, it becomes personal property. *See City of San Marcos v. Texas Com'n on Envir. Qual,,* 128 S.W.3d 264, 270 (Tex. App.–Austin 2004, pet. denied). The record contains no evidence suggesting that NFBWA has any ownership interest in any of Fulshear's wells, well fields, or the groundwater that underlies them. Likewise, the record does not include a bill of sale or any other evidence indicating or suggesting a conveyance of pumped groundwater (or any water) between Fulshear and NFBWA. The record contains no evidence that NFBWA has ever had ownership or possession of any water from Fulshear's wells.

Fulshear's argument that it receives *actual potable groundwater* from NFBWA has relied primarily on the fact that NFBWA is listed as *permittee* on permits issued by FBSD for wells owned and operated by NFBWA's GRP Participants (including Fulshear).[62] But as mentioned above, NFBWA is designated as "permittee" on FBSD's permits for wells owned and operated by NFBWA's GRP Participants (including Fulshear) as a regulatory tracking tool.[63] Doing so allows NFBWA (and in turn, FBSD) to easily determine whether NFBWA's GRP Participants as a group are collectively meeting FBSD's

---

[62] *See*, *e.g.*, CR 78.

[63] *See supra* at 6-7.

groundwater reduction requirements. As "permittee" on these permits, NFBWA is responsible for assuring that its GRP Participants are *collectively* meeting FBSD's groundwater reduction requirements.[64] NFBWA is also responsible for maintaining records on the amount of groundwater withdrawn from each permitted well owned by its GRP Participants and must provide such records to FBSD and make them available for inspection.[65] The designation of NFBWA as "permittee" on the permits issued by FBSD for wells owned and operated by NFBWA's GRP Participants (including Fulshear) does not change any of these facts nor does it equate to control or management of those wells or the water from those wells.

Assuming *arguendo* that the fact that NFBWA is designated as permittee on FBSD's permits for groundwater wells owned by NFWBA's GRP Participants (including Fulshear) is indicative of *some modicum* of control by NFBWA over those wells, that does not mean that Fulshear is receiving actual groundwater from NFBWA via those wells. As explained above, Fulshear owns the groundwater located beneath its property both before and after it is pumped to the surface, where it is used by Fulshear to provide water service to Fulshear's retail water customers. Because the groundwater belongs to Fulshear at all relevant times, obviously Fulshear is not receiving it from NFBWA.

---

[64] AR 95, Rule 5.3.

[65] *See id.*

## IV. The GRP Fee is not a rate or fee paid *for* groundwater.

Because Fulshear does not *receive* groundwater from NFBWA,[66] Fulshear does not pay NFBWA *for* groundwater.

Moreover, the fact that the GRP Fee is based on the *amount of groundwater pumped by each well owner* does not affect the conclusion that Fulshear does not pay NFBWA *for* the groundwater that Fulshear pumps from its groundwater wells. Fees based on the amount of a regulated item or substance that is produced or extracted are common. For example, an oil-field cleanup fee (charged to oil producers by Railroad Commission of Texas) is set at a certain amount per each standard 42-gallon barrel of crude oil produced. *See* 34 TEX. ADMIN. CODE § 3.731. An oil producer paying such a fee to the Railroad Commission is obviously not paying that agency *for* the crude oil it produces simply because the fee is *based on the amount* of crude oil it produces.

Likewise, groundwater conservation districts ("GCDs") are authorized to regulate the production of groundwater from water wells within their respective jurisdictions. *See* TEX. WATER CODE §§ 36.001(1), 36.116(a)(2). GCDs are expressly authorized to assess production fees *based on the amount of water withdrawn from a well*. *See id*. § 36.205(c). An owner of groundwater who pumps

---

[66] *See supra* at 23-28.

29

his groundwater from his own well and pays a production fee to a local GCD is clearly not paying the GCD *for the groundwater* because he pays a fee based on the amount of groundwater he produces from his own well.

## V. Fulshear does not *receive water service* from NFBWA and does not *pay NFBWA for water service*.

Fulshear has attempted to appeal NFBWA's decision to increase its fees (including its GRP Fee) to the Commission under § 13.043(f), Water Code. That statute provides that "[a] retail public utility ***that receives water . . . service*** from another . . . political subdivision . . . may appeal to the . . . commission a decision of the provider of water . . . service affecting the ***amount paid for water . . . service***." TEX. WATER CODE § 13.043(f) (emphases added).[67]

The phrase "water service" is *not* defined in Chapter 13 or in the Commission's rules. However, the term "service" is defined as:

> any act performed, anything furnished or supplied, and any facilities or lines committed or used by a retail public utility in the performance of its duties under [Chapter 13] to its patrons, employees, other retail public utilities, and the public.

TEX. WATER CODE § 13.002(21).[68]

Accordingly, if Fulshear does not receive *water service* from NFBWA (and does not pay NFBWA for *water service*), then the Commission lacks jurisdiction

---

[67] A copy of Tex. Water Code § 13.043 is included in the Appendix 1 to this brief at Tab C.

[68] A copy of Tex. Water Code § 13.002 is included in the Appendix 1 to this brief at Tab D.

over Fulshear attempt to appeal NFBWA's increase in its GRP Fee under § 13.043(f), and Fulshear's petition to the Commission fails to state a claim for which relief may be granted.

As shown below, Fulshear does not receive *water service* from NFBWA nor does Fulshear pay NFBWA for *water service*. Therefore, the Commission lacks jurisdiction over Fulshear's appeal of NFBWA increase in its GRP Fee and Fulshear's petition to the Commission failed to state a claim for which relief may be granted.

### A. Fulshear does not receive *water service* from NFBWA.

Under an analysis focusing on the definition of *service* set forth in Chapter 13 (like the one conducted by the ALJ) Fulshear does not receive *water service* from NFBWA. As elaborated upon below, Fulshear does not receive *water service* from NFBWA because NFBWA does not perform any act for and does not furnish or supply water (or anything) to Fulshear, and does not use and has not committed any facilities or lines to or for Fulshear, in the performance of any duties under Chapter 13.

#### 1. NFBWA does not perform any act for Fulshear pursuant to a duty under Chapter 13.

NFBWA does not perform any act for Fulshear pursuant to a duty under Chapter 13. Duties under Chapter 13 involve the providing of water and sewer services. *See* TEX. WATER CODE §§ 13.002(19) (defining "retail public utility" as a person or entity "operating, maintaining, or controlling . . . facilities for providing *potable water service or sewer service*, or both") (emphasis added); 13.002(23) (defining "water and sewer utility," "public utility," or "utility" as involving "the transmission, storage, distribution, sale, or provision of *potable water* to the public . . . *or* for the collection, transportation, treatment, or disposal of *sewage* or other operation of a sewage disposal *service*") (emphases added). No commodities or services other than water and wastewater (sewer) are covered by Chapter 13.

32

Participating in NFBWA's GRP allows well owners including Fulshear to join others in *collectively* complying with FBSD's groundwater reduction requirements, thus avoiding the imposition of the FBSD's disincentive fee.[69] By paying the NFBWA's GRP Fee and achieving *collective* compliance with FBSD groundwater reduction requirements, Fulshear does not have to "go it alone" with respect to complying with those requirements (which would be much more expensive and burdensome). NFBWA's GRP participants also receive the benefit of the control and prevention of subsidence in their region.

The providing of an opportunity for collective compliance with FBSD groundwater reduction requirements is not something that NFBWA does pursuant to any duty under Chapter 13. To the extent NFBWA has a duty to provide its GRP Participants (including Fulshear) with an opportunity for collective compliance, such a duty arises under NFBWA's Enabling Act.

Accordingly, to the extent that NFBWA can be seen as performing any acts for Fulshear, it is not doing so pursuant to any duty under Chapter 13. An increase in the fees charged for collective compliance thus falls squarely outside of the Commission's appellate ratemaking jurisdiction as set forth in § 13.043(f).

---

[69] *See supra* at 5-6.

By way of analogy, if a water district, in addition to providing retail water and sewer services to its customers, also collects their trash,[70] that activity would fall outside of Chapter 13's definition of *service*, because such an undertaking is not "in the performance of" the district's duties under Chapter 13. No one could reasonably argue that the Commission has ratemaking authority or jurisdiction over the trash collection fees charged by a water district.

### 2. NFBWA does not "furnish" or "supply" *anything* (including water) to Fulshear.

When construing a statute, the primary objective is to give effect to the Legislature's intent. *See* TEX. GOV'T CODE § 312.005; *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 438 (Tex. 1997). That goal is accomplished, first, by looking to the common and accepted plain meaning of the statute's words. *See Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex. 1993).

Neither the Water Code nor the Commission's rules define the terms *furnish* or *supply*. *See* TEX. WATER CODE § 13.002. Words not specifically defined by a statute are given their plain meaning. *See, e.g.,* TEX. GOV'T CODE § 311.011(a)

---

[70] *See, e.g.,* TEX. WATER CODE § 54.203 (expressly authorizing water districts to own and operate a municipal solid waste collection and disposal system).

(words in a statute shall be read in context and construed according to their common usage).

The common and accepted plain meaning of the word *furnish* is "[t]o supply, provide, or equip, for accomplishment of a particular purpose." *Thomas v. State*, 733 S.W.2d 675, 676-77 (Tex. App.–Tyler 1987, writ ref'd) (*quoting* BLACK'S LAW DICTIONARY 608 (5th Ed. 1979)). Moreover, the word *furnish* "contemplates an act and the relinquishment of possession." *Thomas v. State*, 733 S.W.2d at 677. Merriam Webster defines *furnish* as "to provide with what is needed" or as "supply, give." Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/furnish (accessed Sept. 22, 2025; *see also Jones v. Univesco, Inc.*, 529 F. Supp. 3d 627 (E.D. Tex. 2021) (applying this definition). Similarly, the common and accepted meaning of *supply* is: "to make available for use . . . to furnish." Merriam-Webster.com Dictionary, https://www.merriamwebster.com/dictionary/supply (accessed Sept. 22, 2025).

The words *furnish* and *supply* as used in Chapter 13's definition of the term "service" must be read in accordance with their plain and common meanings. Under their plain and common meanings, NFBWA does not *furnish* or *supply* water (or anything else) to Fulshear.

35

Moreover, by choosing not to challenge or appeal the Commission's determination that NFBWA does not *furnish* water to Fulshear, Fulshear has in essence conceded the point.[71] NFBWA also does not *furnish* or *supply* groundwater to Fulshear based on NFBWA's purported control of the production of Fulshear's groundwater from Fulshear's groundwater wells.[72]

As noted above, to the extent that NFBWA provides *anything* to Fulshear, it is the opportunity to join with others in achieving collective compliance with FBSD's groundwater reduction requirements. However, NFBWA does not *furnish* or *supply* that opportunity or benefit under the plain meaning of those terms. Finally, if it does *furnish* or *supply* that benefit, it is clearly not doing so "in the performance of" a duty under Chapter 13.[73]

> **3. NFBWA does not use and has not committed facilities or lines to deliver water to Fulshear generally or in performance of any duty under Chapter 13.**

It is undisputed that Fulshear does not receive surface water from NFBWA.[74] Accordingly, none of NFBWA's facilities or lines are currently used to deliver surface water to Fulshear.

---

[71] *See supra* at 23-25.

[72] *See supra* at 25-28.

[73] *See supra* at 31-33.

[74] *See supra* at 4.

The record before the Commission includes the testimony of Matthew L. Froehlich. Mr. Froehlich, who is with engineering firm BGE, Inc., leads his firm's team as Program Manager and Engineer for NFBWA.[75] Mr. Froehlich testified that:

- none of NFBWA's existing facilities have been designed or constructed solely for the purpose of serving Fulshear; and

- none of NFBWA's existing facilities are currently committed to providing water to Fulshear.[76]

Focusing on Chapter 13's definition of the term *service*, the ALJ correctly found that NFBWA does not have any water lines or facilities serving Fulshear and "has not committed lines or facilities" to "providing water service to Fulshear."[77]

Fulshear has previously attempted to support its argument that NFBWA has committed facilities and lines to provide surface water to Fulshear by citing to NFBWA's GRP (a seventeen-year-old planning document) and other planning documents.[78] However, such planning documents do not constitute evidence that NFBWA's existing facilities or lines are committed to providing Fulshear with

---

[75] AR 106 (Affidavit of Matthew L. Froehlich), ¶ 3.

[76] *Id.*, ¶ 22.

[77] AR 74 at 8-11, FOF 24.

[78] *See, e.g.*, CR 81-82.

water. As planning tools, these documents are either expressly or implicitly, and by their very nature, subject to change.

At most, there is some evidence in the record before the Commission that suggests that NFBWA *anticipates* providing surface water to Fulshear *someday*, that NFBWA's lines are and will be sized so that they will be able to transport some surface water to Fulshear *someday*, and that some components of NFBWA's system are expected to be used *sometime* in the future to supply Fulshear with surface water. In other words, it is likely that *someday*, NFBWA will have lines that will be used to provide surface water to Fulshear.

*None* of this evidence, however, changes the fact that no NFBWA facilities are currently used or committed to providing surface water to Fulshear. To the extent that NFBWA's lines and facilities are committed to anything, they are committed to providing the benefit of collective compliance with FBSD's groundwater reduction requirements to all NFBWA's GRP Participants. Importantly, providing GRP Participants with the opportunity to achieve collective compliance with FBSD's groundwater reduction requirements is ***not*** a duty under Chapter 13. To the extent that NFBWA has a *duty* to provide its GRP Participants with the opportunity to achieve collective compliance, that duty would arise under NFBWA's enabling statute and not Chapter 13. NFBWA is under no duty

whatsoever – under Chapter 13, another statute, or otherwise – to provide surface water to Fulshear, or to any particular GRP Participant.

**B.    Fulshear does not *pay* NFBWA for *water service*.**

As shown above, Fulshear does not receive *water service* from NFBWA under an analysis focusing on the definition of *service* set forth in Chapter 13.[79] Rather, those that pay GRP Fees (including Fulshear) take advantage of the opportunity provided by NFBWA to achieve collective compliance with FBSD's groundwater reduction requirements while also benefitting from the control and prevention of subsidence in the region. Because Fulshear *does not receive* water service from NFBWA, it directly follows that Fulshear *does not pay* NFBWA for water service. NFBWA's decision to increase its GRP Fee therefore is not a decision affecting the amount that Fulshear (or anyone) pays for water service.

**C.    The Commission's determination that Fulshear does not receive water service from NFBWA should be given consideration.**

The Commission's determination that Fulshear does not receive water service from NFBWA (and that NFBWA's decision to increase its GRP Fee is not a decision affecting the amount that Fulshear pays for water service) is entirely reasonable and certainly does not conflict with the plain language of § 13.043(f)

---

[79] *See supra* at 31-38.

and therefore should be given consideration by this Court. *See* TEX. GOV'T CODE § 2001.1721(b).

**VI.    The Commission's finding that Fulshear does not receive water service from NFBWA is rationally connected to facts in the record and therefore not arbitrary and capricious.**

The District Court held that "[t]he Commission's finding that Fulshear does not receive water service from [NFBWA], including and as stated/incorporated in Conclusions of Law No. 8, was ***arbitrary and capricious because there is no rational connection between the uncontroverted facts in the record and the Commission's finding***."[80]

The District Court elaborated, stating that those facts "include: (1) Fulshear's status as a member of a group (the "GRP Participants") that receives surface water from [NFBWA], (2) [NFBWA's] construction of facilities to eventually provide surface water specifically to Fulshear, and (3) [NFBWA's] control, as the permittee, of the production of groundwater from Fulshear's groundwater wells, and the fact that Fulshear pays [NFBWA] for all of these services."[81]

The District Court erred because the Commission's finding that Fulshear does not receive water service from NFBWA is entirely sound and clearly not arbitrary and capricious. There is a clear and rational connection between the facts

---

[80] CR 622-23.

[81] *Id.*

40

in the record before the Commission and the Commission's finding that Fulshear does not receive water service from NFBWA.

It is uncontested that Fulshear does not receive surface water from NFBWA.[82] It has also been established that NFBWA does not "furnish," "supply" or otherwise provide water (of any kind) to Fulshear.[83] Moreover, and as discussed above, Fulshear does not receive groundwater from NFBWA when it pumps its own groundwater from its own wells.[84] The Commission's conclusion that Fulshear does not receive water service from NFBWA is *rationally connected* to these facts and clearly not arbitrary and capricious. *See*, *City of Waco*, 246 S.W.3d at 819; *Starr County*, 584 S.W.2d at 356**.** Moreover, there is no allegation or suggestion that the Commission failed "to consider a factor the Legislature has directed it to consider, consider[ed] an irrelevant factor, or considered relevant factors but still reache[d] a completely unreasonable result." *City of Waco,* 346 S.W.3d at 819; *see also City of El Paso*, 883 S.W.2d at 184. The PFD on Remand and the Final Order show that the Commission "engaged in reasoned decision-making." *Heritage on San Gabriel,* 393 S.W.3d at 423-24; *see also Starr County*, 584 S.W.2d at 356.

---

[82] *See supra* at 4.

[83] *See supra* at 33-35.

[84] *See supra* at 25-28.

Moreover, and as stated above, a judicial finding that an agency action is arbitrary and capricious "must be based on a violation of due process or some other unfair or unreasonable conduct that shocks the conscience." *Silagi*, 766 S.W.2d at 285-86. Here, while the District Court held that the Commission's finding that Fulshear does not receive water service from NFBWA is arbitrary and capricious,[85] the District Court did not base its holding on any violation of due process by the Commission or on some unfair or unreasonable conduct of the Commission that *shocks the conscience*. Fulshear has not alleged or argued that the Commission has committed a violation of due process,[86] and there is absolutely nothing about the Commission's conclusion that Fulshear does not receive water service from NFBWA which might possibly *shock the conscience*.

A. **The Commission's finding is rationally connected to facts in the record even though Fulshear is a member of a group of GRP Participants *some of whom* receive surface water from NFBWA.**

The District Court's Final Judgment suggests that the Commission's finding that Fulshear does not receive water service from NFBWA ***was arbitrary and capricious*** based on the lack of a rational connection between that conclusion and "uncontroverted facts" regarding Fulshear's status as a member of a group of GRP Participants, some of which receive surface water from NFBWA.

---

[85] CR 622-23.

[86] *See* CR 4-29, 57-90, 579-612.

There is a clear and rational connection between the facts in the record and the Commission's conclusion that Fulshear does not receive water service from NFBWA, despite Fulshear membership in a group of GRP Participants, some of which receive surface water from NFBWA.

Although NFBWA provides surface water to *some* of its GRP Participants, NFBWA does not provide surface water to *all* of them.[87] Fulshear concedes that it does not receive surface water from NFBWA, that it does not pay NFBWA's Surface Water Fee, and that it is not among those NFBWA's GRP Participants who receive surface water from NFBWA.[88] Simply participating in NFBWA's GRP (and enjoying the benefit of collective compliance with FBSD's groundwater reduction requirements) does not equate to receiving *water service* from NFBWA.

Moreover, the fact that NFBWA uses revenues from the GRP Fee and the Surface Water Fee to fund its programs, which include but are by no means limited to the construction of a surface water delivery system and the purchase treated surface water,[89] does not change that analysis or conclusion.

---

[87] *See* AR 106, ¶ 14.

[88] *See* AR 64, Stipulation No. 6 ("Fulshear does not pay (and has never paid) Surface Water Fees to NFBWA and has never received surface water from NFBWA").

[89] These fees also fund, among other things, NFBWA's effluent reuse system. *See* AR 93 (Amended Rate Order) at 4, 25, § 8.06; AR 103 (NFBWA Financial Report, Dec. 31, 2021) at 31-32; Tᴇх. Sᴘᴇᴄ. Dɪsᴛ. Lᴏᴄᴀʟ Lᴀᴡs Cᴏᴅᴇ § 8813.113.

As previously noted, the value that *all* participants in NFBWA's GRP receive is not water (or water service) but, rather, is *collective compliance* with FBSD's groundwater reduction requirements.[90] Those GRP Participants that pay NFBWA's *Surface Water Fee* receive water service *in addition to* collective compliance with FBSD's regulatory requirements. (All GRP Participants also receive the benefit of the control and management of subsidence in their region.) However, those GRP Participants who pay *only* NFBWA's GRP Fee (like Fulshear) do not receive water service from NFBWA.

As previously noted, NFBWA is under no duty pursuant to Chapter 13, the NFBWA Act, or otherwise, to provide any GRP Participant (including Fulshear) with water service. To the extent NFBWA owes a duty to its GRP Participants, it would be a duty to provide them with an opportunity to collectively comply with FBSD's regulatory requirements. If such a *duty* exists, it would arise, not under Chapter 13, but rather under the NFBWA Enabling Act.

There is an obvious rational connection between these facts and the Commission's conclusion that Fulshear does not receive water service from NFBWA. The fact that Fulshear is a member of a group of GRP Participants, some

---

[90] *See supra* at 5-6.

of which receive surface water from NFBWA, does not nullify or otherwise affect that rational connection.

**B.** **The Commission's finding is rationally connected to facts in the record despite evidence suggesting that NFBWA has constructed facilities that might someday be used to provide surface water to Fulshear.**

The District Court's Final Judgment suggests that the Commission's finding that Fulshear does not receive water service from NFBWA was arbitrary and capricious based on the lack of a rational connection between that finding and "uncontroverted facts" regarding NFBWA's construction of facilities that might someday be used to provide surface water to Fulshear.

There is a clear and rational connection between the facts in the record and the Commission's finding that Fulshear does not receive water service NFBWA, despite NFBWA's construction of facilities that might someday be used to provide surface water to Fulshear.

As set forth above, NFBWA does not use and has not committed facilities or lines to deliver water to Fulshear generally or in performance of any duty under Chapter 13. The record before the agency includes testimony that: (1) none of NFBWA's existing facilities have been designed or constructed solely for the purpose of serving Fulshear; and (2) none of NFBWA's existing facilities are

45

currently committed to providing water to Fulshear.[91] Inferences potentially made from evidence relied on by Fulshear suggesting that *someday* NFBWA may have lines that will be used to provide surface water to Fulshear do not negate or otherwise affect the rational connection between the facts in the record and the Commission's conclusion that Fulshear does not currently receive water service from NFBWA.

### C. The Commission's finding is rationally connected to facts in the record even though NFBWA is listed as "permittee" on permits issued by FBSD.

The District Court's Final Judgment suggests that the Commission's finding – that Fulshear does not receive water service from NFBWA – was arbitrary and capricious because of the lack of a rational connection between that finding and NFBWA's purported control of the production by Fulshear of its own groundwater from its own groundwater wells.[92] NFBWA's purported control of its production of its own groundwater from its own groundwater wells is based on the fact that NFBWA is listed as "permittee" on permits issued by FBSD for water wells owned and operated by NFBWA's GRP Participants (including Fulshear).

There is a clear and rational connection between the facts in the record and the Commission's finding that Fulshear does not receive water service NFBWA,

---

[91] *See supra* at 36-38.

[92] CR 622-23.

even though NFBWA is listed as "permittee" on permits issued by FBSD for water wells owned and operated by NFBWA's GRP Participants (including Fulshear).

As noted above, Fulshear admits that its groundwater wells are *owned and operated* by Fulshear (and not by NFBWA).[93] The permits for Fulshear's wells confirm this fact by naming Fulshear as the well owner.[94] The record contains no evidence that NFBWA: (1) is authorized to withdraw groundwater from Fulshear's wells; (2) is responsible for the operation and maintenance of Fulshear's wells; (3) otherwise controls or determines when Fulshear's wells pump groundwater, the amount of groundwater pumped, or the rate of pumping; or (4) provides and/or manages the licensed operators that operate Fulshear's wells.[95] It is beyond question that groundwater from Fulshear's wells is owned by Fulshear at all relevant times.

Fulshear's argument that it receives *groundwater* from NFBWA based on the fact that NFBWA is listed as "permittee" on permits issued by FBSD for wells owned and operated by NFBWA's GRP Participants (including Fulshear) is without merit.

---

[93] *See supra* at 26.

[94] *See id*.

[95] *See id*.

**VII. The Commission's conclusion that Fulshear *does not receive water service* from NFBWA *is* supported by substantial evidence in the record.**

Notably, the District Court did *not* hold that the Commission's conclusion that Fulshear does not receive water service from NFBWA is not supported by substantial evidence in the record. Rather, the District Court reversed the Commission's decision *only* on the basis that this conclusion is *arbitrary and capricious*.[96]

Moreover, Fulshear has **waived** any argument that the Commission's conclusion – that Fulshear *does not receive water service* from NFBWA – is not supported by substantial evidence in the record. To preserve an issue for judicial review, plaintiff's motion for rehearing before the agency "must set forth: (1) the particular finding of fact, conclusion of law, ruling, or other action by the agency which the complaining party asserts was error; and (2) the legal basis upon which the claim of error rests" *E.g.*, *Quintana*, 225 S.W.3d at 203. Fulshear's motion for rehearing before the Commission did not assert or argue that the Commission's conclusion that Fulshear does not receive water service from NFBWA (or any other finding or conclusion of the Commission) is not supported by substantial evidence.[97] Moreover, Fulshear did not argue a *lack of substantial evidence* ground

---

[96] CR at 622-23.

[97] AR 88 [App. 2, Tab G].

for reversal in its briefing to the District Court, and instead argued only the arbitrary and capricious ground.[98] In an administrative appeal, failure to brief an issue before the District Court waives the issue. *See* Local Rules of Civil Procedure and Rules of Decorum, Travis County District Courts (eff. Nov. 15, 2024), Rule 10.5(e); *see also* TEX. R. APP. P. 38.1; *Chaves v. State*, 630 S.W.3d 541, 555 (Tex. App.–Houston [1st Dist.] 2021, no pet.) (with respect to a sufficiency of evidence issue, stating that an appellant waives an issue on appeal if he does not adequately brief that issue by providing supporting arguments, substantive analysis, and appropriate citations to authorities and to the record). Accordingly, any such argument has been waived.

In any event, even Fulshear has not waived its "substantial evidence" argument, there is abundant evidence (way more than a scintilla) in the record before the Commission which supports the Commission's conclusion that Fulshear does not receive water service from NFBWA. Such evidence includes (but is not limited to) the Affidavit of Matthew L. Froehlich. a highly experienced licensed professional engineer with BGE, Inc., who leads that firm's team as a Program Manager for NFBWA.[99] Mr. Froehlich testified that:

- NFBWA does not provide, supply or furnish water of any type to

---

[98] *See* CR 57-90, 579-621.

[99] AR 106, ¶¶ 2-4.

Fulshear for compensation or otherwise and has never done so;

- Fulshear does not and has never received water from NFBWA;

- Fulshear has never come into possession of or acquired any water from NFBWA;

- Fulshear does not receive water service from NFBWA;

- Fulshear does not pay NFBWA for water service;

- although Fulshear pays GRP Fees to NFBWA, because Fulshear does not receive surface water from NFBWA, Fulshear does not pay a Surface Water Fee to NFBWA;

- Fulshear has never paid a Surface Water Fee to NFBWA;

- Fulshear is not among the entities that receive surface water from NFBWA;

- NFBWA does not expect nor plan to deliver surface water to all of its GRP Participants;

- the purpose of the GRP is to allow participants to collectively meet FBSD groundwater reduction requirements, so that each water provider does not need to do so individually;

- some of NFBWA's GRP Participants may never receive surface water from NFBWA and may never need to reduce their groundwater withdrawals;

- although NFBWA provides, supplies or furnishes potable (treated) water for compensation to certain entities, NFBWA has never transported, sold, delivered, supplied or furnished any water to Fulshear;

- none of the water rights acquired by NFBWA are dedicated in particular to Fulshear;

- none of NFBWA's existing facilities are currently used to provide surface water (or any water) to Fulshear;

- none of NFBWA's existing facilities have been designed or constructed solely for the purpose of serving Fulshear; and

- none of NFBWA's existing facilities are currently committed to providing water to Fulshear.[100]

In addition, Fulshear has stipulated that:

- Fulshear has never received surface water from NFBWA;

- Fulshear does not pay and has never paid Surface Water Fees to NFBWA;

- Fulshear pays only GRP Fees to NFBWA;

- Fulshear owns the groundwater wells that it uses to provide retail water service; and

- Fulshear is a participant in NFBWA's Groundwater Reduction Plan (GRP).[101]

## VIII. The Commission has correctly refused to assert jurisdiction over a matter for which the Legislature has not authorized it to hear via clear and express statutory language

As a state administrative agency, the Commission is a creature of the Legislature and possesses no inherent authority; rather it has only those powers that the Legislature expressly confers on it (plus those implied powers that are

---

[100] AR 106, ¶¶ 5-9, 13-15, 21-22.

[101] AR 64, ¶¶ 5, 6.

reasonably necessary to carry out those express responsibilities). *See Public Utility Com'n of Texas v. City Publ. Serv. Bd. of San Antonio,* 53 S.W.3d 310, 315 (Tex. 2001) ("*City Publ. Serv. Bd.*"); *Panda Power Generation Infrastructure Fund, LLC v. ERCOT*, 641 S.W.3d 893, 915 (Tex. App.–Dallas 2022, pet. filed); *Southwestern Electric Power Co. v Public Utility Com'n*, 419 S.W.3d 414, 422 (Tex. App.–Amarillo 2011, pet. denied).

In contrast with courts of general jurisdiction under Article V of the Texas Constitution such as a district court (which is presumed to have subject-matter jurisdiction absent a showing to the contrary), an administrative agency such as the Commission does not share that jurisdictional presumption but, rather, may hear only those matters that the Legislature has authorized it to hear via clear and express statutory language. *See In re Centerpoint Energy Houston Electric, LLC*, 629 S.W.3d 149, 154 (Tex. 2021); *In re Entergy Corp.*, 142 S.W.3d 316, 322 (Tex. 2004); *City Publ. Serv. Bd.*, 53 S.W.3d 310, 316 (Tex. 2001).

Section § 13.043(f), when read in conjunction with the definition of *service* set forth in § 13.002(21), Water Code does not authorize the Commission to hear and decide an appeal regarding NFBWA's decision to increase its GRP Fee, a fee paid by well owners to achieve collective compliance with a regulatory requirement. There is certainly no *clear and express statutory language*

52

authorizing the Commission to hear and decide such an appeal.  The Commission was 100 percent correct in declining to attempt to exercise such jurisdiction.

The District court committed error by reversing that decision. The Court of Appeals should correct this error by reversing the District Court's Final Judgment and Order, and affirm the Commission's Final Order.

## PRAYER

Appellant North Fort Bend Water Authority respectfully requests that this Court reverse the judgment of the District Court, and affirm the Commission's Order, and grant it all such further relief to which it finds it is entitled.

Respectfully submitted,

By: _____
ANDREW S. "DREW" MILLER
State Bar No. 00786857
drew.miller@kempsmith.com
KEMP SMITH LLP
2905 San Gabriel St., Suite 205
Austin, TX  78705
(512) 320-5466
(512) 320-5431 (fax)

**ATTORNEYS FOR APPELLANT
NORTH FORT BEND WATER
AUTHORITY**

54

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief has been compiled using a computer program in Word with 14-point font conventional typeface for the body of the brief and footnotes in 12-point font. Excluding the portions of the brief exempted pursuant to Rule 9.4 of the Texas Rules of Appellate Procedure, this brief contains 10,972 words.

_____
Andrew S. "Drew" Miller

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing has been sent via electronic filing system on this 8th day of October, 2025, to the following:

C. Joe Freeland
State Bar No. 07417500
MATHEWS & FREELAND, LLP
2105 East MLK Jr. Blvd
Austin, Texas 78702
Telephone: (512) 404-7800
Facsimile: (512) 703-2785
jfreeland@mandf.com

Jordan Pratt
Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
Jordan.Pratt@oag.texas.gov

_____
Andrew S. "Drew" Miller

NO. 15-25-00104-CV

IN THE FIFTEENTH COURT OF APPEALS AUSTIN, TEXAS

——————————

PUBLIC UTILITY COMMISSION, *et al.*, Appellants

v.

CITY OF FULSHEAR, Appellee

——————————

On appeal from the 53rd District Court of Travis County, Texas

——————————

**APPELLANT'S APPENDIX 1**

——————————

Final Order of the Commission (AR 86)................................................................. Tab A

Trial Court Judgment (CF 622-23)...................................................................... Tab B

Texas Water Code § 13.043(f) ............................................................................ Tab C

Texas Water Code § 13.002(21)........................................................................... Tab D

| | |
|---|---|
| PETITION OF THE CITY OF | § |
| FULSHEAR APPEALING THE | § |
| DECISION OF NORTH FORT BEND | § |
| WATER AUTHORITY TO INCREASE | § |
| GROUNDWATER REDUCTION PLAN | § |
| AND SURFACE WATER FEES | § |

## ORDER

This Order addresses the petition of the City of Fulshear appealing North Fort Bend Water Authority's decision to increase its groundwater-reduction-plan fee and surface-water fee under Texas Water Code (TWC) §§ 12.013 and 13.043(f). The Water Authority filed a motion asserting Fulshear's appeals under TWC § 12.013 and 13.043(f) should be dismissed for lack of jurisdiction and failure to state a claim for which relief may be granted. The State Office of Administrative Hearings (SOAH) administrative law judge (ALJ) filed a proposal for decision recommending the Commission dismiss Fulshear's appeal under both statutes. The Commission adopted the proposal for decision to extent it dismissed Fulshear's appeal under TWC § 12.013, rejected it to the extent it dismissed Fulshear's appeal under TWC § 13.043(f), and remanded the docket to SOAH for further processing.

On remand, the SOAH ALJ filed a second proposal for decision recommending the Commission dismiss Fulshear's appeal under TWC § 13.043(f) for lack of jurisdiction and failure to state a claim for which relief may be granted. The Commission agrees with the recommendation and dismisses Fulshear's appeal under TWC § 13.043(f). Accordingly, the Commission adopts the proposal for decision, including findings of fact and conclusions of law, to the extent provided in this Order.

The Commission makes the following changes to the proposal for decision. The Commission modifies finding of fact 1 and adds new findings of fact 1A and 2A to more accurately describe the parties to this proceeding, and modifies findings of fact 20 and 21 to specify the date interim orders were filed. To provide context for the Commission's decision on the first proposal for decision, the Commission adds new findings of fact 18A and 18B and modifies finding of

97

fact 19. The Commission also adds new finding of fact 21A to describe the proposal for decision on remand, deletes findings of fact 22 and 23 because they are duplicative of findings of fact 8 and 9, and deletes finding of fact 24 because it is unnecessary to support the Order.

The Commission modifies conclusions of law 2 and 5 to add needed citations, modifies conclusion of law 9 for clarity, deletes conclusions of law 10 and 11 because they are duplicative of conclusion of law 13, and adds new conclusion of law 13A to establish that dismissal is appropriate under the Commission's procedural rules. The Commission also makes non-substantive changes for such matters as capitalization, spelling, grammar, punctuation, style, correction of numbering, and readability.

## I. Findings of Fact

The Commission adopts the following findings of fact.

### *The Parties*

1. The North Fort Bend Water Authority is a regional water authority in Fort Bend and Harris County that wholesales surface water to certain water districts and municipalities within its boundaries.

1A. The Water Authority imposes a fee for groundwater use on non-exempt well owners and collects a fee for surface water delivery to certain entities within its boundaries under a groundwater reduction plan.

2. The City of Fulshear is a municipality that owns and operates non-exempt wells within the Water Authority's boundaries.

2A. Fulshear provides potable water service on a retail basis to customers.

### *Fees*

3. The Water Authority charges three types of fees: the GRP fee, the surface water fee, and the imported water fee.

4. The Water Authority has two classes of customers: those subject to the groundwater reduction plan by virtue of their location within the Water Authority's territory, and those subject to the GRP by contract. Fulshear is subject to the GRP by virtue of its location.

5.     In return for paying the GRP fee, participants in the Water Authority's GRP achieve collective compliance with the groundwater reduction requirements of the Fort Bend Subsidence District.

6.     The GRP fee, in part, funds the construction of infrastructure that will eventually provide surface water to Fulshear.

7.     The surface water fee is based on the actual amount of water a customer receives.

8.     Fulshear does not receive actual water from the Water Authority.

9.     Fulshear does not pay surface water fees to the Water Authority.

## *Ordinance Setting Rates Being Appealed*

10.     On December 16, 2021, the Water Authority approved an amended rate order, enacting new rates for the GRP fee, the surface water fee, and the imported water fee, effective January 1, 2022.

## *The Appeal*

11.     Within 90 days of the approval of the amended rate order, on March 16, 2022, Fulshear filed a petition appealing the Water Authority's new fees under TWC §§ 12.013 and 13.043(f).

12.     Fulshear appeals changes to the GRP Fee and surface water fee.

13.     On June 22, 2022, the Commission ALJ found the petition sufficient for further review.

## *Referral to SOAH*

14.     On August 24, 2022, the Commission referred this case to SOAH.

15.     On December 15, 2022, the Water Authority filed a motion to dismiss the petition for lack of jurisdiction and failure to state a claim for which relief may be granted.

16.     Fulshear and Commission Staff filed responses to the motion to dismiss on December 15, 2022, and all parties filed replies on February 27, 2023.

17.     In SOAH Order No. 7 filed on April 27, 2023, the SOAH ALJ granted the Water Authority's motion to dismiss and informed the parties that a proposal for decision would be forthcoming.

18. In SOAH Order No. 8 filed on May 9, 2023, the SOAH ALJ abated the proceeding pending the issuance of the proposal for decision.

18A. On June 30, 2023, the SOAH ALJ filed a proposal for decision recommending the Commission dismiss the appeals under TWC §§ 12.013 and 13.043 for lack of jurisdiction and failure to state a claim for which relief may be granted.

18B. In the June 30, 2023 proposal for decision, the SOAH ALJ determined Fulshear's appeal under TWC § 13.043(f) should be dismissed by applying the *Crystal Clear* standard—a legal standard created by the Austin Court of Appeals to determine if a tract of land is receiving service for the purpose of a streamlined expedited release under TWC § 13.2541.[1]

19. In an interim order filed on November 1, 2023, the Commission adopted the June 30, 2023 proposal for decision to the extent it dismissed Fulshear's appeal under TWC § 12.013, rejected the proposal for decision to the extent it dismissed Fulshear's appeal under TWC § 13.043(f), and remanded the balance of the proceeding to SOAH for further processing.

20. In SOAH Order No. 11 filed on January 8, 2024, the SOAH ALJ set a schedule for parties to file briefs on the remaining issues.

21. In SOAH Order No. 12 filed on February 12, 2024, the SOAH ALJ admitted evidence and granted a motion to extend the time for parties to file briefs.

21A. On April 4, 2024, the SOAH ALJ filed a proposal for decision recommending the Commission dismiss the appeal under TWC § 13.043(f) for lack of jurisdiction and failure to state a claim for which relief may be granted.

22. DELETED.

23. DELETED.

24. DELETED.

---

[1] *See Tex. Gen. Land Office v. Crystal Clear Water Supply Corp.*, 449 S.W.3d 130 (Tex. App.—Austin 2014, pet. denied).

## II. Conclusions of Law

The Commission adopts the following conclusions of law.

1.  Under TWC § 13.043(f), a retail public utility that receives water service from another retail public utility or political subdivision of the state, may appeal to the utility commission a decision of the provider of water or sewer service affecting the amount paid for water or sewer service.

2.  The Water Authority is a retail public utility under TWC § 13.002(19) and a political subdivision under TWC § 13.043(f).

3.  Fulshear is a retail public utility under TWC § 13.002(19).

4.  This docket was processed in accordance with the requirements of the Texas Water Code and Commission rules.

5.  SOAH has jurisdiction to conduct a hearing on the merits and issue a proposal for decision with findings of fact and conclusions of law for this proceeding under TWC § 13.041(c-1), PURA § 14.053, and Tex. Gov't Code § 2003.049.

6.  This appeal was timely filed with the Commission and the Water Authority under TWC § 13.043(f) and 16 TAC § 24.101(f).

7.  Under TWC § 13.002(21), *service* means any act performed, anything furnished or supplied, and any facilities or lines committed or used by a retail public utility in the performance of its duties under this chapter to other retail public utilities, as well as the interchange of facilities between two or more retail public utilities.

8.  Fulshear does not receive water service from the Water Authority under TWC § 13.043(f).

9.  The Water Authority's December 16, 2021 decision to change its GRP, surface water, and imported water fees did not affect the amount Fulshear pays for water service under TWC § 13.043(f).

10. DELETED.

11. DELETED.

12.     SOAH has jurisdiction to dismiss all issues within a proceeding and issue a proposal for decision under 16 TAC §§ 22.181(f)(2) and 22.261.

13.     Fulshear's petition does not invoke the Commission's jurisdiction under TWC §§ 12.013(a) or 13.043(f) and fails to state a claim for which relief can be granted.

13A.     Fulshear's appeal under TWC § 13.043(f) should be dismissed under 16 TAC §§ 22.181(d)(1) and (8) for lack of jurisdiction and failure to state a claim for which relief may be granted.

### III. Ordering Paragraphs

In accordance with these findings of fact and conclusions of law, the Commission issues the following orders:

1.     The Commission adopts the proposal for decision, including findings of fact and conclusions of law, to the extent provided in this Order.

2.     Fulshear's petition is dismissed.

3.     The Commission denies all other motions and any other requests for general or specific relief, if not expressly granted.

Signed at Austin, Texas the ___23rd___ day of ___May___ 2024.

PUBLIC UTILITY COMMISSION OF TEXAS

_____
THOMAS J. GLEESON, CHAIRMAN

_____
LORI COBOS, COMMISSIONER

_____
KATHLEEN JACKSON, COMMISSIONER

Office 16
q:\cadm\orders\final\53000\53363 fo.docx

CAUSE NO. D-1-GN-24-004710

| | | |
|---|---|---|
| CITY OF FULSHEAR, TEXAS | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| PUBLIC UTILITY COMMISSION | § | |
| OF TEXAS, | § | 53rd JUDICIAL DISTRICT |
| *Defendant.* | § | |

## FINAL JUDGMENT AND ORDER

On May 15, 2025, the hearing on the merits was held in the judicial review of the Public Utility Commission of Texas' (the "Commission") Final Order (the "Final Order") in *Petition of the City of Fulshear Appealing the Decision of North Fort Bend Water Authority to Increase Groundwater Reduction Plan and Surface Water Fees*, PUC Docket No. 53363. All parties appeared through counsel, and the administrative record was admitted into evidence.

The Court reviewed the Final Order in this appeal pursuant to Texas Utilities Code § 15.001 and Texas Government Code § 2001.174. Based on the pleadings, administrative record, briefs submitted, and argument of counsel, it is the opinion of the Court that the Commission's Final Order erred by finding that the Plaintiff, City of Fulshear ("Fulshear"), does not receive water service from the North Fort Bend Water Authority (the "Water Authority") under Texas Water Code § 13.043(f) and this error prejudiced the substantial rights of Fulshear.

The Court specifically finds that the Final Order prejudiced the substantial rights of Fulshear and should be reversed as follows:

The Commission's finding that Fulshear does not receive water service from the Water Authority, including and as stated/incorporated in Conclusions of Law No. 8, was arbitrary and capricious because there is no rational connection between the uncontroverted facts in the record and the Commission's finding. These facts include: (1) Fulshear's status as a member of a group (the "GRP Participants") that receives surface water from the Water Authority, (2) the Water

622

Authority's construction of facilities to eventually provide surface water specifically to Fulshear, and (3) the Water Authority's control, as the permittee, of the production of groundwater from Fulshear's groundwater wells; and the fact that Fulshear pays the Water Authority for all of these services.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Commission's Final Order provision finding that Fulshear does not receive water service from the Water Authority is reversed and remanded to the Commission for further proceedings consistent with this Order.

The Court denies all other relief not granted in this Final Judgment. This Final Judgment disposes of all parties and all claims and is appealable. All costs of court in this cause are adjudged against Defendant.

Signed on ___May 15, 2025___

Hon. Maya Guerra Gamble
Presiding Judge

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office On 07/08/2025 03:33:29

VELVA L. PRICE
DISTRICT CLERK
By Deputy:

Vernon's Texas Statutes and Codes Annotated
　Water Code (Refs & Annos)
　　Title 2. Water Administration (Refs & Annos)
　　　Subtitle B. Water Rights
　　　　Chapter 13. Water Rates and Services (Refs & Annos)
　　　　　Subchapter C. Jurisdiction

V.T.C.A., Water Code § 13.043

§ 13.043. Appellate Jurisdiction

Currentness

(a) Any party to a rate proceeding before the governing body of a municipality may appeal the decision of the governing body to the utility commission. This subsection does not apply to a municipally owned utility. An appeal under this subsection must be initiated within 90 days after the date of notice of the final decision by the governing body, or within 30 days if the appeal relates to the rates of a Class A utility, by filing a petition for review with the utility commission and by serving copies on all parties to the original rate proceeding. The utility commission shall hear the appeal de novo and shall fix in its final order the rates the governing body should have fixed in the action from which the appeal was taken and may include reasonable expenses incurred in the appeal proceedings. The utility commission may establish the effective date for the utility commission's rates at the original effective date as proposed by the utility provider and may order refunds or allow a surcharge to recover lost revenues. The utility commission may consider only the information that was available to the governing body at the time the governing body made its decision and evidence of reasonable expenses incurred in the appeal proceedings.

(b) Ratepayers of the following entities may appeal the decision of the governing body of the entity affecting their water, drainage, or sewer rates to the utility commission:

(1) a nonprofit water supply or sewer service corporation created and operating under Chapter 67;

(2) a utility under the jurisdiction of a municipality inside the corporate limits of the municipality;

(3) a municipally owned utility, if the ratepayers reside outside the corporate limits of the municipality, including a decision of a governing body that results in an increase in rates when the municipally owned utility takes over the provision of service to ratepayers previously served by another retail public utility;

(4) a district or authority created under Article III, Section 52, or Article XVI, Section 59, of the Texas Constitution that provides water or sewer service to household users;

APPENDIX 1 - TAB C

(5) a public utility agency; and

(6) a utility owned by an affected county, if the ratepayer's rates are actually or may be adversely affected. For the purposes of this section ratepayers who reside outside the boundaries of the district or authority shall be considered a separate class from ratepayers who reside inside those boundaries.

(b-1) A municipally owned utility shall:

(1) disclose to any person, on request, the number of ratepayers who reside outside the corporate limits of the municipality; and

(2) provide to any person, on request, a list of the names and addresses of the ratepayers who reside outside the corporate limits of the municipality.

(b-2) Unless a ratepayer has requested that a municipally owned utility disclose the ratepayer's personal information under Section 182.052, Utilities Code, the municipally owned utility may not disclose the address of the ratepayer under Subsection (b-1)(2).

(b-3) The municipally owned utility may not charge a fee for disclosing the information under Subsection (b-1)(1). The municipally owned utility may charge a reasonable fee for providing information under Subsection (b-1)(2). The municipally owned utility shall provide information requested under Subsection (b-1)(1) by telephone or in writing as preferred by the person making the request.

(b-4) Subsection (b)(3) does not apply to a municipally owned utility that takes over the provision of service to ratepayers previously served by another retail public utility if the municipally owned utility:

(1) takes over the service at the request of the ratepayer;

(2) takes over the service in the manner provided by Subchapter H; or

(3) is required to take over the service by state law, an order of the commission, or an order of the utility commission.

(c) An appeal under Subsection (b) must be initiated by filing a petition for review with the utility commission and the entity providing service within 90 days after the effective day of the rate change or, if appealing under Subdivision (b)(2) or (6) , within 90 days after the date on which the governing body of the municipality or affected county makes a final decision. The petition must be signed by the lesser of 10,000 or 10 percent of those ratepayers whose rates have been changed and who are eligible to appeal under Subsection (b).

(d) In an appeal under Subsection (b) of this section, each person receiving a separate bill is considered a ratepayer, but one person may not be considered more than one ratepayer regardless of the number of bills the person receives. The petition for review is considered properly signed if signed by a person, or the spouse of a person, in whose name utility service is carried.

(e) In an appeal under Subsection (b), the utility commission shall hear the appeal de novo and shall fix in its final order the rates the governing body should have fixed in the action from which the appeal was taken. The utility commission may establish the effective date for the utility commission's rates at the original effective date as proposed by the service provider, may order refunds or allow a surcharge to recover lost revenues, and may allow recovery of reasonable expenses incurred by the retail public utility in the appeal proceedings. The utility commission may consider only the information that was available to the governing body at the time the governing body made its decision and evidence of reasonable expenses incurred by the retail public utility in the appeal proceedings. The rates established by the utility commission in an appeal under Subsection (b) remain in effect until the first anniversary of the effective date proposed by the retail public utility for the rates being appealed or until changed by the service provider, whichever date is later, unless the utility commission determines that a financial hardship exists.

(f) A retail public utility that receives water or sewer service from another retail public utility or political subdivision of the state, including an affected county, may appeal to the utility commission a decision of the provider of water or sewer service affecting the amount paid for water or sewer service. An appeal under this subsection must be initiated within 90 days after the date of notice of the decision is received from the provider of water or sewer service by the filing of a petition by the retail public utility.

(f-1) Subsection (f) does not apply to a decision of a municipality regarding wholesale water or sewer service provided to another municipality.

(g) An applicant for service from an affected county or a water supply or sewer service corporation may appeal to the utility commission a decision of the county or water supply or sewer service corporation relating to any fee or amount to be paid to obtain service, other than the regular membership or tap fees or a groundwater conservation district or other governmental fee. In addition to the factors specified under Subsection (j), in an appeal brought under this subsection the utility commission shall determine whether the amount paid by the applicant is consistent with the tariff of the water supply or sewer service corporation and is reasonably related to the cost of installing on-site and off-site facilities to provide service to that applicant. If the utility commission finds the amount charged to be clearly unreasonable, it shall establish the fee to be paid for that applicant. An appeal under this subsection must be initiated within 90 days after the date written notice is provided to the applicant or member of the decision of an affected county or water supply or sewer service corporation relating to the applicant's initial request for that service. A determination made by the utility commission on an appeal under this subsection is binding on all similarly situated applicants for service, and the utility commission may not consider other appeals on the same issue until the applicable provisions of the tariff of the water supply or sewer service corporation are amended.

(g-1) An applicant for service from a water supply or sewer service corporation may appeal to the utility commission for a determination of whether the regular membership fee or tap fee required to be paid to obtain service is consistent with the tariff of the water supply or sewer service corporation. If the utility commission finds that the fee is inconsistent with the tariff of the water supply or sewer service corporation, the utility commission shall issue an order requiring the water supply or sewer service corporation to charge the applicant an amount consistent with the tariff. An appeal under this subsection must be initiated not later than the 30th day after the date the water supply or sewer service corporation provides the applicant with the cost of obtaining service.

(h) The utility commission may, on a motion by the utility commission or by the appellant under Subsection (a), (b), or (f), establish interim rates to be in effect until a final decision is made.

(i) The governing body of a municipally owned utility or a political subdivision, other than a public utility agency, within 60 days after the date of a final decision on a rate change, shall provide individual written notice to each ratepayer eligible to appeal who resides outside the boundaries of the municipality or the political subdivision. The notice must include, at a minimum, the effective date of the new rates, the new rates, and the location where additional information on rates can be obtained. The governing body of a municipally owned utility or a political subdivision may provide the notice electronically if the utility or political subdivision has access to a ratepayer's e-mail address.

(i-1) The board of directors of a public utility agency, within 60 days after the date of a final decision on a rate change, shall provide individual written notice to each ratepayer eligible to appeal the rates. The notice must include, at a minimum, the effective date of the new rates, the new rates, and the location where additional information on rates can be obtained. The board of directors of the public utility agency may provide the notice electronically if the agency has access to a ratepayer's e-mail address.

(j) In an appeal under this section, the utility commission shall ensure that every appealed rate is just and reasonable. Rates shall not be unreasonably preferential, prejudicial, or discriminatory but shall be sufficient, equitable, and consistent in application to each class of customers. The utility commission shall use a methodology that preserves the financial integrity of the retail public utility.

(j-1) Notwithstanding Subsection (j), in an appeal under this section of a rate charged by a public utility agency, the utility commission shall ensure that the rate complies with Section 572.061(e), Local Government Code.

(k) Not later than the 30th day after the date of a final decision on a rate change, the commissioners court of an affected county shall provide written notice to each ratepayer eligible to appeal. The notice must include the effective date of the new rates, the new rates, and the location where additional information on rates may be obtained.

**Credits**

Added by Acts 1985, 69th Leg., ch. 795, § 3.005, eff. Sept. 1, 1985. Amended by Acts 1987, 70th Leg., ch. 539, § 7, eff. Sept. 1, 1987; Acts 1989, 71st Leg., ch. 567, § 6, eff. Sept. 1, 1989; Acts 1991, 72nd Leg., ch. 678, § 2, eff. Sept. 1, 1991; Acts 1991, 72nd Leg., ch. 852, § 2, eff. June 16, 1991; Acts 1993, 73rd Leg., ch. 549, § 1, eff. Sept. 1, 1993; Acts 1995, 74th

Leg., ch. 400, § 2, eff. Sept. 1, 1995; Acts 1995, 74th Leg., ch. 979, § 7, eff. June 16, 1995; Acts 1999, 76th Leg., ch. 62, § 18.53, eff. Sept. 1, 1999; Acts 2011, 82nd Leg., ch. 1021 (H.B. 2694), § 9.01, eff. Sept. 1, 2011; Acts 2013, 83rd Leg., ch. 170 (H.B. 1600), § 2.15, eff. Sept. 1, 2013; Acts 2013, 83rd Leg., ch. 171 (S.B. 567), § 15, eff. Sept. 1, 2013; Acts 2015, 84th Leg., ch. 853 (S.B. 1148), § 4, eff. Sept. 1, 2015; Acts 2021, 87th Leg., ch. 1025 (H.B. 872), § 5, eff. June 18, 2021; Acts 2021, 87th Leg., ch. 279 (H.B. 3689), § 1, eff. Sept. 1, 2021; Acts 2021, 87th Leg., ch. 367 (S.B. 387), § 1, eff. Sept. 1, 2021; Acts 2023, 88th Leg., ch. 1051 (S.B. 317), § 1, eff. June 18, 2023; Acts 2025, 89th Leg., ch. 90 (S.B. 1169), § 13, eff. May 20, 2025; Acts 2025, 89th Leg., ch. 776 (S.B. 740), § 3, eff. Sept. 1, 2025.

V. T. C. A., Water Code § 13.043, TX WATER § 13.043
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Water Code (Refs & Annos)
    Title 2. Water Administration (Refs & Annos)
      Subtitle B. Water Rights
        Chapter 13. Water Rates and Services (Refs & Annos)
          Subchapter A. General Provisions (Refs & Annos)

V.T.C.A., Water Code § 13.002

§ 13.002. Definitions

Currentness

In this chapter:

(1) "Affected person" means any landowner within an area for which a certificate of public convenience and necessity is filed, any retail public utility affected by any action of the regulatory authority, any person or corporation whose utility service or rates are affected by any proceeding before the regulatory authority, or any person or corporation that is a competitor of a retail public utility with respect to any service performed by the retail public utility or that desires to enter into competition.

(1-a) "Landowner," "owner of a tract of land," and "owners of each tract of land" include multiple owners of a single deeded tract of land as shown on the appraisal roll of the appraisal district established for each county in which the property is located.

(2) "Affiliated interest" or "affiliate" means:

(A) any person or corporation owning or holding directly or indirectly five percent or more of the voting securities of a utility;

(B) any person or corporation in any chain of successive ownership of five percent or more of the voting securities of a utility;

(C) any corporation five percent or more of the voting securities of which is owned or controlled directly or indirectly by a utility;

APPENDIX 1 - TAB D

(D) any corporation five percent or more of the voting securities of which is owned or controlled directly or indirectly by any person or corporation that owns or controls directly or indirectly five percent or more of the voting securities of any utility or by any person or corporation in any chain of successive ownership of five percent of those utility securities;

(E) any person who is an officer or director of a utility or of any corporation in any chain of successive ownership of five percent or more of voting securities of a public utility;

(F) any person or corporation that the utility commission, after notice and hearing, determines actually exercises any substantial influence or control over the policies and actions of a utility or over which a utility exercises such control or that is under common control with a utility, such control being the possession directly or indirectly of the power to direct or cause the direction of the management and policies of another, whether that power is established through ownership or voting of securities or by any other direct or indirect means; or

(G) any person or corporation that the utility commission, after notice and hearing, determines is exercising substantial influence over the policies and actions of the utility in conjunction with one or more persons or corporations with which they are related by ownership or blood relationship, or by action in concert, that together they are affiliated within the meaning of this section, even though no one of them alone is so affiliated.

(3) "Allocations" means, for all retail public utilities, the division of plant, revenues, expenses, taxes and reserves between municipalities or between municipalities and unincorporated areas, where those items are used for providing water or sewer utility service in a municipality or for a municipality and unincorporated areas.

(4) "Board" means the Texas Water Development Board.

(4-a) "Class A utility" means a public utility that provides retail water or sewer utility service through 10,000 or more taps or connections.

(4-b) "Class B utility" means a public utility that provides retail water or sewer utility service through 2,300 or more taps or connections but fewer than 10,000 taps or connections.

(4-c) "Class C utility" means a public utility that provides retail water or sewer utility service through 500 or more taps or connections but fewer than 2,300 taps or connections.

(4-d) "Class D utility" means a public utility that provides retail water or sewer utility service through fewer than 500 taps or connections.

(5) "Commission" means the Texas Commission on Environmental Quality.

(6) "Commissioner" means a member of the commission.

(7) "Corporation" means any corporation, joint-stock company, or association, domestic or foreign, and its lessees, assignees, trustees, receivers, or other successors in interest, having any of the powers or privileges of corporations not possessed by individuals or partnerships but does not include municipal corporations unless expressly provided in this chapter.

(8) "Executive director" means the executive director of the commission.

(9) "Facilities" means all the plant and equipment of a retail public utility, including all tangible and intangible real and personal property without limitation, and any and all means and instrumentalities in any manner owned, operated, leased, licensed, used, controlled, furnished, or supplied for, by, or in connection with the business of any retail public utility.

(10) "Incident of tenancy" means water or sewer service, provided to tenants of rental property, for which no separate or additional service fee is charged other than the rental payment.

(11) "Member" means a person who holds a membership in a water supply or sewer service corporation and is a record owner of a fee simple title to property in an area served by a water supply or sewer service corporation or a person who is granted a membership and who either currently receives or will be eligible to receive water or sewer utility service from the corporation. In determining member control of a water supply or sewer service corporation, a person is entitled to only one vote regardless of the number of memberships the person owns.

(12) "Municipality" means cities existing, created, or organized under the general, home-rule, or special laws of this state.

(13) "Municipally owned utility" means any utility owned, operated, and controlled by a municipality or by a nonprofit corporation whose directors are appointed by one or more municipalities.

(13-a) "Municipal utility district" means a political subdivision of this state operating under Chapter 54.

(14) "Order" means the whole or a part of the final disposition, whether affirmative, negative, injunctive, or declaratory in form, of the regulatory authority in a matter other than rulemaking, but including issuance of certificates of convenience and necessity and rate setting.

(15) "Person" includes natural persons, partnerships of two or more persons having a joint or common interest, mutual or cooperative associations, water supply or sewer service corporations, and corporations.

(16) "Proceeding" means any hearing, investigation, inquiry, or other fact-finding or decision-making procedure under this chapter and includes the denial of relief or the dismissal of a complaint.

(16-a) "Public utility agency" means a public utility agency created under Chapter 572, Local Government Code.

(17) "Rate" means every compensation, tariff, charge, fare, toll, rental, and classification or any of those items demanded, observed, charged, or collected whether directly or indirectly by any retail public utility for any service, product, or commodity described in Subdivision (23) of this section and any rules, regulations, practices, or contracts affecting that compensation, tariff, charge, fare, toll, rental, or classification.

(18) "Regulatory authority" means, in accordance with the context in which it is found, the commission, the utility commission, or the governing body of a municipality.

(19) "Retail public utility" means any person, corporation, public utility, water supply or sewer service corporation, municipality, public utility agency, political subdivision or agency operating, maintaining, or controlling in this state facilities for providing potable water service or sewer service, or both, for compensation.

(20) "Retail water or sewer utility service" means potable water service or sewer service, or both, provided by a retail public utility to the ultimate consumer for compensation.

(21) "Service" means any act performed, anything furnished or supplied, and any facilities or lines committed or used by a retail public utility in the performance of its duties under this chapter to its patrons, employees, other retail public utilities, and the public, as well as the interchange of facilities between two or more retail public utilities.

(22) Repealed by Acts 2025, 89th Leg., ch. 521 (H.B. 2712), § 5, eff. Sept. 1, 2025.

(22-a) "Utility commission" means the Public Utility Commission of Texas.

(23) "Water and sewer utility," "public utility," or "utility" means any person, corporation, cooperative corporation, affected county, or any combination of these persons or entities, other than a municipal corporation, public utility agency, water supply or sewer service corporation, or political subdivision of the state, except an affected county, or their lessees, trustees, and receivers, owning or operating for compensation in this state equipment or facilities for the transmission, storage, distribution, sale, or provision of potable water to the public or for the resale of potable water to the public for any use or for

the collection, transportation, treatment, or disposal of sewage or other operation of a sewage disposal service for the public, other than equipment or facilities owned and operated for either purpose by a municipality or other political subdivision of this state or a water supply or sewer service corporation, but does not include any person or corporation not otherwise a public utility that furnishes the services or commodity only to itself or its employees or tenants as an incident of that employee service or tenancy when that service or commodity is not resold to or used by others.

(24) "Water supply or sewer service corporation" means a nonprofit corporation organized and operating under Chapter 67 that provides potable water service or sewer service for compensation and that has adopted and is operating in accordance with by-laws or articles of incorporation which ensure that it is member-owned and member-controlled. The term does not include a corporation that provides retail water or sewer service to a person who is not a member, except that the corporation may provide retail water or sewer service to a person who is not a member if the person only builds on or develops property to sell to another and the service is provided on an interim basis before the property is sold.

(25) "Wholesale water or sewer service" means potable water or sewer service, or both, provided to a person, political subdivision, or municipality who is not the ultimate consumer of the service.

(26) "Affected county" is a county to which Subchapter B, Chapter 232, Local Government Code, applies.

**Credits**

Added by Acts 1985, 69th Leg., ch. 795, § 3.005, eff. Sept. 1, 1985. Amended by Acts 1987, 70th Leg., ch. 539, §§ 1, 2, eff. Sept. 1, 1987; Acts 1989, 71st Leg., ch. 567, § 2, eff. Sept. 1, 1989; Acts 1991, 72nd Leg., ch. 678, § 1, eff. Sept. 1, 1991; Acts 1991, 72nd Leg., 1st C.S., ch. 3, § 1.058, eff. Aug. 12, 1991; Acts 1995, 74th Leg., ch. 400, § 1, eff. Sept. 1, 1995; Acts 1995, 74th Leg., ch. 979, § 6, eff. June 16, 1995; Acts 1997, 75th Leg., ch. 1010, § 6.02, eff. Sept. 1, 1997; Acts 1999, 76th Leg., ch. 62, § 18.52, eff. Sept. 1, 1999; Acts 1999, 76th Leg., ch. 404, § 29, eff. Sept. 1, 1999; Acts 2005, 79th Leg., ch. 1145, § 1, eff. Sept. 1, 2005; Acts 2007, 80th Leg., ch. 1430, § 2.05, eff. Sept. 1, 2007; Acts 2013, 83rd Leg., ch. 170 (H.B. 1600), § 2.08, eff. Sept. 1, 2013; Acts 2013, 83rd Leg., ch. 171 (S.B. 567), § 8, eff. Sept. 1, 2013; Acts 2017, 85th Leg., ch. 948 (S.B. 1842), § 1, eff. Sept. 1, 2017; Acts 2019, 86th Leg., ch. 967 (S.B. 700), § 1, eff. Sept. 1, 2019; Acts 2025, 89th Leg., ch. 90 (S.B. 1169), § 12, eff. May 20, 2025; Acts 2025, 89th Leg., ch. 521 (H.B. 2712), § 5, eff. Sept. 1, 2025; Acts 2025, 89th Leg., ch. 776 (S.B. 740), § 2, eff. Sept. 1, 2025.

V. T. C. A., Water Code § 13.002, TX WATER § 13.002
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

## NO. 15-25-00104-CV

## IN THE FIFTEENTH COURT OF APPEALS AUSTIN, TEXAS

PUBLIC UTILITY COMMISSION, *et al.*, Appellants

v.

CITY OF FULSHEAR, Appellee

On appeal from the 53rd District Court of Travis County, Texas

## APPELLANT'S APPENDIX 2

List of Stipulated Facts and Motion to Admit Evidence (AR 64) .................... Tab A

North Fort Bend Water Authority Enabling Act
  (TEX. SPEC. DIST. LOCAL LAWS CODE §§ 8813.001-.151) ......................... Tab B

Affidavit of Matthew L. Froehlich, P.E. (dated 12-15-2022) (AR 106) ......... Tab C

NFBWA's Amended Rate Order (AR 93) ...................................................... Tab D

First Proposal for Decision (AR 46) .......................................................... Tab E

Proposal for Decision on Remand (AR 74) .................................................. Tab F

Fulshear's Moton for Rehearing (AR 88) (2) .............................................. Tab G

Fort Bend Subsidence District Water Well Permit (AR 96) ........................... Tab H

58

| PETITION BY THE CITY OF | § | BEFORE THE STATE OFFICE |
|---|---|---|
| FULSHEAR APPEALING THE | § | |
| DECISION OF NORTH FORT BEND | § | OF |
| WATER AUTHORITY TO INCREASE | § | |
| GROUNDWATER REDUCTION PLAN | § | ADMINISTRATIVE HEARINGS |
| AND SURFACE WATER FEES | § | |

## LIST OF STIPULATED FACTS AND MOTION TO ADMIT EVIDENCE

TO THE HONORABLE ADMINISTRATIVE LAW JUDGE:

COME NOW, the City of Fulshear (Fulshear), and North Fort Bend Water Authority (NFBWA) and file this List of Stipulated Facts and Motion to Admit Evidence. Fulshear and NFBWA are in agreement on the stipulated facts and motion to admit evidence and Commission Staff is unopposed.

## I.     BACKGROUND

Pursuant to the Joint Proposed Procedural Schedule filed by the parties in this proceeding on December 20, 2023, the parties set a proposed due date of January 29, 2024, for filing a List of Stipulated Facts and Motion to Admit Evidence. The stipulated facts and documents in the attached Appendix are intended to provide evidentiary support for the briefing contemporaneously filed by the Parties in the docket regarding Preliminary Order No. 10.a and to provide necessary facts to allow the ALJ to respond to the issues raised by the Commission in its Preliminary Order on Phase One Issues. Fulshear and NFBWA anticipate that the ALJ will be able to resolve Phase One based on the stipulations, documents, and accompanying briefing.

## II.     STIPULATED FACTS

**Disclaimer**: These stipulations are solely for purposes of the Phase One proceeding in this Docket No. 53363 and are not binding on any party in any cost-of-service docket or any other proceeding.

1.     Fulshear is a retail public utility under TWC § 13.002(19) and 16 TAC § 24.3(31). Fulshear is a municipality that maintains and controls in this state facilities for providing potable water service for compensation.

2.     NFBWA maintains and controls in this state facilities for providing potable water for compensation and furnishes potable water for compensation to certain entities.

3.     The Fort Bend Subsidence District (FBSD) is a political subdivision and a conservation and reclamation district created by the Texas Legislature in 1989 to regulate the

withdrawal of groundwater within the FBSD to prevent subsidence that contributes to flooding and infrastructure damages.

4. NFBWA is a political subdivision and a conservation and reclamation district created by the Texas Legislature in 2005.

5. Fulshear owns groundwater wells used to provide retail water service that are located within FBSD's Regulatory Area A and NFBWA's boundaries. Fulshear is a participant in NFBWA's Groundwater Reduction Plan (GRP).

6. Fulshear pays GRP Fees to NFBWA. Fulshear does not pay (and has never paid) Surface Water Fees to NFBWA and has never received surface water from NFBWA.

7. NFBWA is listed as the permittee on all of the permits issued by FBSD for Fulshear's wells.

8. The GRP Fee is charged to participants in NFBWA's GRP based on the amount of groundwater produced from wells owned by that participant.

9. The Surface Water Fee is charged to participants in NFBWA's GRP based on the amount of surface water received from NFBWA by that participant.

10. NFBWA determined the amount of the GRP Fee and Surface Water Fee using the American Water Works Association Manual M-1 (M-1 Manual) as the source of the methodology. NFBWA used its estimated total costs (debt service, reserves, and operating costs) divided by the estimated total amount of water (surface and groundwater) used by the GRP Participants to establish the Surface Water Fee. NFBWA then reduced the Surface Water Fee by an amount ($.35) which is intended to reflect average operating costs per gallon borne by well owners to establish the GRP Fee.

11. Fulshear did not file a petition for exclusion (to opt out of NFBWA's jurisdiction) pursuant to NFBWA's enabling legislation within 60 days of the effective date of that legislation.

### III.

### IV. MOTION TO ADMIT EVIDENCE

Fulshear and NFBWA request the entry of the following documents into the record of this proceeding and waive all objections to the admission of the documents:

1. NFBWA Amended Rate Order (Dec. 16, 2021) [Appendix Tab 1].

2. NFBWA Groundwater Reduction Plan (March 2008) (NFBWA00001-000265) [Appendix Tab 2].

3. Fort Bend Subsidence District Rules (Amended 2019) [Appendix Tab 3].

4. Fort Bend Subsidence District Water Well Permit No. 2022-107-29287-0, Well No. 493 (Oct. 6, 2022) (NFBWA000312-000314) [Appendix Tab 4].

5. NFBWA Rate Study and Long-Term Financial Forecast (Nov. 2016) (without Appendix A) [Appendix Tab 5].

6. NFBWA Response to Fulshear's First RFI (Oct. 3, 2022) [Appendix Tab 6].

7. NFBWA Response to Fulshear's Second RFI (Dec. 12, 2022) [Appendix Tab 7].

8. NFBWA Water Use (Actual/Projected) Spreadsheet (NFBWA000871-000877) [Appendix Tab 8].

9. NFBWA Infrastructure Schematic (BGE) (Aug. 2022) (NFBWA000878) [Appendix Tab 9].

10. NFBWA 2025 System Schedule (BGE) (NFBWA000879-000886) [Appendix Tab 10].

11. NFBWA Financial Report (Dec. 31, 2021) [Appendix Tab 11].

12. 2020 Cost of Service Rate Study (Board Presentation) (October 2020) (Willdan) [Appendix Tab 12].

13. FBSD 2013 District Plan (Amended June 22, 2022) [Appendix Tab 13].

14. Affidavit of Matthew L Froehlich (12-15-2022) [Appendix Tab 14].

15. Affidavit of Matthew L. Froehlich (2-22-2023) (with Exhibits) [Appendix Tab 15].

16. Affidavit of Nelisa Heddin (1-16-2023) [Appendix Tab 16].

## V.    CONCLUSION

Fulshear and NFBWA respectfully request that the ALJ adopt the proposed stipulations and admit the referenced documents into the evidentiary record in this docket.

**Dated: January 29, 2024**

Respectfully submitted,

C. Joe Freeland
State Bar No. 07417500

**Mathews & Freeland, LLP**
8140 N. MoPac Expy, Ste 4-200
Austin, Texas 78759
Telephone (512) 404-7800
Facsimile (512) 703-2785
jfreeland@mandf.com

**ATTORNEYS FOR CITY OF FULSHEAR**

With Permission
for Drew Miller

Andrew S. "Drew" Miller
Drew.Miller@kempsmith.com
State Bar No. 00786857
Sergio M. Estrada

Sergio.Estrada@kempsmith.com
State Bar No. 24080886

**KEMP SMITH LLP**
2905 San Gabriel St., Suite 205
Austin, TX 78705
(512) 320-5466
(512) 320-5431 (Fax)

**ATTORNEYS FOR NORTH FORT BEND WATER AUTHORITY**

**CERTIFICATE OF SERVICE**

I certify that, unless otherwise ordered by the presiding officer, notice of the filing of this document was provided to all parties of record via electronic mail on January 29, 2024, in accordance with the Orders Suspending Rules filed in Project No. 50664.

_____
C. Joe Freeland



**For the best experience, open this PDF portfolio in Acrobat X or Adobe Reader X, or later.**

Get Adobe Reader Now!

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter A. General Provisions

V.T.C.A., Special Districts Code § 8813.001

§ 8813.001. Definitions

Currentness

In this chapter:

(1) "Authority" means the North Fort Bend Water Authority.

(2) "Board" means the board of directors of the authority.

(3) "Commission" means the Texas Commission on Environmental Quality or its successor.

(4) "Director" means a member of the board.

(5) "District" means any district created under Sections 52(b)(1) and (2), Article III, or Section 59, Article XVI, Texas Constitution, regardless of the manner of creation, other than:

(A) a navigation district or port authority;

(B) a district governed by Chapter 36, Water Code; or

(C) a district that does not have the legal authority to supply water.

(6) "Groundwater reduction plan" means a plan adopted or implemented to supply water, reduce reliance on groundwater, regulate groundwater pumping and usage, or require and allocate water usage among persons in order to comply with or exceed requirements imposed by the Fort Bend Subsidence District or the Harris-Galveston Subsidence District, as applicable, including any applicable groundwater reduction requirements.

(7) "Local government" means a municipality, county, district, or other political subdivision of this state or a combination of two or more of those entities.

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

APPENDIX 2 - TAB B

(8) "Person" includes an individual, corporation, organization, government or governmental subdivision or agency, district, local government, business trust, estate, trust, partnership, association, and any other legal entity.

(9) "Subsidence" means the lowering in elevation of the surface of land by the withdrawal of groundwater.

(10) "System" means a network of pipelines, conduits, valves, canals, pumping stations, force mains, treatment plants, and any other construction, device, or related appurtenance used to treat or transport water.

(11) "Water" includes:

(A) groundwater, percolating or otherwise;

(B) any surface water, natural or artificial, navigable or nonnavigable; and

(C) industrial and municipal wastewater.

(12) "Well" includes a facility, device, or method used to withdraw groundwater from a groundwater source within the boundaries of the authority.

**Credits**

Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005. Amended by Acts 2013, 83rd Leg., ch. 161 (S.B. 1093), § 18.006, eff. Sept. 1, 2013.

V. T. C. A., Special Districts Code § 8813.001, TX SPEC DIST § 8813.001
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
   Special District Local Laws Code (Refs & Annos)
     Title 6. Water and Wastewater
       Subtitle H. Districts Governing Groundwater
         Chapter 8813. North Fort Bend Water Authority
           Subchapter A. General Provisions

V.T.C.A., Special Districts Code § 8813.002

§ 8813.002. Nature of Authority

Currentness

The authority is a regional water authority in Fort Bend and Harris Counties created under and essential to accomplish the purposes of Section 59, Article XVI, Texas Constitution, including the acquisition and provision of surface water and groundwater for residential, commercial, industrial, agricultural, and other uses, the reduction of groundwater withdrawals, the conservation, preservation, protection, and recharge of groundwater and of groundwater reservoirs or their subdivisions, the prevention of waste of groundwater, the control of subsidence caused by the withdrawal of water from groundwater reservoirs or their subdivisions, and other public purposes stated in this chapter. The authority is a political subdivision of this state.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.002, TX SPEC DIST § 8813.002
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter A. General Provisions

V.T.C.A., Special Districts Code § 8813.003

§ 8813.003. Confirmation Election Not Required

<u>Currentness</u>

An election to confirm the creation of the authority is not required.

**Credits**

Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.003, TX SPEC DIST § 8813.003

Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
Special District Local Laws Code (Refs & Annos)
Title 6. Water and Wastewater
Subtitle H. Districts Governing Groundwater
Chapter 8813. North Fort Bend Water Authority
Subchapter A. General Provisions

V.T.C.A., Special Districts Code § 8813.004

§ 8813.004. Initial Authority Territory

Currentness

(a) The authority is initially composed of the territory described by Section 2 of the Act creating this chapter.

(b) The boundaries and field notes contained in Section 2 of the Act creating this chapter form a closure. A mistake made in the field notes or in copying the field notes in the legislative process does not affect:

(1) the organization, existence, or validity of the authority;

(2) the right of the authority to issue any type of bond or note for the purposes for which the authority is created or to pay the principal of and interest on a bond or note;

(3) the right of the authority to impose or collect a fee, user fee, rate, charge, or special assessment; or

(4) the legality or operation of the authority.

(c) All of the territory of a local government created after the effective date of the Act creating this chapter that encompasses any territory within the boundaries of the authority, immediately on the creation and without any action required of the authority, is subject to all of the rights, powers, privileges, and rules of the authority to the same extent as the territory was before the local government was created.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.004, TX SPEC DIST § 8813.004
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
Special District Local Laws Code (Refs & Annos)
Title 6. Water and Wastewater
Subtitle H. Districts Governing Groundwater
Chapter 8813. North Fort Bend Water Authority
Subchapter A. General Provisions

V.T.C.A., Special Districts Code § 8813.005

§ 8813.005. Exclusion of Certain Territory

Currentness

(a) A district or municipality that, on the effective date of the Act creating this chapter, is located, wholly or partly, within the territory described by Section 2(a) or (b) of the Act creating this chapter may petition for exclusion of all of its territory from the authority's boundaries by a petition signed by a majority of the members of the governing body of the district or municipality.

(b) The board shall:

(1) not later than the 120th day after the effective date of the Act creating this chapter, grant the petition and order the territory excluded if the petition:

(A) includes an accurate legal description of the boundaries of the territory to be excluded; and

(B) is filed with the authority not later than the 60th day after the effective date of the Act creating this chapter; and

(2) if the board grants the petition, file for recording in the office of the county clerk for the applicable county or counties a copy of the order and a description of the authority's boundaries as they exist after the exclusion of the territory.

(c) If a district or municipality is excluded from the authority's boundaries under this section, the authority is not required to:

(1) provide water or any other service to the district or municipality; or

(2) include the district or municipality in any groundwater reduction plan adopted or implemented by the authority.

(d) If, not later than the 60th day after the effective date of the Act creating this chapter, a district or municipality files a petition for exclusion under this section, the authority may not impose fees, user fees, rates, charges, or special assessments on the district or municipality after the petition is filed with the authority unless the district or municipality is annexed by the authority under Section 8813.006.

(e) If a district or municipality excluded from the authority's boundaries under this section petitions the authority to be annexed under Section 8813.006, the authority may annex the district or municipality. The authority may, as a condition of annexation, require terms and conditions the board considers appropriate. The authority may require the district or municipality to pay the authority the fees, user fees, charges, and special assessments, with interest, that, as determined by the authority, the district or municipality would have been charged by the authority if the district or municipality had not been excluded from the authority under this section.

**Credits**

Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.005, TX SPEC DIST § 8813.005

Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter A. General Provisions

V.T.C.A., Special Districts Code § 8813.006

§ 8813.006. Annexation

Currentness

(a) Except to the extent the authority agrees in writing, a municipality's annexation of territory within the authority does not affect:

(1) the authority's powers inside or outside the annexed territory;

(2) the authority's boundaries or contracts; or

(3) the authority's ability to assess fees, user fees, rates, charges, or special assessments inside or outside the territory annexed by the municipality.

(b) Territory may be annexed to the authority, regardless of whether the territory is contiguous to the authority, as provided by Chapter 49, Water Code.

(c) In addition to the authority granted by Subsection (b), regardless of whether the territory is contiguous to the authority, the authority may annex some or all of the territory located within a district or municipality if the district or municipality files with the authority a petition requesting the annexation signed by a majority of the members of the governing body of the district or municipality. The petition must include an accurate legal description of the boundaries of the territory to be included. If the authority has bonds, notes, or other obligations outstanding, the authority shall require the petitioning district or municipality to be obligated to pay its share of the principal of and interest on the outstanding bonds, notes, or other obligations, and related costs. The board may grant the petition and order the territory described by the petition annexed to the authority if it is feasible, practicable, and to the advantage of the authority.

(d) Any territory that a district located within the authority annexes becomes territory of the authority on the effective date of the annexation without any action required of the authority. The authority by rule may require all districts located within the authority to send to the authority written notice of the effective date of an annexation and require the districts to send to the authority copies of any necessary documents describing the annexed land and describing the districts' boundaries as they exist after inclusion of the annexed land.

(e) The annexation to the authority of territory under this section does not affect the validity of the authority's bonds issued before or after the annexation.

(f) A municipality that annexes territory of the authority for limited purposes under Subchapter F, Chapter 43, Local Government Code, does not have the right to:

(1) receive notices from the authority under Section 8813.103(c);

(2) participate in the appointment of directors under Subchapter B; or

(3) receive information about or have the opportunity to fund its share of capital costs in the manner provided by the authority under Section 8813.104.

(g) Notwithstanding any provision of this section or other law, no territory may be annexed into or added to the authority that, at the time of annexation or addition, is located within the boundaries of both:

(1) another regional water authority created under Section 59, Article XVI, Texas Constitution; and

(2) a subsidence district.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005. Amended by Acts 2015, 84th Leg., ch. 621 (S.B. 1051), § 1, eff. June 16, 2015.

V. T. C. A., Special Districts Code § 8813.006, TX SPEC DIST § 8813.006
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
    Special District Local Laws Code (Refs & Annos)
        Title 6. Water and Wastewater
            Subtitle H. Districts Governing Groundwater
                Chapter 8813. North Fort Bend Water Authority
                    Subchapter A. General Provisions

V.T.C.A., Special Districts Code § 8813.007

§ 8813.007. Applicability of Other Law

Currentness

(a) Except as otherwise provided by this chapter, Chapter 49, Water Code, applies to the authority.

(b) This chapter does not prevail over or preempt a provision of Chapter 36, Water Code, or Chapter 8801 or 8834 of this code that is being implemented by the Harris-Galveston Subsidence District or Fort Bend Subsidence District, as applicable.

(c) Chapter 36, Water Code, does not apply to the authority.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005. Amended by Acts 2009, 81st Leg., ch. 875, § 1, eff. June 19, 2009; Acts 2013, 83rd Leg., ch. 161 (S.B. 1093), § 18.007, eff. Sept. 1, 2013.

V. T. C. A., Special Districts Code § 8813.007, TX SPEC DIST § 8813.007
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
    Special District Local Laws Code (Refs & Annos)
        Title 6. Water and Wastewater
            Subtitle H. Districts Governing Groundwater
                Chapter 8813. North Fort Bend Water Authority
                    Subchapter A. General Provisions

V.T.C.A., Special Districts Code § 8813.008

§ 8813.008. Finding of Benefit

Currentness

All the land, property, and persons included within the boundaries of the authority will be directly benefited by the works, projects, improvements, and services to be provided by the authority under powers conferred by Section 59, Article XVI, Texas Constitution, and this chapter. The authority is created to serve a public use and benefit. The creation of the authority will serve to promote the health, safety, and general welfare of persons within the authority and the general public. Any fees, user fees, rates, charges, or special assessments imposed by the authority under this chapter are necessary to pay for the costs of accomplishing the purposes of the authority as set forth in Section 59, Article XVI, Texas Constitution, and this chapter, including:

(1) the reduction of groundwater withdrawals;

(2) the facilitation of compliance with the requirements of the Fort Bend Subsidence District or the Harris-Galveston Subsidence District, as applicable; and

(3) the provision of services, facilities, and systems.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005. Amended by Acts 2013, 83rd Leg., ch. 161 (S.B. 1093), § 18.008, eff. Sept. 1, 2013.

V. T. C. A., Special Districts Code § 8813.008, TX SPEC DIST § 8813.008
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter A-1. Temporary Provisions [Expired]

V.T.C.A., Special Districts Code § 8813.021

§§ 8813.021, 8813.022. Expired

[Currentness](#)

V. T. C. A., Special Districts Code § 8813.021, TX SPEC DIST § 8813.021

Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter A-1. Temporary Provisions [Expired]

V.T.C.A., Special Districts Code § 8813.022

§§ 8813.021, 8813.022. Expired

Currentness

V. T. C. A., Special Districts Code § 8813.022, TX SPEC DIST § 8813.022
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
   Special District Local Laws Code (Refs & Annos)
     Title 6. Water and Wastewater
       Subtitle H. Districts Governing Groundwater
         Chapter 8813. North Fort Bend Water Authority
           Subchapter B. Board of Directors

V.T.C.A., Special Districts Code § 8813.051

§ 8813.051. Directors; Terms

Currentness

(a) The authority is governed by a board of seven directors.

(b) The directors serve staggered four-year terms that expire May 15 of even-numbered years.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.051, TX SPEC DIST § 8813.051
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter B. Board of Directors

V.T.C.A., Special Districts Code § 8813.052

§ 8813.052. Eligibility to Serve as Director

Currentness

(a) To be eligible to serve as a director of the authority or to be listed on a ballot as a candidate for director of the authority representing a director precinct, an individual must:

(1) be at least 18 years of age;

(2) be a resident of the authority; and

(3) have served as a director of one or more districts for a total of at least four years.

(b) Notwithstanding Subsection (a), to serve as a director representing, or to be listed on a ballot as a candidate for director representing, a director precinct that includes any part of the City of Fulshear, an individual must:

(1) meet the qualifications provided by Subsections (a)(1) and (2); and

(2) have served as:

(A) the mayor or a member of the city council of the City of Fulshear for any period; or

(B) a director of one or more districts for a total of at least four years.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.052, TX SPEC DIST § 8813.052
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter B. Board of Directors

V.T.C.A., Special Districts Code § 8813.053

§ 8813.053. Disqualification of Directors

Currentness

The common law doctrine of incompatibility does not disqualify an official or employee of a public entity from serving as a director of the authority. A director who is also an officer or employee of a public entity may not participate in the discussion of or vote on a matter regarding a contract with that public entity.

**Credits**

Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.053, TX SPEC DIST § 8813.053

Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter B. Board of Directors

V.T.C.A., Special Districts Code § 8813.054

§ 8813.054. Conflicts of Interest

Currentness

Chapter 171, Local Government Code, governs conflicts of interest of board members.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.054, TX SPEC DIST § 8813.054
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter B. Board of Directors

V.T.C.A., Special Districts Code § 8813.055

§ 8813.055. Single-member Director Precincts

Currentness

(a) The authority is divided into seven single-member director precincts, as described by Section 3 of the Act creating this chapter.

(b) The board may redraw the single-member director precincts in a manner that is reasonable and equitable:

(1) after any change in the boundaries of the authority; or

(2) by a resolution redrawing the director precincts adopted by a two-thirds majority of the board based on changed circumstances.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.055, TX SPEC DIST § 8813.055
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter B. Board of Directors

V.T.C.A., Special Districts Code § 8813.056

§ 8813.056. Method of Appointment of Directors

Currentness

(a) The governing bodies of the districts and municipalities located within each director precinct jointly shall appoint one director to represent the precinct by a vote conducted as provided by this section.

(b) If a district or municipality is located within two or more director precincts, the district or municipality is considered, for purposes of this section, to be located only within the director precinct in which the greatest amount of territory of the district or municipality is located.

(c) For the appointment of a director for a director precinct, the board shall determine the number of votes each district or municipality may cast. The number of votes for a governing body of a district or municipality within the precinct is equal to the number computed by dividing the total number of units of water, as determined by the board, used within the precinct by the district or municipality during the calendar year preceding the year in which the director is selected by the total number of units of water used within the precinct by all districts and municipalities in the precinct, multiplying that quotient by 100, and rounding that result to the nearest one-tenth. The board shall provide the presiding officer of each governing body of a district or municipality within each director precinct written notice of the number of votes computed for that governing body to cast.

(d) For purposes of Subsection (c), the board shall determine the amount of water usage of all districts and municipalities within each director precinct.

(e) In the appropriate even-numbered year, the governing body of each district or municipality in a director precinct by resolution may nominate one candidate for the position of director for that director precinct. Each district or municipality shall submit the name of its candidate, if any, to the presiding officer of the authority by February 15 of that year. If by February 15 of that year only one candidate's name is submitted for the position of director for a director precinct, the board may declare the unopposed candidate elected and may cancel the director appointment procedures generally required by this section for that position. If more than one candidate's name is submitted for the position of director for a director precinct, before March 15 of that year the board shall prepare, for the director precinct or precincts from which a director is being appointed, a ballot listing all of the candidates for that director precinct and shall provide a copy of the appropriate ballot to the presiding officer of the governing body of each district or municipality located within the director precinct from which a director is being appointed.

(f) An individual may not be listed as a candidate on the ballot for more than one director position. If a candidate is nominated for more than one director position, the candidate must choose to be on the ballot for only one director position.

(g) The governing body of each district or municipality shall determine its votes for director by resolution and submit them to the presiding officer of the authority before May 1 of the appropriate even-numbered year. In casting its votes for director, the governing body of each district or municipality may vote for only one candidate on the ballot for the director precinct in which the district or municipality is located. For each director precinct from which a director is being appointed, the board shall count the votes, declare elected the candidate who received the greatest number of votes from districts and municipalities located within that director precinct, and submit the results before May 15 of that year to the governing body of each district or municipality within that director precinct.

(h) The board may adopt rules regarding:

(1) the manner and timing of determinations and calculations required by this section;

(2) the reporting of water usage to the authority by districts and municipalities; and

(3) the conduct and process of the appointment of directors.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.056, TX SPEC DIST § 8813.056
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter B. Board of Directors

V.T.C.A., Special Districts Code § 8813.057

§ 8813.057. Vacancy in Office of Director

Currentness

A vacancy in the office of director shall be filled by appointment by the governing bodies of the districts and municipalities that are located within the director precinct for which the vacancy occurred. The appointment process shall follow the procedures of Section 8813.056. The board may establish dates different from those specified by Sections 8813.056(e) and (g), but the date for the board's submission of the voting results to each district and municipality may not be later than the 120th day after the date the vacancy occurs.

**Credits**

Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.057, TX SPEC DIST § 8813.057
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
    Special District Local Laws Code (Refs & Annos)
        Title 6. Water and Wastewater
            Subtitle H. Districts Governing Groundwater
                Chapter 8813. North Fort Bend Water Authority
                    Subchapter B. Board of Directors

V.T.C.A., Special Districts Code § 8813.058

§ 8813.058. Meetings and Actions of Board

Currentness

(a) The board may meet as many times each year as the board considers appropriate.

(b) Directors of the authority are public officials and are entitled to governmental immunity for their actions in their capacity as directors and officers of the authority.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.058, TX SPEC DIST § 8813.058
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
Special District Local Laws Code (Refs & Annos)
Title 6. Water and Wastewater
Subtitle H. Districts Governing Groundwater
Chapter 8813. North Fort Bend Water Authority
Subchapter B. Board of Directors

V.T.C.A., Special Districts Code § 8813.059

§ 8813.059. General Manager

Currentness

(a) The board may employ a general manager of the authority or contract with a person to perform the duties of a general manager. The board may delegate to the general manager full authority to manage and operate the affairs of the authority subject only to orders of the board.

(b) The board may delegate to the general manager the authority to employ all persons necessary for the proper handling of the business and operation of the authority and to determine the compensation to be paid to all employees, other than the general manager.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.059, TX SPEC DIST § 8813.059
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
Special District Local Laws Code (Refs & Annos)
Title 6. Water and Wastewater
Subtitle H. Districts Governing Groundwater
Chapter 8813. North Fort Bend Water Authority
Subchapter C. Powers and Duties

V.T.C.A., Special Districts Code § 8813.101

§ 8813.101. General Powers and Duties

Currentness

(a) The authority may:

(1) provide for the conservation, preservation, protection, recharge, and prevention of waste of groundwater, and for the reduction of groundwater withdrawals as necessary to develop, implement, or enforce a groundwater reduction plan, in a manner consistent with the purposes of Section 59, Article XVI, Texas Constitution, and facilitate compliance with Fort Bend Subsidence District or Harris-Galveston Subsidence District, as applicable, rules, orders, regulations, or requirements;

(2) acquire or develop surface water and groundwater supplies from sources inside or outside the boundaries of the authority, conserve, store, transport, treat, purify, distribute, sell, and deliver water to or among persons inside and outside the boundaries of the authority, and allocate water among persons participating in the authority's groundwater reduction plan whether they are located inside or outside the authority's boundaries;

(3) enter into contracts with persons inside or outside the authority on terms and conditions the board considers desirable, fair, and advantageous for the performance of its rights, powers, and authority under this chapter;

(4) coordinate water services provided inside, outside, or into the authority;

(5) provide wholesale and retail water services to any users or customers within the authority's boundaries without being required to execute contracts with those users or customers;

(6) adopt policies establishing whether, when, and the manner in which the authority uses requests for proposals in obtaining services, including professional services;

(7) determine whether to adopt administrative policies in addition to those required by Section 49.199, Water Code; and

(8) administer and enforce this chapter.

(b) Sections 49.451-49.455, Water Code, do not apply to the authority.

(c) Notwithstanding Subsection (a)(5), the authority may not provide retail water service to a retail user within the authority's boundaries that is located within the boundaries of a district or municipality on the date the authority awards a contract for the construction or executes a contract for the acquisition of water facilities to serve that retail user, unless:

(1) the district or municipality consents in writing to the authority's provision of retail water service; or

(2) the retail user owns or operates a well.

(d) If a retail user that does not own or operate a well is added to the boundaries of a district or municipality after the date the authority awards a contract for the construction or executes a contract for the acquisition of water facilities to serve that retail user, the authority may provide retail service to that retail user without the written consent of the district or municipality.

(e) The authority is not a special water authority for purposes of Chapter 49, Water Code.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005. Amended by Acts 2013, 83rd Leg., ch. 161 (S.B. 1093), § 18.009, eff. Sept. 1, 2013; Acts 2015, 84th Leg., ch. 621 (S.B. 1051), § 2, eff. June 16, 2015.

V. T. C. A., Special Districts Code § 8813.101, TX SPEC DIST § 8813.101
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter C. Powers and Duties

V.T.C.A., Special Districts Code § 8813.102

§ 8813.102. Authority Rules

[Currentness](#)

The authority may adopt and enforce rules reasonably required to implement this chapter, including rules governing procedures before the board and rules regarding implementation, enforcement, and any other matters related to the authority's water supply or groundwater reduction plan.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.102, TX SPEC DIST § 8813.102
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter C. Powers and Duties

V.T.C.A., Special Districts Code § 8813.103

§ 8813.103. Fees, User Fees, Rates, and Charges

Currentness

(a) The authority may establish fees, user fees, rates, and charges and classifications of payers of fees and rates as necessary to enable the authority to fulfill the authority's purposes and regulatory functions provided by this chapter. The authority may impose fees, user fees, rates, and charges on any person within the authority.

(b) The authority may charge the owner of a well located within the authority's boundaries a fee or user fee according to the amount of water pumped from the well. If ownership of a well changes, both the prior and subsequent well owners are liable to the authority, jointly and severally, for all fees and user fees imposed by the authority under this subsection, and any related penalties and interest, for water pumped from that well before the change in well ownership.

(c) The board shall make reasonable efforts to send districts and municipalities written notice of the date, time, and location of the meeting at which the board intends to adopt a proposed charge under Subsection (b) and the amount of the proposed charge. The board's failure to comply with this subsection does not invalidate a charge adopted by the board under Subsection (b).

(d) For wells located in Harris County or Fort Bend County, the board shall exempt from the charge under Subsection (b) classes of wells that are not subject to any groundwater reduction requirement imposed by the Harris-Galveston Subsidence District or the Fort Bend Subsidence District, as applicable. If any of those classes of wells become subject to a groundwater reduction requirement imposed by the applicable subsidence district, the authority may impose the charge under Subsection (b) on those classes. The board by rule may exempt any other classes of wells from the charge under Subsection (b). The board may not apply the charge under Subsection (b) to a well:

  (1) with a casing diameter of less than five inches that serves only a single-family dwelling; or

  (2) regulated under Chapter 27, Water Code.

(e) For purposes of Subsection (d), a well is subject to a groundwater reduction requirement if the Harris-Galveston Subsidence District or the Fort Bend Subsidence District, as applicable, has adopted or adopts a requirement or rule that groundwater withdrawals from the well, or from the well and other wells collectively, be reduced, including a groundwater reduction that is not required until a future date.

(e-1) Notwithstanding Subsection (d), the authority may impose a charge under Subsection (b) on a well or class of wells located in Harris or Fort Bend County that, on or after February 1, 2013:

(1) ceases to be subject to a groundwater reduction requirement imposed by the Harris-Galveston Subsidence District or the Fort Bend Subsidence District, as applicable; or

(2) is no longer subject to the regulatory provisions, permitting requirements, or jurisdiction of the Harris-Galveston Subsidence District or the Fort Bend Subsidence District, as applicable.

(f) The authority may establish fees, user fees, rates, and charges that are sufficient to:

(1) achieve water conservation;

(2) prevent waste of water;

(3) serve as a disincentive to pumping groundwater;

(4) develop, implement, or enforce a groundwater reduction plan;

(5) accomplish the purposes of this chapter, including making available alternative water supplies;

(6) enable the authority to meet operation and maintenance expenses;

(7) pay the principal of and interest on notes, bonds, and other obligations issued in connection with the exercise of the authority's general powers and duties; and

(8) satisfy all rate covenants relating to the issuance of notes, bonds, and other obligations.

(g) The authority may charge rates established by the authority for water purchased from the authority.

(h) The authority may impose fees, user fees, or charges for the importation of water into the authority's boundaries from a source located outside the authority's boundaries.

**Credits**

Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005. Amended by Acts 2013, 83rd Leg., ch. 89 (S.B. 595), § 1, eff. May 18, 2013; Acts 2013, 83rd Leg., ch. 161 (S.B. 1093), § 18.010, eff. Sept. 1, 2013.

V. T. C. A., Special Districts Code § 8813.103, TX SPEC DIST § 8813.103

Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter C. Powers and Duties

V.T.C.A., Special Districts Code § 8813.104

§ 8813.104. Purchase of Water From Another Entity

Currentness

(a) If the authority purchases water from another entity for resale to local governments, the authority shall use its best efforts in negotiating with the entity to determine the amount of capital costs included in any rates or charges paid by the authority. The authority shall determine the amount of expected capital costs of its own system.

(b) The authority may provide each district or municipality within its boundaries information regarding the share of the capital costs to be paid by the district or municipality, as determined by the authority, and may provide each district or municipality the opportunity, in a manner and by a procedure determined by the authority, to fund its share of the capital costs with proceeds from the sale of bonds or fees and charges collected by the districts or municipalities. A district or municipality may use any lawful source of revenue, including bond funds, to pay any sums due to the authority.

(c) The authority may adopt a procedure by which a district or municipality may receive a credit from the authority. The board may adopt any other procedure necessary to accomplish the goals of this section.

(d) In complying with this section, the authority may use any reasonable basis to calculate from time to time the share of the capital costs of a district or municipality. The authority may calculate the shares of the capital costs based on the amount of water used within the authority by the district or municipality during the calendar year preceding the year in which the calculation is made.

(e) This section or any failure to comply with this section does not limit or impede the authority's ability to issue bonds or notes or invalidate any fees, user fees, charges, rates, or special assessments imposed by the authority.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005. Amended by Acts 2015, 84th Leg., ch. 621 (S.B. 1051), § 3, eff. June 16, 2015.

V. T. C. A., Special Districts Code § 8813.104, TX SPEC DIST § 8813.104
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
   Special District Local Laws Code (Refs & Annos)
      Title 6. Water and Wastewater
         Subtitle H. Districts Governing Groundwater
            Chapter 8813. North Fort Bend Water Authority
               Subchapter C. Powers and Duties

V.T.C.A., Special Districts Code § 8813.105

§ 8813.105. Assessments

Currentness

(a) The board may undertake improvement projects and services that confer a special benefit on all or a definable part of the authority. The board may impose special assessments on property in that area, including property of a local government, based on the benefit conferred by the improvement project or services, to pay all or part of the cost of the project and services. The board may provide improvements and services to an area outside the boundaries of the authority if the board determines that there is a benefit to the authority. The authority may finance with special assessments any improvement project or service authorized by this chapter or any other applicable law.

(b) Services or improvement projects may be financed with special assessments under this chapter only after the board holds a public hearing on the advisability of the improvements and services and the proposed assessments.

(c) The board shall publish notice of the hearing in a newspaper or newspapers with general circulation in Harris and Fort Bend Counties. The publication must be made not later than the 30th day before the date of the hearing.

(d) Notice provided under this section must include:

   (1) the time and place of the hearing;

   (2) the general nature of the proposed improvement project or services;

   (3) the estimated cost of the improvement, including interest during construction and associated financing costs; and

   (4) the proposed method of assessment.

(e) Written notice containing the information required by Subsection (d) shall be mailed by certified mail, return receipt requested, not later than the 30th day before the date of the hearing. The notice shall be mailed to each person within the authority who holds a permit for a well issued by the Harris-Galveston Subsidence District or Fort Bend Subsidence District, as applicable, and whose well is subject to a groundwater reduction requirement imposed by that district. The Harris-Galveston Subsidence District and Fort Bend Subsidence District shall provide to the authority a list of persons who hold such a permit.

(f) The board may establish rules regarding procedures for a hearing. A hearing on the services or improvement project, whether conducted by the board or a hearings examiner, may be adjourned from time to time. At the conclusion of a hearing conducted by the board, the board shall make written findings and conclusions relating to the advisability of the improvement project or services, the nature of the improvement project or services, the estimated cost, and the area benefited. If the board appoints a hearings examiner to conduct the hearing, after conclusion of the hearing, the hearings examiner shall file with the board a written report of the examiner's findings and conclusions.

(g) At a hearing on proposed assessments, on adjournment of the hearing, or after consideration of the hearings examiner's report, the board shall hear and rule on all objections to each proposed assessment. The board may amend proposed assessments for any property. After the board hears and takes action on those objections, the board, by order:

   (1) shall impose the assessments as special assessments on the property;

   (2) shall specify the method of payment of the assessments; and

   (3) may provide that those assessments, including interest, be paid in periodic installments.

(h) Periodic installments must be in amounts sufficient to meet annual costs for services and improvements as provided by Subsection (j) and continue for the number of years required to retire the indebtedness or pay for the services to be rendered. The board may provide interest charges or penalties for failure to make timely payment and may impose an amount to cover delinquencies and expenses of collection.

(i) If assessments are imposed for more than one service or improvement project, the board may provide that assessments collected for one service or improvement project may be borrowed to be used for another service or improvement project. The board shall establish a procedure for the distribution or use of any assessments in excess of those necessary to finance the services or improvement project for which those assessments were collected.

(j) The board shall apportion the cost of an improvement project or services to be assessed against the property in the authority according to the special benefits that accrue to the property because of the improvement project or services. The board may assess the cost only according to the number of gallons of groundwater pumped from wells within the authority that are subject to a groundwater reduction requirement imposed by the Harris-Galveston Subsidence District or Fort Bend Subsidence District, as applicable. The board may not assess the cost according to groundwater pumped from:

   (1) a well with a casing diameter of less than five inches that serves only a single-family dwelling; or

   (2) a well that is regulated by Chapter 27, Water Code.

(k) The area of the authority to be assessed according to the findings of the board may be the entire authority or any part of the authority and may be less than the area proposed in the notice of the hearing.

(l) The area to be assessed may not include property that is not within the authority boundaries at the time of the hearing unless there is an additional hearing, following the required notice.

(m) Notwithstanding Subsection (l), the owner of land annexed to the authority after the authority has imposed assessments may waive the right to notice and an assessment hearing and may agree to the imposition and payment of assessments at an agreed rate for land annexed to the authority. A district or municipality may waive the right to notice and an assessment hearing for land within its boundaries annexed to the authority and may agree to the imposition and payment of assessments at an agreed rate for the annexed land.

(n) The board shall have prepared an assessment roll showing the assessments against each property and the board's basis for the assessment. The assessment roll shall be:

　(1) filed with the secretary of the board or other officer who performs the function of secretary; and

　(2) open for public inspection.

(o) After notice and hearing in the manner required for an original assessment, the board may make supplemental assessments to correct omissions or mistakes in the assessment:

　(1) relating to the total cost of the improvement project or services; or

　(2) covering delinquencies or costs of collection.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005. Amended by Acts 2013, 83rd Leg., ch. 161 (S.B. 1093), § 18.011, eff. Sept. 1, 2013.

V. T. C. A., Special Districts Code § 8813.105, TX SPEC DIST § 8813.105
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document**　　　　　　　　　　　　　　　　© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter C. Powers and Duties

V.T.C.A., Special Districts Code § 8813.106

§ 8813.106. Interest and Penalties

[Currentness](#)

The board may require the payment of interest on any late or unpaid fees, user fees, rates, charges, and special assessments due the authority, but the interest rate may not exceed the interest rate permitted by Section 2251.025, Government Code. The board may also impose penalties for the failure to make a complete or timely payment to the authority. In addition, the board may exclude a person, or any territory or well owned or controlled by a person, from the authority's groundwater reduction plan for failure to make a complete or timely payment to the authority.

**Credits**

Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.106, TX SPEC DIST § 8813.106
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter C. Powers and Duties

V.T.C.A., Special Districts Code § 8813.107

§ 8813.107. Attorney's Fees and Collection Expenses

Currentness

(a) The authority is entitled to reasonable attorney's fees incurred by the authority in enforcing its rules.

(b) The authority is entitled to collection expenses and reasonable attorney's fees incurred by the authority in collecting any delinquent fees, user fees, rates, and charges and any related penalties and interest.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.107, TX SPEC DIST § 8813.107
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter C. Powers and Duties

V.T.C.A., Special Districts Code § 8813.108

§ 8813.108. Lien

Currentness

(a) Fees and user fees imposed by the authority under Section 8813.103(b), any related penalties and interest, and collection expenses and reasonable attorney's fees incurred by the authority:

(1) are a first and prior lien against the well to which the fees or user fees apply;

(2) are superior to any other lien or claim other than a lien or claim for county, school district, or municipal ad valorem taxes; and

(3) are the personal liability of and a charge against the owner of the well.

(b) A lien under this section is effective from the date of the resolution or order of the board imposing the fee or user fee until the fee or user fee is paid.

(c) The board may enforce the lien in the same manner that a municipal utility district operating under Chapter 54, Water Code, may enforce an ad valorem tax lien against real property.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.108, TX SPEC DIST § 8813.108
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
Special District Local Laws Code (Refs & Annos)
Title 6. Water and Wastewater
Subtitle H. Districts Governing Groundwater
Chapter 8813. North Fort Bend Water Authority
Subchapter C. Powers and Duties

V.T.C.A., Special Districts Code § 8813.109

§ 8813.109. Administrative Penalty; Injunction

Currentness

(a) A person who violates a rule or order of the authority is subject to an administrative penalty of not more than $5,000, as determined by the board, for each violation or each day of a continuing violation. The person shall pay the penalty to the authority.

(b) The authority may bring an action to recover the penalty in a district court in the county where the violation occurred.

(c) The authority may bring an action for injunctive relief in a district court in the county where a violation of an authority rule or order occurs or is threatened to occur. The court may grant to the authority, without bond or other undertaking, a prohibitory or mandatory injunction that the facts warrant, including a temporary restraining order, temporary injunction, or permanent injunction.

(d) The authority may bring an action for an administrative penalty and injunctive relief in the same proceeding.

**Credits**

Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.109, TX SPEC DIST § 8813.109
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
　Special District Local Laws Code (Refs & Annos)
　　Title 6. Water and Wastewater
　　　Subtitle H. Districts Governing Groundwater
　　　　Chapter 8813. North Fort Bend Water Authority
　　　　　Subchapter C. Powers and Duties

V.T.C.A., Special Districts Code § 8813.110

§ 8813.110. Water Supply or Drought Contingency Plans

Currentness

The authority by rule may develop, prepare, revise, adopt, implement, enforce, and manage comprehensive water supply or drought contingency plans for the authority, or any portion of the authority.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.110, TX SPEC DIST § 8813.110
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
    Special District Local Laws Code (Refs & Annos)
        Title 6. Water and Wastewater
            Subtitle H. Districts Governing Groundwater
                Chapter 8813. North Fort Bend Water Authority
                    Subchapter C. Powers and Duties

V.T.C.A., Special Districts Code § 8813.111

§ 8813.111. Groundwater Reduction Plan

Currentness

(a) The authority may wholly or partly develop, prepare, revise, adopt, implement, enforce, manage, or participate in a groundwater reduction plan that is applicable only to the authority and one or more persons outside the authority. The authority may require that any groundwater reduction plan that the authority wholly or partly develops, prepares, revises, adopts, implements, enforces, or manages or in which the authority participates be the exclusive groundwater reduction plan that is binding and mandatory on some or all of the territory, persons, or wells located within the authority. A groundwater reduction plan may:

(1) specify the measures to be taken to reduce groundwater withdrawals;

(2) identify alternative sources of water, including water from the authority, to be provided to those affected;

(3) identify the rates, terms, and conditions under which alternative sources of water will be provided, which may be changed from time to time as considered necessary by the authority;

(4) specify the dates and extent to which persons or districts within the authority's boundaries shall reduce or cease reliance on groundwater and accept water from alternative sources, including water from the authority;

(5) include other terms and measures that are consistent with the powers and duties of the authority;

(6) exceed the minimum requirements imposed by the Harris-Galveston Subsidence District or Fort Bend Subsidence District, as applicable, including any applicable groundwater reduction requirements; and

(7) be amended from time to time at the discretion of the authority.

(b) Fees, user fees, rates, charges, and special assessments of the authority may be imposed under this chapter for a person's participation in and benefit derived from the authority's groundwater reduction plan or a groundwater reduction plan in which the authority participates.

**Credits**

Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005. Amended by Acts 2013, 83rd Leg., ch. 161 (S.B. 1093), § 18.012, eff. Sept. 1, 2013.

V. T. C. A., Special Districts Code § 8813.111, TX SPEC DIST § 8813.111

Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter C. Powers and Duties

V.T.C.A., Special Districts Code § 8813.112

§ 8813.112. Acquisition, Construction, and Operation of Systems

Currentness

(a) The authority may:

(1) acquire by purchase, gift, lease, contract, or any other legal means a water treatment or supply system, or any other works, plants, improvements, or facilities necessary or convenient to accomplish the purposes of the authority, or any interest of the authority, inside or outside the authority's boundaries;

(2) design, finance, operate, maintain, or construct a water treatment or supply system or any other works, plants, improvements, or facilities necessary or convenient to accomplish the purposes of the authority and provide water services inside or outside the authority's boundaries;

(3) lease or sell a water treatment or supply system or any other works, plants, improvements, or facilities necessary or convenient to accomplish the purposes of the authority that the authority constructs or acquires inside or outside the authority's boundaries;

(4) contract with any person to operate or maintain a water treatment or supply system the person owns; or

(5) acquire water rights under any law or permit.

(b) The authority may contract, according to terms and conditions the board considers desirable, fair, and advantageous, with a person outside the authority's boundaries:

(1) to allow the person, or the person's well, to be included in a groundwater reduction plan adopted or implemented wholly or partly by the authority or in a groundwater reduction plan in which the authority participates;

(2) to sell water to the person; or

(3) to sell the person available excess capacity or additional capacity of the authority's water treatment or supply system.

(c) The authority by rule may require that the plans and specifications of water lines to be constructed within the authority that are designed or intended to serve more than one district or more than one person owning or holding a well permit issued by the Harris-Galveston Subsidence District or Fort Bend Subsidence District, as applicable, be approved by the authority before the commencement of construction of the water lines.

**Credits**

Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005. Amended by Acts 2013, 83rd Leg., ch. 161 (S.B. 1093), § 18.013, eff. Sept. 1, 2013.

V. T. C. A., Special Districts Code § 8813.112, TX SPEC DIST § 8813.112
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter C. Powers and Duties

V.T.C.A., Special Districts Code § 8813.113

§ 8813.113. Sale or Reuse of Water or By-product

Currentness

The authority may store, sell, or reuse:

(1) water; or

(2) any by-product from the authority's operations.

**Credits**

Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.113, TX SPEC DIST § 8813.113

Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
    Special District Local Laws Code (Refs & Annos)
        Title 6. Water and Wastewater
            Subtitle H. Districts Governing Groundwater
                Chapter 8813. North Fort Bend Water Authority
                    Subchapter C. Powers and Duties

V.T.C.A., Special Districts Code § 8813.114

§ 8813.114. Contracts

Currentness

(a) The authority may enter into a contract with a person for the performance of a purpose or function of the authority, including a contract to design, construct, finance, lease, own, manage, operate, or maintain works, improvements, facilities, plants, equipment, or appliances necessary to accomplish a purpose or function of the authority. A contract may be of unlimited duration.

(b) The authority may purchase, acquire, finance, or lease an interest in a project used for a purpose or function of the authority.

(c) The authority may contract for:

(1) the purchase, sale, or lease of water or water rights;

(2) the performance of activities within the powers of the authority through the purchase, construction, or installation of works, improvements, facilities, plants, equipment, or appliances; or

(3) the design, construction, ownership, management, maintenance, or operation of any works, improvements, facilities, plants, equipment, or appliances of the authority or another person.

(d) The authority may purchase surplus property from this state, the United States, or another public entity through a negotiated contract without bids.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.114, TX SPEC DIST § 8813.114
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter C. Powers and Duties

V.T.C.A., Special Districts Code § 8813.115

§ 8813.115. Cooperation With and Assistance of Other Governmental Entities

Currentness

(a) In implementing this chapter, the board may cooperate with and request the assistance of the Texas Water Development Board, the commission, the United States Geological Survey, the Fort Bend Subsidence District, other local governments, and other agencies of the United States and this state.

(b) The Fort Bend Subsidence District may enter into an interlocal contract with the authority to carry out the authority's purposes and may carry out the governmental functions and services specified in the interlocal contract.

(c) In an attempt to minimize costs associated with preparing a groundwater reduction plan, the board may consider the usefulness of water supply studies and plans prepared by or on behalf of the North Harris County Regional Water Authority, the West Harris County Regional Water Authority, the City of Houston, or other governmental entities to the extent those studies or plans are available and applicable to the authority.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.115, TX SPEC DIST § 8813.115
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter C. Powers and Duties

V.T.C.A., Special Districts Code § 8813.116

§ 8813.116. Gifts and Grants

Currentness

The authority may accept a gift or grant from money collected by the Fort Bend Subsidence District to fund the construction, maintenance, or operation of a water treatment or supply system.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.116, TX SPEC DIST § 8813.116
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

**End of Document** <span style="float:right">© 2025 Thomson Reuters. No claim to original U.S. Government Works.</span>

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter C. Powers and Duties

V.T.C.A., Special Districts Code § 8813.117

§ 8813.117. Expenditures

Currentness

(a) The authority's money may be disbursed only by check, draft, order, federal reserve wire system, or other instrument or authorization.

(b) Disbursements of the authority must be signed by at least a majority of the directors. The board by resolution may allow the general manager, treasurer, bookkeeper, or other employee of the authority to sign disbursements, except as limited by Subsection (c).

(c) The board by resolution may allow disbursements to be transferred by federal reserve wire system to accounts in the name of the authority without the necessity of any directors signing the disbursement. Disbursements of the authority's money by federal reserve wire system to any accounts not in the name of the authority must be signed by at least a majority of the directors.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.117, TX SPEC DIST § 8813.117
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter C. Powers and Duties

V.T.C.A., Special Districts Code § 8813.118

§ 8813.118. Ad Valorem Taxation

Currentness

The authority may not impose an ad valorem tax.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.118, TX SPEC DIST § 8813.118
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter C. Powers and Duties

V.T.C.A., Special Districts Code § 8813.119

§ 8813.119. Eminent Domain

Currentness

(a) The authority may acquire by condemnation any land, easements, or other property inside the authority's boundaries to further authorized purposes, powers, or duties of the authority. The authority may acquire by condemnation any land, easements, or other property outside the authority's boundaries for the purposes of pumping, storing, treating, or transporting water. When exercising the power of eminent domain granted by this section, the authority may elect to condemn either the fee simple title or a lesser property interest.

(b) The authority shall exercise the right of eminent domain in the manner provided by Chapter 21, Property Code. The authority is not required to give bond for appeal or bond for costs in a condemnation suit or other suit to which it is a party. The authority is not required to deposit more than the amount of an award in a suit.

(c) The authority may not use the power of eminent domain for the condemnation of land for the purpose of acquiring rights to groundwater or for the purpose of acquiring water or water rights.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.119, TX SPEC DIST § 8813.119
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document**      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
    Special District Local Laws Code (Refs & Annos)
        Title 6. Water and Wastewater
            Subtitle H. Districts Governing Groundwater
                Chapter 8813. North Fort Bend Water Authority
                    Subchapter C. Powers and Duties

V.T.C.A., Special Districts Code § 8813.120

§ 8813.120. Action Against Person, District, or Political Subdivision

Currentness

(a) The authority may bring an action in a district court against a person, including a district or other political subdivision located in the authority's territory or included in the authority's groundwater reduction plan, to:

(1) recover any fees, rates, charges, assessments, collection expenses, attorney's fees, interest, penalties, or administrative penalties due the authority; or

(2) enforce the authority's rules or orders.

(b) Governmental immunity from suit or liability of a district or other political subdivision is waived for the purposes of an action under this section.

**Credits**
Added by Acts 2009, 81st Leg., ch. 875, § 2, eff. June 19, 2009.

V. T. C. A., Special Districts Code § 8813.120, TX SPEC DIST § 8813.120
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

**End of Document**                                            © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Special District Local Laws Code (Refs & Annos)
    Title 6. Water and Wastewater
      Subtitle H. Districts Governing Groundwater
        Chapter 8813. North Fort Bend Water Authority
          Subchapter D. Bonds and Notes

V.T.C.A., Special Districts Code § 8813.151

§ 8813.151. Revenue Bonds and Notes

Currentness

(a) The authority may issue bonds or notes payable solely from revenue from any source, including:

(1) tolls, charges, rates, fees, user fees, and special assessments the authority imposes or collects;

(2) the sale of water, water services, water rights or capacity, water transmission rights or services, water pumping, or any other service or product of the authority provided inside or outside the boundaries of the authority;

(3) grants or gifts;

(4) the ownership or operation of all or a designated part of the authority's works, improvements, facilities, plants, or equipment; and

(5) contracts between the authority and any person.

(b) Notes issued by the authority may be first or subordinate lien notes at the board's discretion.

(c) In connection with any bonds or notes of the authority, the authority may exercise any power of an issuer under Chapter 1371, Government Code.

(d) The authority may conduct a public, private, or negotiated sale of the bonds or notes.

(e) The authority may enter into one or more indentures of trust to further secure its bonds or notes.

(f) The authority may issue bonds or notes in more than one series as necessary to carry out the purposes of this chapter. In issuing bonds or notes secured by revenue of the authority, the authority may reserve the right to issue additional bonds or notes secured by the authority's revenue that are on a parity with or are senior or subordinate to the bonds or notes issued earlier.

(g) A resolution of the board authorizing the bonds or notes or a trust indenture securing the bonds or notes may specify additional provisions that constitute a contract between the authority and its bondholders or noteholders.

(h) Bonds and notes may be additionally secured by deed of trust or mortgage on any or all of the authority's facilities.

(i) The authority may issue refunding bonds or notes to refund any of its bonds or notes in any manner provided by law.

(j) Sections 49.153, 49.154, and 49.181, Water Code, do not apply to bonds or notes issued by the authority. Commission rules regarding bonds or notes do not apply to bonds or notes issued by the authority.

**Credits**
Added by Acts 2005, 79th Leg., ch. 893, § 1, eff. June 17, 2005.

V. T. C. A., Special Districts Code § 8813.151, TX SPEC DIST § 8813.151
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

**End of Document**                                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

STATE OF TEXAS )
)
COUNTY OF FORT BEND )

## AFFIDAVIT OF MATTHEW L. FROEHLICH

BEFORE ME, the undersigned authority, on this day personally appeared Matthew L. Froehlich who, after being duly sworn on his oath, said and deposed as follows:

### Introduction

1.      My name is Matthew L. Froehlich. I am over 21 years of age, of sound mind, and in all respects qualified to make this affidavit. I have personal knowledge of the facts stated in this affidavit.

2.      I have read the Motion to Dismiss of North Fort Bend Water Authority and the factual assertions set forth in that document are true and correct to the best of my knowledge.

### Background/Experience

2.      I have 19 years of engineering and project management experience. My experience includes the design and management of both small- and large-scale water lines, sanitary sewer, storm sewer, and stormwater detention facility projects. I have successfully completed projects for many governmental entities of various sizes and needs. I have been heavily engaged in all project aspects, including preliminary engineering and final design, cost estimating, scheduling, and construction phase services.

3.      I am currently employed by BGE, Inc. ("BGE"). I currently lead BGE's team as Program Manager and Engineer for the North Fort Bend Water Authority ("NFBWA"). I am a licensed professional engineer in the State of Texas (No. 100213) and received my degree in civil engineering from Texas A&M University in 2003.

4.      Leading BGE's team as Program Manager for NFBWA, I oversee the planning, permitting, conservation, communication, easement acquisition, engineering, and construction efforts for NFBWA to execute its Groundwater Reduction Plan ("GRP"). I work closely with NFBWA's Board of Directors, attorney, operator and bookkeeper on both day-to-day operations and long-term planning. I also manage the work of third-party engineering consultants, service providers, and construction contractors to facilitate NFBWA's meeting of Fort Bend Subsidence District's requirements on behalf of its GRP participants.

### NFBWA Does Not Furnish Water to Fulshear

5.      NFBWA does not provide, supply or furnish water of any type (either raw or treated, potable or non-potable) to the City of Fulshear ("Fulshear") for compensation or otherwise. NFBWA has never done so.

<u>Fulshear Does Not Receive Water or Water Service from NFBWA</u>

6.     Fulshear does not receive water from NFBWA. Fulshear has never received water from NFBWA.

7.     Fulshear does not come into possession of or acquire any water from NFBWA.

8.     Fulshear does not receive water service from NFBWA.

9.     Fulshear does not pay NFBWA for water service.

<u>Fees</u>

10.     NFBWA has adopted three fees pursuant to its statutory authority as follows: (1) a Groundwater Reduction Plan Fee ("GRP Fee"); (2) a Surface Water Fee; and (3) an Imported Water Fee.

11.     The GRP Fee is based on monthly pumpage of groundwater by owners of non-exempt wells within NFBWA's boundaries. The owner of each non-exempt well within NFBWA's boundaries is required to pay a GRP Fee to NFBWA.

12.     Each person that receives surface water from NFBWA is required to pay a Surface Water Fee to NFBWA for surface water received monthly from NFBWA. The term "person" is defined broadly by the applicable statute and includes municipalities and water districts.

13.     Although Fulshear pays GRP Fees to NFBWA, because Fulshear does not receive surface water from NFBWA, Fulshear does not pay a Surface Water Fee to NFBWA. Fulshear has never paid a Surface Water Fee to NFBWA.

<u>Who Receives Surface Water from NFBWA?</u>

14.     The following entities receive surface water from NFBWA:

Big Oaks Municipal Utility District
Cinco Southwest Municipal Utility District No. 1
Cinco Southwest Municipal Utility District No. 2
Cinco Southwest Municipal Utility District No. 3
Cinco Southwest Municipal Utility District No. 4
Fort Bend County Fresh Water Supply District No. 2
Fort Bend County Improvement District No. 24
Fort Bend County Municipal Utility District No. 002
Fort Bend County Municipal Utility District No. 030
Fort Bend County Municipal Utility District No. 034
Fort Bend County Municipal Utility District No. 035
Fort Bend County Municipal Utility District No. 041

2

Fort Bend County Municipal Utility District No. 050
Fort Bend County Municipal Utility District No. 057
Fort Bend County Municipal Utility District No. 058
Fort Bend County Municipal Utility District No. 118
Fort Bend County Municipal Utility District No. 119
Fort Bend County Municipal Utility District No. 122
Fort Bend County Municipal Utility District No. 123
Fort Bend County Municipal Utility District No. 132
Fort Bend County Municipal Utility District No. 133
Fort Bend County Municipal Utility District No. 134A
Fort Bend County Municipal Utility District No. 134B
Fort Bend County Municipal Utility District No. 134C
Fort Bend County Municipal Utility District No. 142
Fort Bend County Municipal Utility District No. 143
Fort Bend County Municipal Utility District No. 146
Fort Bend County Municipal Utility District No. 156
Fort Bend County Municipal Utility District No. 165
Fort Bend County Municipal Utility District No. 190
Fort Bend County Municipal Utility District No. 194
Fort Bend County Municipal Utility District No. 206
Grand Lakes Municipal Utility District No. 1
Grand Lakes Municipal Utility District No. 2
Grand Lakes Municipal Utility District No. 4
Grand Mission Municipal Utility District No. 1
Grand Mission Municipal Utility District No. 2
Kingsbridge Municipal Utility District
North Mission Glen Municipal Utility District

This list is current as of December 14, 2022. Fulshear is not on this list.

15.    NFBWA does not expect nor plan to deliver surface water to all water providers (or all participants in its GRP) within NFBWA's boundaries. The purpose of the GRP is to allow participants to *collectively* meet FBSD groundwater reduction requirements, so that each water providers does not need to so individually. Thus, some GRP participants may never receive surface water from NFBWA and may not need to reduce their groundwater withdrawals.

Actions Taken by NFBWA to Conserve
Groundwater and for the Reduction of Groundwater Withdrawals

16.    NFBWA has taken actions to encourage, promote and provide for the conservation of groundwater, and for the reduction of groundwater withdrawals as necessary to implement its GRP. Indeed, the majority of actions taken by NFBWA are ultimately aimed (either directly or indirectly) at reducing groundwater withdrawals within its jurisdiction.

3

17. NFBWA has also developed and adopted a water conservation plan and a voluntary water conservation program to address the opportunities within its boundaries to reduce overall demand for water.

Actions Taken by NFBWA to
Acquire Surface Water Rights and to Transport and Deliver Surface Water

18. NFBWA has taken actions to acquire surface water supplies, and to transport, treat, sell and deliver such water to persons (including water districts and municipalities) inside its boundaries.

19. NFBWA has negotiated for and acquired surface water rights from the City of Houston.

20. NFBWA has arranged for the design and construction of a 40 million gallon per day pump station and over 50 miles of surface water transmission lines to deliver surface water to some of its GRP participants

21. Although NFBWA provides, supplies or furnishes potable (treated) water for compensation to certain entities, NFBWA has never transported, sold, delivered, supplied or furnished any water to Fulshear.

22. Although it can be said that water rights have been acquired by NFBWA and facilities have been designed and constructed so that some amount of surface water could ultimately be conveyed to Fulshear: (1) none of the water rights acquired by NFBWA (including any of the water rights referred to in ¶ 19 above) are dedicated in particular to Fulshear; (2) none of NFBWA's existing facilities are currently used to provide surface water (or any water) to Fulshear; (3) none of NFBWA's existing facilities have been designed or constructed solely for the purpose of serving Fulshear; and (4) none of NFBWA's existing facilities are currently committed to providing water to Fulshear.

Timeframe for Providing Water to Fulshear

23. Although NFBWA had at one time projected that it would be able to provide water service (*i.e.*, treated surface water) to Fulshear (at City of Fulshear Water Plant No. 1) sometime in mid-2024, that estimate is now considered to be outdated and unlikely to be met.

FURTHER AFFIANT SAYETH NOT

_____
Matthew L. Froehlich, Affiant

Sworn to and subscribed before me on this 15 day of Dec, 2022.

_____
Notary Public in and for the State of Texas

4

<u>01/09/2024</u>
My Commission Expires



Annika Nicole Green
My Commission Expires
01/09/2024
ID No 132305977

5

# CERTIFICATE FOR ORDER

THE STATE OF TEXAS §
§
COUNTIES OF FORT BEND AND HARRIS §

I, the undersigned officer of the Board of Directors of the North Fort Bend Water Authority, do hereby certify as follows:

1.     The Board of Directors of the North Fort Bend Water Authority convened in regular session on the 16th day of December, 2021, and the roll was called of the members of the Board:

| | |
|---|---|
| Peter Houghton | President |
| Robert Patton | Vice President |
| Melony Gay | Secretary |
| Robert Darden | Assistant Vice President |
| Bruce Fay | Assistant Secretary |
| Donald Abrahamson, II | Assistant Secretary |
| Dana Hollingsworth | Assistant Secretary |

and all of said persons were present except Director(s) _Houghton and Gay_, thus constituting a quorum. Whereupon, among other business, the following was transacted at the meeting: a written

## AMENDED RATE ORDER

was introduced for the consideration of the Board. It was then duly moved and seconded that the Amended Rate Order be adopted; and, after due discussion, the motion, carrying with it the adoption of the Amended Rate Order, prevailed and carried unanimously.

2.     A true, full, and correct copy of the aforesaid Amended Rate Order adopted at the meeting described in the above and foregoing paragraph is attached to and follows this certificate; the action approving the Amended Rate Order has been duly recorded in the Board's minutes of the meeting; that the persons named in the above and foregoing paragraph are the duly chosen, qualified, and acting officers and members of the Board as indicated therein; each of the officers and members of the Board was duly and sufficiently notified officially and personally, in advance, of the time, place, and purpose of the aforesaid meeting, and that the Amended Rate Order would be introduced and considered for adoption at the meeting, and each of the officers and members consented, in advance, to the holding of the meeting for such purpose; the meeting was open to the public as required by law; and public notice of the time, place, and subject of the meeting was given as required by Chapter 551, Texas Government Code, and Section 49.063, Texas Water Code.

SIGNED AND SEALED the 16th day of December, 2021.

Asst Secretary, Board of Directors

(SEAL)

987166

## NORTH FORT BEND WATER AUTHORITY
## AMENDED RATE ORDER

STATE OF TEXAS §
§
COUNTIES OF FORT BEND AND HARRIS §

WHEREAS, the North Fort Bend Water Authority (the "Authority") is a regional water authority created pursuant to Senate Bill 1798 of the 79th Legislature, as amended (the "Act"), which amended the Special District Local Laws Code by adding Chapter 8813 ("Section 8813"), and Article XVI, Section 59 of the Texas Constitution; and

WHEREAS, the Authority was created, among other purposes, to accomplish the purposes of Article XVI, Section 59 of the Texas Constitution, including the acquisition and provision of surface water and groundwater for residential, commercial, industrial, agricultural, and other uses, the reduction of groundwater withdrawals, the conservation, preservation, protection, recharge of groundwater and of groundwater reservoirs or their subdivisions, the prevention of waste of groundwater, and the control of subsidence caused by the withdrawal of water from groundwater reservoirs or their subdivisions; and

WHEREAS, the Act provides that the Authority may: (1) provide for the conservation, preservation, protection, recharge, and prevention of waste of groundwater, and for the reduction of groundwater withdrawals as necessary to develop, implement, or enforce a groundwater reduction plan, in a manner consistent with the purposes of Article XVI, Section 59 of the Texas Constitution; and (2) acquire or develop surface water and groundwater supplies from sources inside or outside the boundaries of the Authority and may conserve, store, transport, treat, purify, distribute, sell, and deliver water to or among persons, corporations, municipalities, municipal corporations, political subdivisions of the state, and others, inside and outside the boundaries of the Authority, and allocate water among persons participating in the Authority's groundwater reduction plan whether they are located inside or outside the Authority's boundaries; and

WHEREAS, the Act authorizes the Authority to establish fees, user fees, rates, and charges and classifications of fee and ratepayers, as necessary to enable the Authority to fulfill its purposes and regulatory functions provided in the Act; and

WHEREAS, Section 8813.008 provides that the Authority may establish fees, user fees, rates, charges, or special assessments, that are necessary to pay for the costs of accomplishing the purposes of the Authority, including: (1) the reduction of groundwater withdrawals; (2) the facilitation of compliance with the requirements of the Fort Bend Subsidence District and the Harris Galveston Subsidence District, as applicable; and (3) the provision of services, facilities, and systems; and

WHEREAS, prior to the Board's adoption of the GRP Fee, Surface Water Fee, and Imported Water Fee hereinafter set forth in this Amended Rate Order, the Board provided municipalities and districts within the Authority written notice of the date, time, and location of the meeting at which the Board would adopt the GRP Fee, Surface Water Fee, Imported Water Fee and the amount of said fees; and

WHEREAS, the Board has determined that the fees, user fees, rates, and charges established in this Amended Rate Order are necessary to accomplish those purposes set forth in the Act; and

WHEREAS, it is necessary that the Authority establish fees, user fees, rates, charges, and conditions and terms of service from the Authority System, the Authority's GRP and any other services provided by the Authority, and rules related thereto;

NOW, THEREFORE, IT IS ORDERED BY THE BOARD OF DIRECTORS OF THE NORTH FORT BEND WATER AUTHORITY THAT:

ARTICLE I
DEFINITIONS

Section 1.01. Definitions. As used herein, the following terms shall have the respective meanings set forth or referred to below:

"Act" means Senate Bill 1798 of the 79th Texas Legislature, as amended.

"AMI" means the Authority's Advanced Metering Infrastructure.

"Authority" means the North Fort Bend Water Authority.

"Authority Engineer" means the Authority's general operating engineer (currently BGE, Inc.), which may be changed from time to time by the Authority.

"Authority Operator" means the operating company performing operations for the Authority (currently Inframark Water Infrastructure Operations), which may be changed from time to time by the Authority.

"Authority System" means the Authority's facilities, pipelines, storage tanks, conduits, canals, pumping stations, treatment plants, meters, valves, and any other construction, device, or related appurtenance or connection used to treat, transport, or store Surface Water, including all easements, rights-of-way, and sites owned or utilized by the Authority, together with all Authority rights related thereto.

"Board" means the Board of Directors of the Authority.

"Chloramine System" is defined hereinafter.

987166

- 2 -

"Commission" means the Texas Commission on Environmental Quality, and any successor agency.

"Control Valve Assembly" is defined hereinafter.

"Converted Customer" means a District (or other Authority customer) whose water supply facilities have been actually and directly connected to the Authority System and who is actually receiving Surface Water directly from the Authority System. A District that merely has a water interconnect with (or receives water through a water interconnect from) a Converted Customer is not considered a Converted Customer, unless said District's own water supply facilities have been actually and directly connected to the Authority System and said District is itself actually receiving Surface Water directly from the Authority System.

"Current Calendar Year" is defined hereinafter.

"District" means any district created pursuant to Article III, Section 52(b)(1), (2) or Article XVI, Section 59, Texas Constitution, regardless of the manner of creation other than a navigation district or a district governed by Chapter 36 of the Texas Water Code.

"Delivery Point" is defined hereinafter.

"Exempt Well" means a Well with a casing diameter of less than five inches that solely serves a single family dwelling, a Well that is regulated under Chapter 27 of the Texas Water Code, or a Well that is not subject to any groundwater reduction requirement imposed by the FBSD or HGSD (as appropriate).

"FBSD" means the Fort Bend Subsidence District.

"GRP" means that certain groundwater reduction plan adopted by the Authority's Board in March 2008, as amended; and all directives, determinations and requirements issued by the Authority (or the Authority Engineer or Authority Operator) pursuant to such plan, as all of same may be amended from time to time.

"GRP Fee" means the groundwater reduction plan fee/rate adopted by the Board pursuant to Section 8813.103 and set forth hereinafter.

"HGSD" means the Harris Galveston Subsidence District.

"Houston" means the City of Houston, Texas.

"Imported Water" means water of any type that is produced outside of the boundaries of the Authority and transported into the boundaries of the Authority for distribution to an end user within the boundaries of the Authority. The term "Imported Water" does not include Surface Water delivered through or by the Authority System.

987166

"Imported Water Fee" means the imported water fee/rate adopted by the Board pursuant to Section 8813.103(h) of the Texas Special District Local Laws Code and set forth hereinafter.

"Interest Rate" is defined hereinafter.

"Maximum Daily Amount" is defined hereinafter.

"Minimum Daily Amount" is defined hereinafter.

"Non-Exempt Well" means any Well within the Authority other than an Exempt Well.

"Non-Potable Water" means water other than potable Surface Water or other ground water, including but not limited to, rain water, storm water, and/or effluent reuse water.

"Online Reporting System" means the Authority's online pumpage reporting system.

"Person" means any individual, corporation, organization, government or governmental subdivision or agency, District, municipality, county, political subdivision, business trust, trust, estate, partnership, association, or any other legal entity.

"Rate Order" means this Amended Rate Order.

"Realty Interest Document" means a written document (in a form acceptable to the Authority) that grants the following rights to the Authority across, along, under, over, and upon any property (whether or not a water plant site) owned by a Person, or in which a Person has any interest: (i) water line and/or water meter easement(s), (ii) consent to conveyance of Authority easement(s), (iii) subordination of a Person's realty interests to the Authority's rights under Authority easement(s), or (iv) any other property interest necessary or convenient for the Authority to provide and/or meter Surface Water delivered by the Authority to any Authority customers.

"Shut-off Valve(s)" means the shutoff valve(s) installed by the Authority or the Person in the Surface Water line(s) on a Person's water plant site(s).

"Surface Water" means water (whether surface, ground, or a blend of both) that is delivered through or by the Authority System.

"Surface Water Availability Date" means the date Surface Water is generally available to a Person, as determined by the sole discretion of the Authority

"Surface Water Fee" means the surface water fee/rate adopted by the Board pursuant to Section 8813.103 of the Act and set forth hereinafter.

"Three Year Time-Period" means the three year time-period preceding the date Surface Water is generally available to a Person, as determined by the sole discretion of the Authority.

"Water Importer" means a Person located, in whole or in part, within the Authority's boundaries that uses or distributes Imported Water. The term "Water Importer" does not include an owner of an Exempt Well if, and only if, such owner does not own any Non-Exempt Wells.

"Water Line Tank Connection" is defined hereinafter.

"Well" means a facility, device, or method used to withdraw groundwater: (i) from a groundwater source that is located within the boundaries of the Authority; or (ii) from a groundwater source that is located outside the boundaries of the Authority, but is part of the GRP pursuant to a written contract with the Authority.

Section 1.02. Interpretations. The article and section headings of this Rate Order are included herein for convenience of reference purposes only and shall not constitute a part of this Rate Order or affect its interpretation in any respect. Except where the context otherwise requires, words imparting the singular number shall include the plural and vice versa.

Section 1.03. References, Etc. Any reference in this Rate Order to a document shall mean such document and all exhibits thereto as amended or supplemented from time to time.

ARTICLE II
FINDINGS

Section 2.01. Findings. Each of the recitals stated in this Rate Order are hereby adopted as a finding of the Board. All statutory requirements and conditions (including those of Section 8813.103) have been met for the establishment of those fees, user fees, rates and charges set forth in this Rate Order.

ARTICLE III
RATES AND CHARGES

Section 3.01. GRP Fee. The Board hereby adopts a GRP Fee pursuant to Section 8813.103. The owner of each Non-Exempt Well within the Authority shall pay the Authority the GRP Fee for monthly pumpage, as provided in this Section. Effective January 1, 2022, the GRP Fee shall be equal to $4.55 for each 1,000 gallons of water pumped from each Non-Exempt Well. Payment of the GRP Fee is due by the last day of

987166

the month two months after which pumpage is required to be calculated (the "Due Date"). (For example, payment for January pumpage is due by March 31st; payment for February pumpage is due by April 30th; etc.)  The Authority will not send invoices or billings to Non-Exempt Well owners for the amount of GRP Fees that are due.  Each Non-Exempt Well owner shall be responsible for remitting to the Authority the GRP Fee on or before the Due Date.  The GRP Fee for any billing period beginning on or after January 1, 2022, shall be calculated on the Online Reporting System, as further described in Section 4.01.

Section 3.02.  Surface Water Fee.  The Board hereby adopts a Surface Water Fee pursuant to Section 8813.103.  Each Person that receives Surface Water from the Authority shall pay the Authority the Surface Water Fee for Surface Water received monthly, as provided in this Section.  Effective January 1, 2022, the Surface Water Fee shall be equal to $4.90 for each 1,000 gallons of Surface Water received.  Payment of the Surface Water Fee is due by the last day of the month two months after which Surface Water usage is required to be calculated, the Due Date.  (For example, payment for January Surface Water usage is due by March 31st; payment for February Surface Water usage is due by April 30th; etc.)  The Authority will not send invoices or billings to Surface Water users for the amount of Surface Water Fees that are due.  Each Surface Water user shall be responsible for remitting to the Authority the Surface Water Fee on or before the due date.  The Surface Water Fee for any billing period beginning on or after January 1, 2022, shall be calculated completed as further described in Section 4.01.

Section 3.03.  Imported Water Fee.

(a) Adoption of Imported Water Fee.  The Board hereby adopts an Imported Water Fee pursuant to Chapter 8813 (including Section 8813.103(h)) of the Texas Special District Local Laws Code.  If a Water Importer obtains Imported Water to serve all or any portion of the property it serves, then such Water Importer must immediately notify the Authority in the method set forth below and must pay to the Authority monthly the following Imported Water Fee:  (i) a fee equal to the then-current GRP Fee applied on all Imported Water if the Water Importer is not a Converted Customer; or (ii) a fee equal to the then-current Surface Water Fee applied on all Imported Water, if the Water Importer is a Converted Customer.  Notification of interconnect use shall be requested through the Authority's Online Reporting System.  Notification of Imported Water from any other source must be submitted in writing to the Authority.  The Imported Water Fee is due and payable to the Authority monthly even if the Water Importer also pays another entity for the Imported Water and even if the Authority is not then providing Surface Water to the Water Importer.

(b) Imported Water Fee Payment.  The Imported Water Fee is due and payable to the Authority monthly at the same time as the Water Importer's GRP Fee or Surface Water Fee payment, even if the Water Importer also pays another entity for the

987166

Imported Water and even if the Authority is not then providing any water to the Water Importer. The Imported Water Fee for any billing period beginning on or after January 1, 2022, shall be calculated on the Online Reporting System.

(c) Emergency Situations. If the Water Importer is experiencing an emergency situation and receiving surface water from the Authority, then the Water Importer will be charged the Imported Water Fee unless a variance is granted in accordance with subsection (d) below. Notwithstanding the foregoing, if special circumstances exist, as determined in the sole discretion of the Authority pursuant to subsection (e) below, in which the Authority is unable to deliver water to the Water Importer, then the Imported Water Fee shall not be imposed for the time period in which the Authority cannot deliver surface water. If the Water Importer is experiencing an emergency situation, as determined in the sole discretion of the Authority, but is not receiving surface water from the Authority, then the Water Importer shall not be charged an Imported Water Fee on the Imported Water that it receives during a period not to exceed 60 consecutive or inconsecutive days during any calendar year. Such time period may be extended by the Authority, in its sole discretion and as appropriate, on a case by case basis considering the circumstances of the particular emergency.

(d) Variance Requests. If the Water Importer is obtaining Imported Water due to other special circumstances, including but not limited to system repairs, the Water Importer may submit a variance request to the Authority detailing the special circumstances and any supporting reasons for which the Imported Water Fee should not be assessed in that particular situation. Such variance request must be submitted within 30 days of the earlier of (a) the date on which the Water Importer receives written notification from the Authority that an Imported Water Fee will be charged to the Water Importer, (b) the date on which Water Importer self-reported receiving Imported Water via the Online Reporting System, or (c) 30 days before any scheduled system repairs or maintenance creating the possible need for Imported Water by the Water Importer. The Authority will consider the variance request and advise the Water Importer of its decision. The Authority's decision shall be final, and should the Authority deny the variance request, all outstanding amounts due related to the Imported Water Fee shall be due and payable to the Authority within 30 days of written notification from the Authority alerting the Water Importer of the variance denial. Any Imported Water Fees incurred by the Water Importer following the delivery of the written notification of the Authority's determination will become due and payable as otherwise set forth in subsection (b) above. Once granted a variance by the Authority, a Water Importer shall not be required to pay the Imported Water Fee on Imported Water for the time period that the Authority has agreed in writing that no Imported Water Fee applies to the particular Imported Water. Such time period may be extended by the Authority, in its sole discretion and as appropriate, on a case-by-case basis considering the circumstances of the special circumstances.

987166

(e) <u>Interruptions in Surface Water Delivery</u>.  In the event that the Authority is otherwise regularly delivering Surface Water to a Converted Customer and special circumstances exist in which the Authority is unable to deliver such Surface Water, as determined in the sole discretion of the Authority, to the Converted Customer, then the Imported Water fee shall not be imposed during the time period in which the Authority determines it was unable to deliver water to the Converted Customer.  The foregoing sentence shall not apply in instances in which a Converted Customer annexes additional property, whether contiguous or otherwise, into the boundaries of the Converted Customer following the Authority's initial conversion of the Converted Customer, where the Authority is not currently providing Surface Water to the property annexed into the Converted Customer.  The Imported Water Fee for Imported Water related to such annexed property shall be equal to the Authority's then-current Surface Water Fee.

Section 3.04.  <u>Payment of Fees</u>.  All fees payable to the Authority shall be paid in money which is legal tender in the United States of America.  Payments will be accepted only by check or money order made payable to the "North Fort Bend Water Authority" or by wire transfer according to written wiring instructions provided by the Authority.  No cash will be accepted.  All payments must be received by the bookkeeper of the Authority (currently, Municipal Accounts & Consulting, L.P., 1281 Brittmoore Road, Houston, TX 77043) by the Due Date. Written wire instructions are available upon request.

Section 3.35.  <u>Special Assessments</u>.  Section 8813.105 allows the Board to impose special assessments.  To date, the Board has not imposed such special assessments.  The Board reserves the right to impose such special assessments at any time by adopting a resolution, rule, requirement, or order (or amendment to this Rate Order) that expressly provides for the imposition of such special assessments.

ARTICLE IV<br>WELL PUMPAGE

Section 4.01.  <u>Self-Reporting</u>. Each Non-Exempt Well owner shall be responsible for reading the meter which measures the amount of water pumped from each Non-Exempt Well at the end of each month. Such measurement (even if it shows zero pumpage for the month) shall be reported to the Authority: (i) through the Online Reporting System, or (ii) if the Authority determines that access to the Online Reporting System is not reasonably available to a Person, then reporting may be made via the non-electronic reporting form attached hereto as Exhibit "A," provided permission to use the non-electronic reporting form is obtained in writing from the Authority.  Along with the owner's monthly GRP Fee payment, the owner shall report its usage to the Authority no later than the last day of the month following the month for which pumpage is required to be calculated.  (For example, reporting for January pumpage is

987166

due by February 28th; reporting for February pumpage is due by March 31st; etc.). The Authority reserves the right to request more frequent reporting, at its sole discretion.

Section 4.02. Audits. The Authority shall have the right to audit the Well pumpage measurements submitted by the Well owner by reading the meter at the Well. The Authority may also, at its discretion, read the meter for any other reason. In addition, the Authority shall have the right, upon reasonable notice, to install necessary equipment or conduct repairs in order for the Authority to read the meter remotely. If a Well owner reports an amount of pumpage to the Authority that differs from the amount of pumpage that the Authority determines occurred based on the Authority's reading of the meter, or if a well Owner reports an amount of pumpage to the FBSD that differs from the amount of pumpage that the Well owner reports to the Authority, the Authority may utilize any of said amounts to determine the total GRP Fees due the Authority. If such Authority determination shows that the Well owner underpaid the Authority, then, in addition to all other remedies available to the Authority, the Authority may invoice the Well owner for the shortfall. (Any such invoice will be due to the Authority no later than the date provided in the invoice.) If such Authority determination shows that the Well owner overpaid the Authority, then the Authority may pay the Well owner the amount of the overage. Notwithstanding the previous two sentences, the Board may refrain from sending invoices for shortfalls and/or payments for overages that are below any threshold amount that is from time to time determined by the Board.

Section 4.03. Failure to Read Meter. In the event a Non-Exempt Well owner fails to read the meter, which measures the amount of water pumped from its Well, the Authority shall have the right to read the meter. The Authority may establish the Well owner's GRP Fee based on the Authority's reading, regardless of when the Authority reads the meter.

Section 4.04. Accuracy of Meters. Each Non-Exempt Well owner shall be responsible to install and maintain a Well meter on each Non-Exempt Well that meets all FBSD requirements, including but not limited to, registering a meter accuracy within the range of 97% to 103% accuracy (the "Meter Accuracy Range"). In addition, effective January 1, 2022, each Non-Exempt Well owner installing a new Well meter is responsible for ensuring that such Well meter is compliant with the Authority's AMI. If the Authority at any time believes that the meter accuracy fails to fall within the Meter Accuracy Range, it may notify the Well owner and require that such meter be independently tested and the results reported to the Authority. If the testing reveals that the meter accuracy is within the Meter Accuracy Range, the Authority shall pay the cost of such testing and the cost of any necessary temporary meter used. If the testing reveals that the meter accuracy is not within the Meter Accuracy Range, then the Well owner shall pay the cost of such testing, the cost of any necessary temporary meter used, and the cost to recalibrate the meter such that the meter accuracy falls within the Meter Accuracy Range, and the owner shall be responsible for payment to the

987166

Authority of the GRP Fee for unread gallons, as determined by the Authority. If the owner refuses to test the meter after the Authority requires it to do so, the Authority may remove the Well meter for independent testing and recalibration, and replace it with a temporary meter. The Authority shall pay for the cost of such testing and temporary meter, unless the results show that the meter accuracy was not within the Meter Accuracy Range, in which case the Well owner shall be responsible for the cost of testing and recalibration of the meter, the cost of the temporary meter, and payment to the Authority of the GRP Fee for unread gallons, as determined by the Authority. Payment of the GRP Fee under this Section, for unread gallons resulting from a meter with meter accuracy not in compliance with the Meter Accuracy Range, shall be due to the Authority within 45 days after the Authority submits an invoice to the Well owner for same.

Section 4.05. Fort Bend Subsidence District Water Well Permitting. The FBSD has issued an aggregate water well permit to the Authority comprising all of the permitted non-exempt groundwater production for the Authority's GRP within Fort Bend County. The Authority shall be responsible for all administrative matters related to the aggregate water well permit, including permit renewal, payment of permit fees, requests for permit rebates, and year-end pumpage reporting requirements. Each Well owner listed on the Authority's aggregate water well permit shall provide the Authority data and information required by the Authority for the Authority to prepare and file documents with the FBSD related to well permitting. Each Non-Exempt Well owner shall maintain: (i) ownership of its Well(s) and operational responsibility therefor, and (ii) subject to groundwater reduction requirements imposed by the Authority, the terms of the GRP, and any limitations imposed by the FBSD, the right to pump from such Well(s) the amount of groundwater reasonably determined by such owner to be needed by such owner, for itself or for its customers, to provide water in accordance with at least the minimum regulatory requirements for pressure and supply, including, without limitation, during an emergency requiring immediate use of groundwater (such as for firefighting purposes) so long as such owner is not committing waste or being wasteful. For purposes of this provision "waste" and "wasteful" shall have the most restrictive meaning ascribed to such terms in the following: (i) the Special District Local Laws Code Chapter 8834 with respect to Non-Exempt Wells in the FBSD, (ii) rules or requirements of the FBSD with respect to Non-Exempt Wells in the FBSD, or (iii) the terms of the aggregate water well permit issued to the Authority.

Section 4.06. Well Procedures. All requests for new Wells or changes in status to existing Wells subject to the Authority's GRP must first be submitted to the Authority and shall not be submitted directly to Fort Bend Subsidence District. Requests must be submitted to the Authority on the New Well or Activity Status Change Request form attached as Exhibit "B."

987166

- 10 -

## ARTICLE V
## SURFACE WATER USE AND CONVERSION

Section 5.01. Self-Reporting. Each Surface Water user shall be responsible for reading the meter, which measures the amount of Surface Water delivered by the Authority, at the end of each month. Such measurement (even if it shows zero Surface Water usage for the month) shall be reported to the Authority: (i) through the Online Reporting System, or (ii) if the Authority determines that access to the Online Reporting System is not reasonably available to a Person, then reporting may be made via the non-electronic reporting form attached hereto as Exhibit "A," provided permission to use the non-electronic reporting form is obtained in writing from the Authority. Along with the user's monthly Surface Water Fee payment, the user shall report its usage to the Authority no later than the last day of the month following the month for which Surface Water usage is required to be calculated. (For example, the reporting form for January Surface Water usage is due by February 28th; the reporting form for February Surface Water usage is due by March 31st; etc.) The Authority reserves the right to request more frequent reporting, at its sole discretion.

Section 5.02. Audits. The Authority shall have the right to audit the Surface Water usage measurements submitted by the Surface Water user by reading the Surface Water meter. The Authority may also, at its discretion, read the meter for any other reason. In addition, upon reasonable notice, the Authority shall have the right to install necessary equipment or conduct repairs in order for the Authority to read the meter remotely.

Section 5.03. Failure to Read Meter. In the event a Surface Water user fails to read the meter, which measures the amount of Surface Water delivered, the Authority shall have the right to read the meter. The Authority may establish the Surface Water user's Surface Water Fee based on the Authority's reading, regardless of when the Authority reads the meter.

Section 5.04. Delivery Point and Measuring and Control Equipment. The delivery point of water (the "Delivery Point") by the Authority to a Person receiving Surface Water shall be the output flange of the meter and control valve assembly (collectively, the "Control Valve Assembly") installed by the Authority to serve such Person. No Person shall connect to the Authority System, unless and until the Authority consents in writing to such connection. If the Authority, at its option, so consents, the connection shall be made, provided the connection: (i) is in strict conformity with the terms and conditions of such Authority consent, (ii) has prior approval for the connection from the Commission, and (iii) meets all applicable Commission requirements. The Authority shall furnish, install, and operate, at its own expense, at the Delivery Point the necessary equipment and devices of standard type for measuring the quantity of Surface Water delivered by the Authority. Such Control

987166

- 11 -

Valve Assembly and other equipment installed by the Authority shall remain the property of the Authority.

Section 5.05. Testing of Measuring Equipment. The Authority may from time to time test the measuring equipment. Should the test of the measuring equipment show that the equipment is registering more than one hundred two percent (102%) or less than ninety-five percent (95%) of the water delivered, the total quantity of water delivered to the Person will be deemed to be the average daily consumption as measured by the measuring equipment when in working order, and the meter shall be corrected, repaired, or replaced by the Authority with accurate measuring equipment. In such event, the Person's payments for Surface Water to the Authority shall be adjusted (increased or decreased) for a period extending back to the time when the inaccuracy began, if such time is ascertainable; and if such time is not ascertainable, for a period extending back to the last test of the measuring equipment or 120 days, whichever is shorter.

Section 5.06. Delivery, Facilities and Title to Water. Each Person receiving Surface Water from the Authority shall be responsible to deliver water from the Delivery Point to and into the Person's water system. The Authority, and not the Person receiving Surface Water from the Authority, shall own, operate, and maintain: (i) any sensor equipment installed by the Authority on the Person's ground storage tank facilities or other water plant facilities and related electrical and control connections by conduit pipe, or other means, connecting such sensor equipment to the Authority's facilities (the "Sensor Line and Equipment"); and (ii) the Control Valve Assembly installed by the Authority. The Person receiving Surface Water from the Authority, and not the Authority, shall own, operate, and maintain all equipment, facilities, tanks, buildings, materials, wells, and lines downstream of the Control Valve Assembly, except for the Sensor Line and Equipment, and shall be responsible for any malfunctions of said items, including tank overflows. Unless otherwise agreed to in writing by the Authority, the Person receiving Surface Water from the Authority shall at all times, at the Person's expense, maintain an air gap, in accordance with a location and specifications approved by the Authority, downstream of the Delivery Point before the water delivered by the Authority enters the Person's ground storage tank(s); provided, however, the Authority, at its option, may provide an alternative backflow prevention procedure or mechanism. Title to, possession, and control of Surface Water shall remain with the Authority until it passes through the Control Valve Assembly, where title to, possession, and control of the Surface Water shall pass from the Authority to the Person receiving same.

Section 5.07. Chloramine Disinfection. Usually, Surface Water delivered by the Authority will be disinfected with chloramines. Each Converted Customer is required to: (i) convert its water treatment system to a chloramine disinfection system, or install a chloramine disinfection system, prior to becoming a Converted Customer and no later than the date required by the Authority; and (ii) maintain use of such chloramine

disinfection system thereafter for so long as such Converted Customer is connected to the Authority System and for so long as the Surface Water delivered by the Authority is disinfected with chloramines. The Authority shall provide notice to each Person to be Converted to Surface Water of the required conversion to chloramines. It shall be the responsibility of each Converted Customer (and each Person that receives water from a Converted Customer, for example and without limitation, via a water interconnect), and not the Authority, to: (i) notify such Converted Customer's (or such Person's) water customers and water users about its conversion to and use of chloramine disinfection; (ii) comply with any applicable United States Environmental Protection Agency and Commission (and other applicable agency) regulations and requirements, and applicable laws; and (iii) comply with any applicable Commission regulations and requirements, including the variance process for chloramines conversion and approval for interconnections. Prior to completion of design (and commencement of construction) of the chloramine disinfection system required by this Section, the Person to be converted to Surface Water shall submit plans and specifications to the Authority Engineer for review and approval. ANY SUCH APPROVAL DOES NOT RELIEVE THE PERSON, AND ITS ENGINEER, OF ADEQUATELY DESIGNING AND CONSTRUCTING THE FACILITIES AND ANY SUCH APPROVAL IS NOT AN ASSUMPTION BY THE AUTHORITY (OR THE AUTHORITY ENGINEER) OF RESPONSIBILITY OR LIABILITY FOR THE ADEQUACY (OR INADEQUACY) OF SUCH PLANS AND SPECIFICATIONS OR THE FACILITIES CONSTRUCTED THEREBY, ALL OF SAME BEING EXPRESSLY DISCLAIMED.

Section 5.08. Daily Amount. The Authority, the Authority Engineer, or the Authority Operator may from time to time designate a maximum daily amount of Surface Water (the "Maximum Daily Amount") to be taken by a Person and/or a minimum daily amount of Surface Water ("Minimum Daily Amount") to be taken by a Person. In such event, during any one day, no Person shall take from the Authority more than either the Maximum Daily Amount or less than the Minimum Daily Amount. The Authority may from time to time increase or decrease a Person's Maximum Daily Amount and/or Minimum Daily Amount, as determined necessary by the Authority, the Authority Engineer, or the Authority Operator. If in violation of this Rate Order, and in addition to all other remedies available to the Authority (including, without limitation, those set forth in this Rate Order), a Person takes more than its Maximum Daily Amount or less than its Minimum Daily Amount in any one day, the Person shall be responsible for payment for any damages suffered by the Authority and payment for any charges incurred by the Authority related thereto (including, without limitation, any charges or fees charged to the Authority by Houston, the FBSD, or the HGSD).

Section 5.09. Quantity or Pressure of Water. Notwithstanding any provision of this Rate Order, and unless otherwise specified in a water supply commitment agreement, the Authority does not and will not guarantee to any Person a specific

quantity or pressure of water for any purpose whatsoever. Unless such a water supply commitment agreement is in place, the above limitations on quantity and pressure may be inadequate to fulfill the Commission's regulations and requirements for capacity and water quality. In no case shall the Authority be liable for the failure or refusal to furnish water or any particular amount or pressure of water.

Section 5.10. Interruptions in Service. The Authority shall use reasonable efforts to deliver to any Person with whom the Authority has entered into a written water supply commitment agreement a constant and uninterrupted supply of Surface Water in the amount provided in such agreement. Notwithstanding any provision of this Rate Order or any applicable agreement entered into by the Authority, the Authority may interrupt, reduce, or cease deliveries of Surface Water if such interruption or reduction is necessary: (i) due to limitations in the Authority System or Houston's water system; (ii) in case of emergencies or breakdowns in the Authority System or Houston's water system; or (iii) for equipment installation, repairs, modifications, replacements, inspections, or maintenance on the Authority System or Houston's water system. In addition, the Authority may interrupt, reduce, or cease deliveries of Surface Water if such interruption or reduction is necessary for purposes of the Authority's GRP. The Authority shall have no liability to any Person for any damages caused by any interruption in service or any failure (partial or total) to deliver Surface Water.

Section 5.11. Maintenance of Groundwater Wells. In order to have an alternative water supply source in the event that the Authority's water service is interrupted or ceases for any reason, Persons that have converted, in whole or in part, to usage of Surface Water are strongly encouraged by the Authority to at all times: (i) maintain their existing groundwater well(s) and other groundwater facilities; and (ii) maintain water line interconnect(s) with other political subdivision(s) of this State that have functioning groundwater well facilities.

Section 5.12. Early Conversion. To the extent that a Person desires to purchase Surface Water for any reason in advance of the date that the Authority intends to provide Surface Water to such Person, such Person may submit a written request for Surface Water to the Authority, which request will be evaluated by the Authority, in its sole discretion, on economic feasibility, GRP cost, and other factors; and the Authority will determine, in its sole discretion, if such request can be satisfied, in what amount, and according to what time frame and terms.

Section 5.13. Compliance with GRP. Pursuant to the Act, the Authority is authorized to develop, prepare, revise, adopt, implement, enforce, manage, or participate in the GRP. The GRP may specify the measures to be taken to reduce groundwater withdrawals and the dates and extent to which Persons shall reduce or terminate withdrawal of groundwater and instead receive water from alternative sources. The Authority, the Authority Engineer, and/or the Authority Operator shall manage and enforce the GRP, including without limitation coordination with the FBSD

987166

or HGSD, monitoring compliance with the GRP, and enforcing the terms of the GRP. All Persons shall comply with the terms of the GRP and all other Authority orders and requirements (including, without limitation, those from the Authority Engineer or the Authority Operator) for the reduction of groundwater usage and the allocation of Surface Water. The Authority, the Authority Engineer, and/or the Authority Operator may from time to time issue groundwater reduction requirements to Persons in order to: (a) comply with or exceed FBSD or HGSD groundwater reduction requirements; (b) satisfy the terms of the GRP; and/or (c) allocate Surface Water among Persons, including requiring Persons to from time to time timely take Surface Water from the Authority in amounts determined by the Authority.

Section 5.14    Early-Conversion/Over-Conversion Credits.  The Authority, and not the Person within the Authority's GRP, shall receive and be entitled to any early-conversion or over-conversion credits issued by the FBSD or HGSD related to Surface Water or any water other than groundwater (including but not limited to Non-Potable Water) consumed or utilized by any Person within the Authority's GRP.  No Person within the Authority's GRP shall obtain (or attempt to obtain) for such Person's own benefit or the benefit of anyone other than the Authority or sell (or attempt to sell), any such early-conversion or over-conversion credits.  If requested by the Authority, Persons within the Authority's GRP shall cooperate with the Authority (including, without limitation, by amending their HGSD or FBSD well permits, as applicable), in order to enable the Authority to receive such early-conversion or over-conversion credits.

Section 5.15.   Inadequate Groundwater Facilities.  Districts or users that need or desire Surface Water because they do not have adequate groundwater facilities (or for any other reason) may request a water supply commitment agreement from the Authority.  At the Authority's discretion, the Authority may, according to terms and conditions acceptable to the Authority, enter into such an agreement.  Only water supply commitment agreements guaranteeing quantity and pressure may be adequate to fulfill the Commission's regulations and requirements for capacity and water quality.

Section 5.16.   Compliance of Person's Water System.  In order to protect the Authority's System, each Person's water system that is receiving Surface Water from the Authority, shall be constructed and operated to comply with the rules promulgated by the Commission, or any successor agency, and the policy requirements of Houston regarding backflow prevention and cross connections.  Should a condition in violation of these requirements be discovered, such Person shall promptly cure same.  If determined necessary by the Authority or if the Person fails to promptly cure same, the Authority, in addition to all other remedies available to it (including, without limitation, those provided in this Rate Order), may cure same, at the cost and expense of the Person.  The Authority may conduct inspections from time to time to determine that no conditions exist in such Person's water system and in connections to the Person's customers' premises which would or might adversely affect the Authority System.

987166

Section 5.17.  Termination and Reconnection of Service.  The Authority may, in its discretion, disconnect service for failure to pay all charges, including penalties and interest, by the 50th day after the Due Date; provided, however, that prior to disconnecting services, the Authority shall send written notice by United States first class mail to the Person at the appropriate address and provide the Person with an opportunity to contest, explain, or correct the charges, services, or disconnection, at a meeting of the Board.  The written notice shall inform the Person of the amount of the delinquent payment, the date service will be disconnected or additional service withheld if payment is not made, the date, time, and place of the next scheduled meeting of the Board, and of the opportunity to contest, explain, or correct the charges, services, or disconnection, by presenting in person or in writing such matter to the Board at the next scheduled meeting as shown on the notice.  The date specified for disconnection shall be ten (10) days after the date of the next scheduled meeting of the Board as shown in the notice, and the date for withholding additional service shall be ten (10) days after the date of that Board meeting.  The notice shall be deposited, postpaid, in a post office or official depository under the care and custody of the United States Postal Service at least ten (10) days prior to the date of the scheduled meeting of the Board.  A written statement by the Authority Operator that the notice was so mailed and a certificate of mailing by the United States Postal Service shall be prima facie evidence of delivery of same.  If the Person appears before the Board in person or in writing, the Board shall hear and consider the matter and inform the Person of the Board's determination by sending written notice by United States first class mail to the Person at the appropriate address.  If service to a Person is disconnected for nonpayment of a delinquent bill or for any cause legally authorized, a reconnection fee of $500 shall be paid prior to service being restored.  In the event that the Authority Operator removes a Person's meter due to unauthorized reconnection of service subsequent to its termination by the Authority, a reinstallation fee of $500 shall be paid prior to service being restored, which fee is in addition to any other fees imposed (including, without limitation, the reconnection fee).

Section 5.18.  Authority Reimbursement to a Converted Customer.  In lieu of the Authority designing or installing the Water Line Tank Connection or the Chloramine System (both defined below), the Authority has determined to require Persons that will become Converted Customers to design and install the Water Line Tank Connection and the Chloramine System and to allow certain of the related costs incurred by Converted Customers to be eligible for potential reimbursement from the Authority, as provided in this Section.   Nothing in this Section shall be construed as limiting the Authority's right to require a Person, at the Person's sole cost, to:  (i) convert to Surface Water, or (ii) install the Water Line Tank Connection or the Chloramine System.  Unless agreed to otherwise in writing by the Board, the Converted Customer, and not the Authority, shall own, maintain, operate, and repair (and be responsible to obtain any appropriate insurance for) the Water Line Tank Connection and Chloramine System and also the Converted Customer's water plant buildings, tanks, and water wells.

987166

- 16 -

Notwithstanding the foregoing, nothing in this Section shall be construed as limited the Converted Customer's obligations as the receiving system to comply with Commission regulations and requirements. For example, in the event of a violation, the Commission will hold the Converted Customer responsible for any problems associated with the connection or chloramines system.

(a) If a written request for reimbursement is made by a Converted Customer to the Authority as set forth in this Section, then such Converted Customer may be eligible for Authority reimbursement of construction and engineering costs for the Water Line Tank Connection and the Chloramine System as follows:

(i) The Converted Customer may be eligible for reimbursement of the actual and reasonable construction and engineering costs incurred by the Converted Customer to construct a segment of water line ("Water Line Tank Connection") from the Authority's water meter/vault facilities to such Customer's ground storage tank facilities (or other water plant facilities). A Converted Customer shall not be eligible for this reimbursement if the Converted Customer fails to execute a Realty Interest Document in favor of the Authority in a form and at the time required by the Authority, and at no expense to the Authority. The Authority may require that such Realty Interest Document, among other things, allow the Authority the right to: (i) install, own, operate, and maintain water line and/or meter facilities and related appurtenances, and (ii) install, own, operate, and maintain sensor equipment on such Customer's ground storage tank facilities (or other water plant facilities) and electrical and control connections by conduit pipe (or other means) connecting such sensor equipment to the Authority System. No costs for repair, maintenance, operation, upgrade, or replacement of the Water Line Tank Connection shall be eligible for reimbursement from the Authority. Such items that are ineligible for reimbursement include, but are not limited to, painting of water tanks beyond those areas that are affected by the conversion to chloramines disinfection system, modifications to a Converted Customer's facilities downstream of its water tanks, building modifications, and access modifications.

(ii) The Converted Customer may be eligible for reimbursement of the actual and reasonable construction and engineering costs incurred by the Converted Customer to convert its water treatment system from a chlorine disinfection system to a chloramine disinfection system ("Chloramine System"), including but not limited to adding ammonia storage and feed facilities, modifying chlorine storage and feed facilities, making control system modifications, and installing all necessary appurtenances thereto.

987166

- 17 -

(iii)     The purpose of this reimbursement is intended for costs associated with converting a pre-existing disinfection system to a chloramines disinfection system.  Accordingly, unless approved in writing by the Authority, Persons scheduled by the Authority to become Converted Customers will not be eligible for a Chloramine System reimbursement on any new water plants constructed within three years before such time as Surface Water is generally available from the Authority, as determined by the sole discretion of the Authority.  No costs for repair, maintenance, operation, upgrade, or replacement of a Chloramine System shall be eligible for reimbursement from the Authority.  Such items that are ineligible for reimbursement include, but are not limited to, painting of water tanks beyond those areas that are affected by the conversion to chloramines disinfection system, modifications to a Converted Customer's facilities downstream of its water tanks, building modifications, and access modifications.  In addition to the foregoing, in the event that a Converted Customer annexes additional land into the boundaries of the Converted Customer, whether contiguous or otherwise, costs related to the Chloramine System on any new water plants constructed by the previously Converted Customer shall not be eligible for reimbursement by the Authority.  The foregoing sentence shall apply regardless of the timeline on which the Authority may deliver Surface Water to the property annexed by the Converted Customer.

(b)   Actual and reasonable engineering costs will be eligible for reimbursement by the Authority under this Section, in a maximum amount determined by the Board at the Board's sole discretion.

(b)   Any reimbursement pursuant to this Section shall be subject to approval by the Authority Engineer; and any such reimbursement shall be made in accordance with standards approved by the Authority Engineer and the Board, which standards may change from time to time.  Prior to completion of design (and commencement of construction) of the Water Line Tank Connection and Chloramine System, the Person to be converted to Surface Water shall submit plans and specifications to the Authority Engineer for review and approval. The Authority Engineer will provide written approval of the plans and specifications that are not eligible for reimbursement by the Authority in accordance with this Section.  ANY SUCH APPROVAL DOES NOT RELIEVE THE PERSON, AND ITS ENGINEER, OF ADEQUATELY DESIGNING AND CONSTRUCTING THE FACILITIES AND ANY SUCH APPROVAL IS NOT AN ASSUMPTION BY THE AUTHORITY (OR THE AUTHORITY ENGINEER) OF RESPONSIBILITY OR LIABILITY FOR THE ADEQUACY (OR INADEQUACY) OF SUCH PLANS AND SPECIFICATIONS OR THE FACILITIES CONSTRUCTED THEREBY, ALL OF SAME BEING EXPRESSLY DISCLAIMED.

987166

(d) Construction of the Water Line Tank Connection and the Chloramine System shall be done pursuant to the competitive bidding requirements of Chapter 49, Texas Water Code, or, if applicable, the Commission emergency approval of negotiated contracts under Section 49.274, Texas Water Code. In the event the Water Line Tank Connection and Chloramine System are constructed pursuant to a contract negotiated under said Section 49.274 (instead of a contract that was competitively bid pursuant to said Chapter 49), the Board may disapprove any amount of reimbursement sought by the Converted Customer if the Board determines that the reimbursement exceeds the costs that would have been incurred had the contract been competitively bid.

(e) Unless otherwise agreed to in writing by the Board in its sole discretion, the potential reimbursement eligibility set forth in this Section shall not be available until and after a Person becomes a Converted Customer. Accordingly, for example and without limitation, a Person that is not directly connected to the Authority System but that receives water through a water interconnect with a Converted Customer shall not be eligible for the potential reimbursement described in this Section until and after such Person becomes a Converted Customer. In addition to and without limiting the other provisions of this Section, and in addition to any other remedies available to the Authority, some or all of the potential reimbursement eligible to a Converted Customer under this Section may be reduced or eliminated by the Board: (i) if the Converted Customer fails to install the Water Line Tank Connection and Chloramine System and commence receiving Surface Water by the date that the Authority is able to deliver Surface Water; or (ii) if the Converted Customer fails to submit a written request for reimbursement (with adequate supporting documentation) to the Authority within 180 days after the Person becomes a Converted Customer. No interest or interest expenses shall be included in any potential reimbursement eligible under this Section.

(f) A Converted Customer shall not be eligible for the reimbursement described in this Section if the Converted Customer fails to obtain approval of its plans and specifications by the Authority Engineer in accordance with the provisions above.

(g) Any and all reimbursement pursuant to this Section shall be subject to Board approval, which approval may be granted or denied based on the Board's sole discretion. Any requests for variances from the reimbursement procedures and policies contained in this Section must be submitted to the Board in writing prior to a Person commencing the design of the Water Line Tank Connection or the Chloramine System. The Authority may require a Person to execute a receipt and release in a form acceptable to the Authority prior to receiving any reimbursement under this Section.

Section 5.19. Realty Interest Documents. During the course of constructing the facilities necessary to serve an intended Converted Customer with Surface Water, the Authority will need certain realty interests to provide and/or meter Surface Water delivered by the Authority to the intended Converted Customer. An intended Converted Customer shall execute any Realty Interest Documents in favor of the

987166

Authority in a form and at the time required by the Authority, and at no expense to the Authority, necessary to provide the intended Converted Customer with Surface Water, as determined by the Authority in its sole and reasonable discretion.

ARTICLE VI
COLLECTION OF FEES

Section 6.01.  Late Penalties and Interest.  Payments of any fees, charges, or rates shall be considered delinquent if they are received more than 10 days after the Due Date (the "Delinquent Date"). A payment postmarked after the Delinquent Date shall be deemed delinquent.  Payments of any fees, charges or rates received by the Authority after the Delinquent Date will be subject to a late penalty of 2% of the fees, charges, or rates due, and such 2% penalty shall be due to the Authority on the first day such fees, charges, or rates are late.  Notwithstanding the foregoing, the 2% late penalty shall not exceed an amount of $2,000.  An additional 5% penalty (for a total penalty of the lesser of 7% or $2,000 plus 5%) shall be imposed if the payment is received more than 30 days after the Due Date, and such additional 5% penalty shall be due to the Authority on the 31st day after the Due Date.  Additionally, overdue amounts (including late penalties) shall accrue interest, from the day after the Delinquent Date until the day the overdue amount is paid to the Authority, at an annual interest rate ("Interest Rate") of 4.25%. On September 1st of each calendar year (the "Current Calendar Year"), the Interest Rate shall automatically reset to the lesser of: (1) one percent plus the prime rate as published in the Wall Street Journal on the first day of July of the current calendar year that does not fall on a Saturday or Sunday; or (2) one percent plus the prime rate as published in the Wall Street Journal on the first day of July of the year preceding the current calendar year that does not fall on a Saturday or Sunday.  (For example, if said prime rate was 5.5% on July 1, 2020 and is 3.25% on July 1, 2021, then on September 1, 2021, the Interest Rate shall be 3.25% plus 1%, or 4.25% per annum.  The prime rates reflected in the previous sentence represent hypothetical rates, which may or may not be the actual prime rates as published in the Wall Street Journal.)

Section 6.02.  Collection Costs. If the Authority is required to incur costs to collect an overdue account, all such costs, including court costs, reasonable attorney's fees, and expenses, shall be paid by the delinquent Person, and the Authority shall be entitled to collect such costs in any suit for collection of a delinquent account.

Section 6.03.  Expulsion from GRP.  The Board may exclude a Person, or any territory or Well owned or controlled by a Person, from the GRP for failure to make a complete or timely payment to the Authority of fees, user fees, rates, penalties, interest, or any other charges due to the Authority.

987166

## ARTICLE VII
## AUTHORITY RULES

Section 7.01. Self-Reporting Violations. Each Non-Exempt Well owner and Surface Water user shall be responsible for reading the meter(s) to measure the amount of water pumped from each Non-Exempt Well and the amount of Surface Water received at the end of each month and for accurately reporting, in the manner provided in this Rate Order, such measurements (even if the measurements show zero pumpage or zero Surface Water usage) to the Authority through the Online Reporting System on or before the due date. The Authority reserves the right to request more frequent reporting, at its sole discretion. Failure to make such measurements, or failure to accurately or timely report them to the Authority, shall be a violation of the Authority's rules. If a Person reports higher pumpage or higher Surface Water usage to the FBSD or HGSD than the Person reported to the Authority, the Authority shall be entitled to find that such Person did not accurately report to the Authority and therefore violated the Authority's rules.

Section 7.02. Failure to Comply with Measurement Requirements. Each Non-Exempt Well owner and Surface Water user is required to comply with the provisions of this Rate Order, including without limitation, allowing the Authority the right to: (1) audit Well pumpage and Surface Water usage; (2) read the Well owner's meter and the Surface Water meter; (3) enter the Well owner's land to audit and/or measure Well pumpage and Surface Water usage; (4) test and recalibrate, if necessary, the Well owner's meter and the Surface Water meter. Failure of the Well owner to comply with such provisions, or any other provision of this Rate Order, shall be a violation of the Authority's rules.

Section 7.03. Calibration of Meters. Each Non-Exempt Well owner is responsible for keeping its Well meter within the Meter Accuracy Range (as defined in Section 4.04 above). It shall be a violation of the Authority's rules for any Well owner who knows or should reasonably know that its Well meter's accuracy is not within the Meter Accuracy Range to fail to promptly correct such meter and to correct any reports previously made to the Authority of inaccurate data. In addition to the foregoing, each Non-Exempt Well owner shall be required to conduct a meter calibration test, at its sole cost and expense, on each Non-Exempt Well once per calendar year. Notwithstanding anything to the contrary in the FBSD's requirements related to meter calibration, the requirement set forth in the preceding sentence shall apply to all Non-Exempt Wells regardless of meter diameter. Only equipment capable of accuracy results of plus or minus one percent of actual flow with repeatable accuracy of ½ of 1 percent may be used to calibrate or test meters. A copy of the accuracy verification report must be submitted to the Authority on or before December 31st of each calendar year confirming that the meter accuracy is within the Meter Accuracy Range.

987166

Section 7.04. Payment Violations. Each Person shall be responsible for paying the Authority the GRP Fees, Surface Water Fees, Imported Water Fees, and any other charges (including, without limitation, any penalties and interest) due the Authority on or before the due date. Failure to make such payment when due shall be a violation of the Authority's rules.

Section 7.05. GRP. Each Person shall be responsible to promptly comply with the GRP and all directives and requirements issued by the Authority, the Authority Engineer, or the Authority Operator for the purposes of or related to the GRP, including, without limitation, all requirements that the Person: (i) take (or refrain from taking) amount(s) of Surface Water from time to time required by the Authority; and (ii) install the Water Line Tank Connection and Chloramine System by the date the Authority is able to deliver Surface Water to the Person. In addition, no Person shall utilize the Shut-off Valve(s) to control the rate of flow of Surface Water being delivered by the Authority, as such Shut-off Valves are intended only to be used in the event a waterline needs to be taken out of service. Failure to comply with the provisions of this Section shall be a violation of the Authority's rules.

Section 7.06. Daily Amount. If the Authority, Authority Engineer, or Authority Operator has designated a Maximum Daily Amount or Minimum Daily Amount for a Person connected to the Authority System, then such Person shall be responsible to take no more than its Maximum Daily Amount and no less than its Minimum Daily Amount during any one day. Failure to so comply shall be a violation of the Authority's rules.

Section 7.07. Water Conservation Program. To encourage efficient use of water, the Authority requires Non-Exempt Well owners and/or Persons receiving Surface Water to (i) submit a water conservation plan meeting or exceeding the minimum State requirements for retail water providers with 3,300 or more connections prior to receiving Surface Water, and (ii) submit Annual Reports documenting the implementation of the water conservation plan to the Authority by May 1st of each year on the Annual Report form promulgated by the Texas Water Development Board. If such Person intends to resell the Surface Water to a wholesale customer of such Person, then the Person shall require its wholesale customer to also implement water conservation measures pursuant to 30 Texas Administrative Code § 288.

Section 7.08. Right of Entry. Each Person shall be responsible: (1) to timely comply with the Section of this Rate Order entitled "Right to Enter Land"; and (2) to not prevent or hinder the Authority's rights under the Section of this Rate Order entitled "Right to Enter Land." Failure to do so shall be a violation of the Authority's rules.

Section 7.09. Authority Rules and Orders. All requirements set forth in this Article VII are adopted as rules of the Authority. All requirements and rules set forth in any part of this Rate Order shall be considered orders of the Authority.

987166

Section 7.10.  Interconnect Agreements.  In order for the Authority to maintain an accurate inventory of the interconnects for all of the Non-Exempt Well owners and/or Persons within its boundaries, each Non-Exempt Well owner and/or Person that is a party to an interconnect agreement, regardless of whether or not the other party is located within the boundaries of the Authority, must submit copies of all interconnect agreements currently in effect or entered into in the future to the Authority.  Copies of interconnect agreements entered into by all Non-Exempt Well owners and/or Persons within the Authority's boundaries must be submitted within 30 days of execution.  Any new interconnects constructed for the benefit of a Non-Exempt Well owner and/or Person located within the Authority's boundaries with parties located outside of the Authority's boundaries must be metered; provided, however, interconnects in which all parties are located within the Authority's boundaries or interconnects that were constructed prior to October 1, 2012 with parties outside of the Authority's boundaries shall not be subject to this requirement.

Section 7.11.  Regional System Agreements.  If a Non-Exempt Well is part of a regional system, the Non-Exempt Well owner must submit the agreement relating to such regional system, including the regional system's participating entities and/or persons, to the Authority within 30 days of execution.  Additionally, if any new agreements and/or amendments relating to Non-Exempt Wells within regional systems are entered into, such agreement and/or amendment must be submitted to the Authority within 30 days of execution.

Section 7.12.  Contact Information Submission.  In order to have accurate contact information to be able to readily contact all Non-Exempt Well owners in the case of an emergency or to transmit other necessary communication, each Non-Exempt Well owner has the responsibility to inform the Authority of the key persons involved with their system, including, as applicable, the Non-Exempt Well owner's operator, engineer, bookkeeper, attorney, and management company.  Should the contact information for any of the foregoing persons change, the Non-Exempt Well owner should submit notification to the Authority as soon as reasonably practicable.

ARTICLE VIII
CIVIL PENALTIES AND MISCELLANEOUS

Section 8.01.  Civil Penalty. A Person is subject to a civil penalty of up to $10,000 for each violation or each day of a continuing violation if the Person:  (i) violates any provision of this Rate Order, the GRP, any rules contained in either of same, or any other order or rule of the Authority, (ii) makes unauthorized use of Authority services or facilities, or (iii) causes damage to Authority facilities by using such facilities in a manner or for a purpose contrary to the purpose for which such facilities were designed.  The Board may set the penalty based on (all as determined by the Board):  (i) the severity of the offense; (ii) whether such violation was willful, knowing, reckless, or inadvertent; (iii) the history of conduct by such Person; (iv) the damages sustained by

the Authority; (v) the risk or damage to the GRP; and (vi) any other factors determined appropriate by the Board. The Authority may bring an action to recover the penalty in a district court in the county where the violation occurred. The penalty shall be paid to the Authority.

Section 8.02. Other Penalties for Rate Order or GRP Violations. Any Person who violates any provision of this Rate Order or the GRP in addition to being subject to the penalties described in this Rate Order, shall be subject to: (i) having Surface Water service terminated; or (ii) expulsion from the Authority's GRP; provided, however, that prior to disconnecting Surface Water service for violations that do not constitute a hazard to health or safety or endanger the integrity of the Authority System or adversely affect the Authority's GRP or excluding a Person from the Authority's GRP, the Authority shall give written notice by first class mail or otherwise, to such Person of the pending disconnection or anticipated expulsion, and shall give such Person the opportunity to contest, explain, or correct the violation at a meeting of the Board. Such disconnection or expulsion shall be in addition to penalties that may be imposed by the Authority under this Rate Order and remedies that may otherwise be available to the Authority.

Section 8.03. Injunction. The Authority may bring an action for injunctive relief in a district court in the county where a violation of an authority rule or order occurs or is threatened to occur. The Authority may bring an action for a civil penalty and injunctive relief in the same proceeding

Section 8.04. Right to Enter Land. In addition to any other rights that the Authority may have (by easement or otherwise), the Authority and its representatives shall have the authority to enter upon any public property (including, without limitation, property owned by a District) or private property within the Authority's boundaries or property adjacent to any property owned by the Authority (and enter upon any property owned by a Person included in the Authority's GRP by contract) at any reasonable time in order to: (1) inspect, repair, install, test, maintain, or operate any Authority facilities or to test or monitor the Surface Water delivered by the Authority; (2) upon reasonable notice, access a Well meter to replace, retrofit, or install a cellular endpoint for remote meter reading; (3) audit Well pumpage or Surface Water measurements submitted by a Person to the Authority; (4) measure Well pumpage or Surface Water usage; (5) inspect and investigate conditions relating to the quality of water in the State of Texas; and/or (6) investigate compliance with any Authority rule, regulation, permit, or order. If requested by the Authority or Authority Operator, a Person shall immediately cooperate with the Authority or Authority Operator to allow the Authority or Authority Operator to enter such site(s) for any of such purposes. Authority representatives entering private property pursuant to this Section shall observe the establishment's rules and regulations concerning safety, internal security, and fire protection and shall notify any occupant or management of their presence and shall exhibit proper credentials.

987166

- 24 -

Section 8.05.  Groundwater Reduction Plan Participation Agreements.  Any Person that is a member or participant of the Authority's GRP through a written contract with the Authority shall be subject to all of the terms, provisions, rules, requirements, and penalties of this Rate Order and all other orders, resolutions, and requirements of the Authority, to the extent they are not inconsistent with the terms and provisions of such written contract.

Section 8.06.  Non-Potable Water Agreements.  The Authority from time to time may enter into written contracts governing the purchase and/or use of Non-Potable Water and/or related infrastructure.  All such contracts shall be subject to all of the terms, provisions, rules, requirements, and penalties of this Rate Order and all other orders, resolutions, and requirements of the Authority, to the extent that they are not inconsistent with the terms and provisions of such written contract.  Necessary reporting for all metered Non-Potable Water required pursuant to the terms of each contract shall be reported to the Authority on the reporting form promulgated by the Authority (i) available electronically on the Online Reporting System, or (ii) if the Authority determines that access to the Online Reporting System is not reasonably available to a Person, then reporting may be made via the non-electronic reporting form attached hereto as Exhibit "C," provided permission to use the non-electronic reporting form is obtained in writing from the Authority.  If in the sole and reasonable discretion of the Authority, it is determined that neither of the foregoing reporting methods are suitable for the specific project, the Authority may request direct reporting to the Authority Engineer.  Such reporting shall be provided to the Authority no later than the last day of the second month following the month for which Non-Potable Water usage is required to be calculated.  (For example, the reporting form for January pumpage is due by February 28th; the reporting form for February pumpage is due by March 31st; etc.).  The Authority reserves the right to request more frequent reporting, at its sole discretion.

Section 8.07.  Prior Resolutions Establishing Groundwater Reduction Plan Fees and Rate Orders.  The Authority retains all of its rights and remedies under all prior Authority Resolutions Establishing Groundwater Reduction Plan Fee, as amended.

Section 8.08.  Amendments to Rate Order and GRP.  As determined necessary by the Authority, the Authority reserves the right to modify from time to time:  (1) the rates, charges, and fees contained in this Rate Order; (2) any other terms and provisions of this Rate Order; and (3) its GRP.

Section 8.09.  Authority Designee.  The Authority hereby designates the Board President, Board Vice President, Board Assistant Vice President, the Authority Engineer, and/or the Authority Operator to exercise the Authority's powers under its GRP and this Rate Order.

987166

Section 8.10. <u>Refusal to Add Persons to GRP</u>. The Board, at its discretion, may refuse to add Persons (and their wells) to the GRP, including, without limitation, any Person seeking to be re-admitted to the GRP who at any time had been removed from the GRP because the Person's groundwater pumpage reduced below the amount required for the Person to be subject to FBSD or HGSD groundwater reduction requirements.

Section 8.11. <u>No Waiver</u>. The failure of the Authority to insist, in any one or more instances, upon a Person's performance of any of the terms, requirements, or conditions of this Rate Order shall not be construed as a waiver or relinquishment of the future performance of any such term, requirement, or condition by that Person or any other Person.

Section 8.12. <u>Lien</u>. Pursuant to Section 8813.108, fees and user fees imposed by the Authority under Section 8813.103(b), any related penalties and interest, collection expenses, and reasonable attorney's fees incurred by the Authority are a first and prior lien against the well to which the fees or user fees apply. The Authority may enforce said lien in any manner provided by the Act or other law.

[EXECUTION PAGE FOLLOWS]

987166

- 26 -

ADOPTED THIS 16th DAY OF DECEMBER, 2021.

NORTH FORT BEND WATER AUTHORITY

By: _____
President, Board of Directors

ATTEST:

By: _____
Asst Secretary, Board of Directors



(SEAL)

## EXHIBIT A
## NORTH FORT BEND WATER AUTHORITY
### Pumpage/Surface Water and Billing Form Effective January 1, 2022

Name of Well Owner or Recipient of Surface Water:_____

Identify: Well #1: _____; Well #2: _____; Well #3: _____; Well #4: _____

Identify: Meter #1: _____; Meter #2: _____; Meter #3: _____; Meter #4: _____

*Check the billing period for which this report is being filed*

| | *Billing Period* | *Rate* | *Due Date* |
|---|---|---|---|
| □ | January 1-31, 20__ | $4.55 pumpage/ $4.90 surface | February 28, 20__ |
| □ | February 1-28/29, 20__ | $4.55 pumpage/ $4.90 surface | March 31, 20__ |
| □ | March 1-31, 20__ | $4.55 pumpage/ $4.90 surface | April 30, 20__ |
| □ | April 1-30, 20__ | $4.55 pumpage/ $4.90 surface | May 31, 20__ |
| □ | May 1-31, 20__ | $4.55 pumpage/ $4.90 surface | June 30, 20__ |
| □ | June 1-30, 20__ | $4.55 pumpage/ $4.90 surface | July 31, 20__ |
| □ | July 1-31, 20__ | $4.55 pumpage/ $4.90 surface | August 31, 20__ |
| □ | August 1-31, 20__ | $4.55 pumpage/ $4.90 surface | September 30, 20__ |
| □ | September 1-30, 20__ | $4.55 pumpage/ $4.90 surface | October 31, 20__ |
| □ | October 1-31, 20__ | $4.55 pumpage/ $4.90 surface | November 30, 20__ |
| □ | November 1-30, 20__ | $4.55 pumpage/ $4.90 surface | December 31, 20__ |
| □ | December 1-31, 20__ | $4.55 pumpage/ $4.90 surface | January 31, 20__ |

*Gallons of Water Pumped, Imported, or Purchased for Billing Period*

| | Start Meter Reading | End Meter Reading | Total |
|---|---|---|---|
| Well #1 | | | |
| Well #2 | | | |
| Well #3 | | | |
| Well #4 | | | |
| Imported Water | | | |
| Surface Water | | | |
| For additional wells, attach a second reporting form and put total from all wells below. | | | |
| ALL | | | |

| | | |
|---|---|---|
| 1 | Enter total gallons of water pumped | |
| 2 | Divide by 1,000 | |
| 3 | Total pumpage fee due (multiply line 2 x 4.55) | |
| 4 | Enter total gallons of surface water received | |
| 5 | Divide by 1,000 | |
| 6 | Total surface water fee due (multiply line 5 x 4.90) | |
| 7 | Enter total gallons of water imported | |
| 8 | Divide by 1,000 | |
| 9 | Total import fee due (multiply line 8 x 4.55 or 4.90) | |
| 10 | LESS APPLICABLE CREDIT DUE FROM CAPITAL CONTRIBUTION | |
| 11 | Total due (add lines 3, 6, and 9 then subtract line 10 ) | |

I declare that the above information is true and correct to the best of my knowledge and belief.

Dated: _____     By: _____

Name: _____     Title: _____

**If your payment is received late (as defined in the Authority's Amended Rate Order) the Authority will send you an invoice for the late penalties and interest set forth in the Authority's Amended Rate Order.**

Make check payable to:  North Fort Bend Water Authority; c/o Municipal Accounts & Consulting, L.P., 1281 Brittmoore Road, Houston, TX  77043 **(rates effective 1/1/2022)**

**NOTE: This Form is to be used only in the event that the Authority's Online Reporting System is unavailable.**

987166

**Date of Request** _____



## NEW WELL REQUEST OR CHANGE OF WELL STATUS REQUEST

**Request Type**

☐ New Well (Complete Sections 1 through 3)
☐ Change Existing Well Status (Complete Sections 1 and 4)

**1. Well Owner Information**

Well Owner Name _____

Mailing Address _____

Email _____ Phone _____

**2. Pumpage Reporting**

  Requirements for water usage reporting are detailed in the NFBWA Rate Order and on our website.

Contact Name for Pumpage Reporting _____

Company _____

Mailing Address _____

Email _____ Phone _____

**3. Well Information**

Well Location Address _____

Well Coordinates    Latitude: _____    Longitude: _____

Date Pumpage to Begin _____    Well Capacity (gpm) _____

Casing Diameter (in) _____    Aquifer _____

Location    ☐ Located at Water Plant    ☐ Remote Well

Proposed Disinfectant    ☐ Chlorine    ☐ Chloramine    ☐ Other: _____

Intended Well Use (See Page 2 for Definitions)

☐ Agricultural Irrigation      ☐ Industrial          ☐ Public Supply
☐ Commercial/Domestic          ☐ Irrigation          ☐ Single-Family Dwelling
☐ Geothermal                   ☐ Lake/Pond/Pool      ☐ Single-Family Irrigation
☐ Other: _____

987166

**4. Change in Existing Well Status**

Well Number _____    Effective Date of Change _____

Change Status to
☐ Active / Add to NFBWA Permit
☐ Abandoned / Remove from NFBWA Permit
☐ Exempt from GRP Requirement / Remove from NFBWA Permit

Comments: _____

**Intended Use Definitions**

- Agricultural Irrigation: Wells used in production of food or fiber commodities grown for resale or commercial purposes. Includes wholesale nursery growers.
- Commercial/Domestic: Wells used by commercial or business establishments for potable or sanitary needs. (Examples: offices, warehouse, churches, schools, duplexes, etc.)
- Geothermal: Wells used for a geothermal heat exchanger. Specify whether closed-loop, reinjection, or pump and dump.
- Industrial: Wells used as part of an industrial process or in the manufacturing of a product. (Examples: boiler feed, paper manufacturing, chemical process feed, etc.)
- Irrigation: Wells used only for non-exempt irrigation purposes such as irrigation of golf courses, landscapes, parks, etc.
- Lake/Pond/Pool: Wells used to file or maintain the level of lakes, ponds, or pools.
- Public Supply: Wells used for retail or wholesale water supply. (Example: cities, water districts, private utilities, apartments, mobile home parks, etc.)
- Single-Family Dwelling: Wells connected to one single-family dwelling and used for typical domestic and sanitary needs.
- Single-Family Irrigation: Wells used for landscape irrigation at one single family residence, but not connected to and serving the dwelling.
- Other: Wells used for other non-exempt uses such as livestock watering, etc.

987166

**EXHIBIT C**
**NORTH FORT BEND WATER AUTHORITY**
**Non-Potable Water and Billing Form Effective January 1, 2022**

Name of Non-Potable Water System: _____

Billing Period: _____

**Incentive Type**

☐ Credit of $0.75 per 1,000 gallons (i.e., the system is not owned by the NFBWA)

☐ Reduced fee of $3.80 per 1,000 gallons (i.e., the system is owned by the NFBWA)

**System Type**

☐ Effluent Reuse (**fill out Section A only**)

☐ Stormwater and/or Rainwater Capture System (**fill out Section B only**)

**Section A: Effluent Reuse**

| Meter Type | Start Meter Reading (gallons) | End Meter Reading (gallons) | Total Effluent Reuse (gallons) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| 1 | Enter total gallons of effluent reuse | | |
| 2 | Divide line 1 by 1,000 | | |
| 3 | Enter $0.75 credit or $3.80 reduced fee see Incentive Type | | |
| 4 | Total credit earned or fee owed (multiply line 2 by line 3) | | |

*If you need additional space, please fill out a second form*

**Section B: Stormwater and/or Rainwater Capture System**

| Meter Description | Start Meter Reading (gallons) | End Meter Reading (gallons) | Total Metered (gallons) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| 1 | Enter total metered usage from Irrigation Meters (gallons) | | |
| 2 | Enter total pumpage from Make-Up Wells (gallons) | | |
| 3 | Subtract line 2 from line 1 (enter 0 if negative) | | |
| 4 | Divide line 3 by 1,000 | | |
| 5 | Enter $0.75 credit or $3.80 reduced fee see Incentive Type | | |
| 6 | Total credit earned or fee owed (multiply line 4 by line 5) | | |

*If you need additional space, please fill out a second form*

I declare that the above information is true and correct to the best of my knowledge and belief.

Dated: _____     By: _____

Signature: _____     Title: _____

If your payment is received late (as defined in the Authority's Amended Rate Order) the Authority will send you an invoice for the late penalties and interest as set forth in the Authority's Amended Rate Order.

Make check payable to: North Fort Bend Water Authority; c/o Municipal Accounts & Consulting, L.P. 1281 Brittmoore Rd. Houston, TX 77043.

**Submit to NFBWA@bgeinc.com**

987166

# BEFORE THE
# STATE OFFICE OF ADMINISTRATIVE
# HEARINGS

---

## PETITION OF THE CITY OF FULSHEAR APPEALING THE DECISION OF NORTH FORT BEND WATER AUTHORITY TO INCREASE GROUNDWATER REDUCTION PLAN AND SURFACE WATER FEES

---

## PROPOSAL FOR DECISION

This matter was docketed as a petition for an appeal by the City of Fulshear (Fulshear) of a decision made by North Fort Bend Water Authority (Water Authority) affecting water rates pursuant to Texas Water Code (Water Code) section 13.043(f). The Public Utility Commission of Texas (Commission) referred this matter to the State Office of Administrative Hearings (SOAH) to address, among other issues, whether the Commission has jurisdiction over Fulshear's petition. The Water Authority filed a motion to dismiss, arguing that the Commission lacks jurisdiction and that Fulshear's appeal fails to state a claim for which relief may be granted. For the reasons set out below, the Administrative Law Judge (ALJ) recommends that the motion to dismiss be granted.

# I. NOTICE, JURISDICTION, AND PROCEDURAL HISTORY

Notice was not contested and is therefore addressed only in the Findings of Fact and Conclusions of Law.

The Commission has jurisdiction over appeals filed under Texas Water Code section 13.043 and rate-fixing jurisdiction under Texas Water Code section 12.013. SOAH has jurisdiction to conduct a hearing and render a Proposal for Decision (PFD) under Texas Government Code section 2003.049.

The Water Authority issued an Amended Rate Order on December 16, 2021.[1] Within 90 days, Fulshear filed a petition under Texas Water Code sections 12.013 and 13.043 (Petition). On June 21, 2022, staff (Staff) of the Commission, recommended finding the Petition sufficient.[2] Referencing Staff's recommendation, the Commission ALJ found the Petition sufficient.[3]

On August 24, 2022, the Commission referred this matter to SOAH, requesting the assignment of an ALJ to conduct a hearing and issue a PFD, if necessary. On August 25, 2022, the Commission issued a Preliminary Order on Phase One Issues, listing, among others, the following matters to be addressed (including the relevant subparts):

---

[1] Water Authority Motion Tab B (Amended Rate Order) at 1.

[2] Staff's Recommendation on Sufficiency of the Petition and Request for Referral at 1-2 (Jun. 21, 2022).

[3] Order No. 3 (Jun. 22, 2022).

9.      Do the facts demonstrate that the Commission has authority under TWC section 12.013 to decide this appeal? ...

b. Does the water authority furnish water to Fulshear on a wholesale basis under TWC section 12.013(d)?

10.     Do the facts demonstrate that the Commission has authority under TWC section 13.043(f) to decide this appeal? ...

a. Does Fulshear receive water service under TWC section 13.043(f) from the water authority?

On December 15, 2022, the Water Authority filed a motion to dismiss with prejudice (Motion), challenging whether Fulshear's appeal is proper under Texas Water Code sections 12.013 and 13.043.[4] The ALJ took argument on written submission.[5] The ALJ granted the Water Authority's Motion[6] and abated the procedural schedule, notifying the parties that the ALJ would issue a PFD.[7]

In assessing the arguments made in the Water Authority's Motion, the PFD addresses the following issues: whether the Water Authority furnishes water to

---

[4] Water Authority Motion at 8 and 9 (Dec. 15, 2022).

[5] *See* Fulshear's Response to Motion to Dismiss of NFBWA (Jan. 18, 2023) (Fulshear Reply), Staff's Response to NFBWA's Motion to Dismiss and Request for Leave to File a Reply to Fulshear's Response (Jan. 18, 2023) (Staff Reply), Fulshear's Reply to Staff's Response to NFBWA's Motion to Dismiss (Feb. 27, 2023) (Fulshear Reply to Staff), NFBWA Reply to Fulshear Response to Motion to Dismiss (Feb. 27, 2023) (Water Authority Reply to Fulshear), NFBWA Reply to Commission Staff's Response to NFBWA's Motion to Dismiss (Feb. 27, 2023) (Water Authority Reply to Staff), and Commission Staff's Reply to Fulshear's Response to NFBWA's Motion to Dismiss (Feb. 27, 2023) (Staff Reply to Fulshear).

[6] SOAH Order No. 7 (Apr. 27, 2023).

[7] SOAH Order No. 8 (May 9, 2023).

Fulshear, whether Fulshear receives water service from the Water Authority, and whether Fulshear pays the Water Authority for any water service it receives.

## II. BACKGROUND

The basic facts are uncontested. No party disputes that Fulshear is a retail public utility and that the Water Authority is a political subdivision. The following sections address the Water Authority's Groundwater Reduction Plan, the fee change implemented by the Water Authority, and how these relate to Fulshear.

### A. NORTH FORT BEND WATER AUTHORITY

#### 1. Groundwater Reduction Plan

The Water Authority includes 44 utility districts and Fulshear, in addition to private well owners that lie within its boundary.[8] The Water Authority is charged with developing a strategy to comply with the regulations set by the Fort Bend Subsidence District (Subsidence District).[9] Within the Water Authority's territory, water users are subject to the Subsidence District's disincentive fee, otherwise known as the Groundwater Reduction Plan (GRP) fee, limiting groundwater pumpage to a percentage of their total water demand.[10] In March 2008, the Water Authority released its GRP, detailing its strategy for meeting those requirements.[11]

---

[8] Water Authority Motion Tab A (Groundwater Reduction Plan) at 3.

[9] Groundwater Reduction Plan at 1.

[10] Groundwater Reduction Plan at 1.

[11] *See* Groundwater Reduction Plan.

The GRP sets out the Water Authority's plan for a surface water conversion for the Water Authority's territory, with goals of 30 percent reduction in groundwater use starting in 2013, and 60 percent reduction in groundwater use starting in 2025.[12] The GRP includes details of an expansion of the water transmission system, projected to 2055.[13]

The GRP designates districts for each of the two conversion phases, selected to meet the required conversion levels for each phase.[14] The second phase of the conversion is referred to as the "2025 Conversion Strategy" (2025 Conversion), the goal of which is to reduce groundwater use by 60 percent and is designed to account for future needs through 2055.[15] Fulshear is included in the 2025 Conversion phase.[16]

The section detailing the conversion process discusses the expansion of the water transmission system, including the sizing of transmission pipelines, plant facilities costs, and a construction schedule for the GRP and the GRP participants. The information was not specific to Fulshear.[17]

---

[12] Groundwater Reduction Plan at 1.

[13] Groundwater Reduction Plan at 1.

[14] Groundwater Reduction Plan at 19.

[15] Groundwater Reduction Plan at 1 and 21.

[16] Groundwater Reduction Plan, Table 6, at 20.

[17] Groundwater Reduction Plan at 21-25.

Participants in the GRP include two types of water users: owners of wells subject to the Subsidence District disincentive fee, or GRP fee, and those included in the GRP by contract.[18] Fulshear falls into the first category.[19]

The plan acknowledges that it is a dynamic process that will evolve during the conversion process, especially in 2025, when the Water Authority predicts that demand by its users will increase dramatically, compared to the previous timeframes.[20] The Water Authority anticipates that it will need to make adjustments as time progresses, while still in keeping with the general schedule dictated by the GRP.

## 2.    Powers and Authority

Under the terms of the Amended Rate Order, the Subsidence District issues an aggregate water well permit to the Water Authority for each well located in its service area.[21] As the permittee, the Water Authority is responsible for all administrative matters, including, but not limited to, permit renewal, payment of permit fees, and year-end pumpage reporting requirements.[22] Each well owner, including Fulshear, that is not exempt from the GRP maintains ownership of its respective wells and operational responsibility for those wells.[23]

---

[18] Groundwater Reduction Plan at 3.

[19] Groundwater Reduction Plan at 3.

[20] Groundwater Reduction Plan at 35.

[21] Groundwater Reduction Plan at 10.

[22] Groundwater Reduction Plan at 10.

[23] Groundwater Reduction Plan at 10; Fulshear Petition at 3.

The Water Authority's ability to aggregate permits that operate within its service area gives it flexibility in its operation and planning to ensure that it achieves the required groundwater reduction goals.[24] It monitors groundwater pumpage by requiring each well owner to self-report on a monthly basis.[25] This allows it to observe compliance with the GRP and to impose corrective actions, if necessary.[26]

The Water Authority may impose fees, user fees, rates, and charges on any person within its service area, including owners of wells located within the service territory.[27] It adopted three different types of fees: the GRP fee, the Surface Water fee, and the Imported Water fee.[28] The GRP fee is based on the amount pumped from owners of non-exempt wells on a monthly basis, which must be paid to the Water Authority.[29] Each person that receives surface water from the Water Authority must pay a separate Surface Water fee, based on surface water received from the Water Authority.[30] Fulshear pays the GRP fee for pumping groundwater from its own wells, but it does not pay any Surface Water fees.[31]

---

[24] Groundwater Reduction Plan at 28.

[25] Groundwater Reduction Plan at 29.

[26] Groundwater Reduction Plan at 29.

[27] Groundwater Reduction Plan at 27.

[28] Water Authority Motion Tab C, Affidavit of Matthew Froelich (Froelich Affidavit) at 2.

[29] Froelich Affidavit at 2.

[30] Froelich Affidavit at 2.

[31] Fulshear Reply Brief at 3.

### 3. The Amended Rate Order

On December 16, 2021, the Water Authority, through its Board of Directors, increased the GRP fee from $4.25 per 1,000 gallons to $4.55 per 1,000 gallons and the Surface Water fee from $4.60 to $4.90.[32] These changes are the basis for Fulshear's Petition.

### B. CITY OF FULSHEAR

Fulshear is a municipal corporation providing retail water utility service within its corporate and extraterritorial boundaries.[33] Fulshear falls under the definition of a retail public utility, as defined by the Texas Water Code.[34] Fulshear pumps water from its own wells within the Water Authority's service territory.[35]

As stated above, Fulshear pays the GRP fee, but it does not pay the Surface Water fee, because it does not receive surface water from the Water Authority.[36] Additionally, none of the water rights acquired by the Water Authority have been dedicated to Fulshear, nor does the Water Authority have any existing facilities that are dedicated to or currently committed to providing water to Fulshear.[37] Initially, the Water Authority estimated that it would be able to provide surface water to

---

[32] Amended Rate Order at 5-6.

[33] Fulshear Appeal at 1 (Mar. 16, 2022).

[34] Tex. Water Code § 13.002(19).

[35] Fulshear Reply Brief at 1.

[36] Froelich Affidavit at 2.

[37] Froelich Affidavit at 4.

Fulshear in mid-2024, but the timeframe is outdated and the Water Authority will not be providing surface water to Fulshear by the initial estimated date, or in the immediate future.[38]

## III. APPLICABLE LAW

Texas Water Code section 12.013(a) states that the Commission shall fix reasonable rates for the furnishing of raw or treated water for any purpose mentioned in Chapters 11 or 12 of the Texas Water Code. The relevant chapters of the Texas Water Code do not define the term "furnish."

Additionally, Texas Water Code section 13.043(f) provides:

A retail public utility that receives water ... from ... [a] political subdivision of the state ... may appeal to the utility commission a decision of the provider of water ... affecting the amount paid for water or sewer service.

The Texas Water Code defines "service" as any act performed, anything furnished or supplied, and any facilities or lines committed or used by a retail public utility[39] in the performance of its duties to its patrons, employees, other retail public utilities, and the public, as well as the interchange of facilities between two or more retail public utilities.[40]

---

[38] Froelich Affidavit at 4.

[39] Under Texas Water Code section 13.002(19), the definition of a retail public utility includes political subdivisions.

[40] Tex. Water Code § 13.002(21).

Two cases address whether a tract of land is receiving water service, in the context of an owner seeking release from a holder of a water Certificate of Convenience and Necessity (CCN). In *Texas General Land Office v. Crystal Clear Water Supply Corporation*, the Texas Third Court of Appeals held that whether the retail public utility provided water service to the owner of tract of land seeking decertification is a fact-based inquiry regarding whether the retail public utility has facilities or lines committed to providing water to the particular tract of land or has performed acts or supplied anything to that tract in furtherance of its obligation to provide water to that tract under its CCN.[41]

In *Johnson County Special Utility District v. Public Utility Commission of Texas*, the Texas Third Court of Appeals performed a similar analysis, citing *Crystal Clear*.[42] In addition to the fact-based inquiry, the court cited other considerations: whether any qualifying services were received by the property; whether a dedicated water line was installed to serve the particular property, even if the line was not currently operative; and that a tract of land would not necessarily be receiving water service simply because the retail public utility had entered into a contract to secure water supply, unless the act was performed in furtherance of providing water to the tract seeking decertification.[43]

---

[41] *See Tex. Gen. Land Off. v. Crystal Clear Water Supply Corp.*, 449 S.W.3d 130 (Tex. App.—Austin 2014, pet. denied).

[42] *Johnson Cnty. Special Util. Dist. v. Pub. Util. Comm'n of Tex.*, 2018 WL 2170259, at *8 (Tex. App.—Austin May 11, 2018, pet. denied).

[43] *Johnson County*, 2018 WL at *8.

Under Title 16 Texas Administrative Code section 22.181, the presiding officer may recommend that the Commission dismiss, with or without prejudice, any proceeding for any reason specified in that section, including, but not limited to, lack of jurisdiction and failure to state a claim for which relief can be granted.[44]

## IV. ARGUMENTS AND ANALYSIS

The Water Authority makes three distinct arguments for dismissal, which generally follow Preliminary Order Issue Nos. 9 and 10: the Commission lacks ratemaking jurisdiction under Texas Water Code section 13.043(f); the Commission lacks jurisdiction under Texas Water Code section 12.013(a); and Fulshear's Petition fails to state a claim for which relief may be granted under Texas Water Code section 12.013(a). Each argument is addressed in turn below.

### A. ISSUE NO. 9: DO THE FACTS DEMONSTRATE THAT THE COMMISSION HAS AUTHORITY UNDER TEXAS WATER CODE SECTION 12.013 TO DECIDE THIS APPEAL?

#### 1. Arguments

Texas Water Code section 12.013 addresses the Commission's rate-fixing authority where a retail public utility furnishes water.

The Water Authority argues that, because it does not furnish water to Fulshear, the Commission does not have rate-fixing authority over Fulshear's

---

[44] 16 Tex. Admin. Code § 22.181 (a) and (d)(1) and (8).

petition under Texas Water Code section 12.013(a).[45] The Water Authority acknowledges that it furnishes potable water for compensation to GRP participants within its service territory, but not to Fulshear.[46] Because neither Chapter 11 nor 12 of the Texas Water Code defines the term "furnish,"[47] the ALJ uses the plain meaning of the term.[48]

Staff agrees with the Water Authority, adding that the term "furnish" is a synonym for the words "supply" or "provide."[49] Staff argues that the facts do not support Fulshear's contention that the Water Authority furnishes water, raw or potable, to Fulshear by paying the GRP Fee.[50]

By contrast, Fulshear argues that the Water Authority's interpretation of "furnish" is too narrow in scope.[51] Fulshear states that, because it is part of a group to whom the Water Authority furnishes water and collectively pays for the Water Authority's expenses, the Water Authority "furnishes" water to Fulshear.[52] Fulshear admits its argument that the Water Authority "furnishes" water to

---

[45] Texas Water Code section 12.013(a) provides that the Commission shall fix reasonable rates for the furnishing of raw or treated water for any purpose mentioned in Chapters 11 or 12 of the Texas Water Code.

[46] Water Authority Initial Brief at 9; *see* Groundwater Reduction Plan.

[47] *See* Tex. Water Code chapters 11 and 12.

[48] *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011).

[49] Staff Reply Brief at 2.

[50] Staff Reply Brief at 2.

[51] Fulshear Reply Brief at 5-6.

[52] Fulshear Reply brief at 6.

Fulshear is based solely on the fact that it is a GRP participant and that that it does not yet receive surface water from the Water Authority.[53]

## 2. Analysis

The ALJ agrees with the Water Authority and Staff. Using the plain meaning of "furnish," the evidence establishes that the Water Authority does not furnish water to Fulshear. As stated in the affidavit provided by the Water Authority, it does not provide water, raw or potable, to Fulshear, nor has it in the past.[54]

The ALJ is not persuaded by Fulshear's argument that the Water Authority furnishes water to Fulshear. Although Fulshear's wells are located within the Water Authority's territory, Fulshear pumps the groundwater out of its own wells and maintains operational responsibility for those wells.[55]

Moreover, contrary to Fulshear's argument, the Water Authority does not control Fulshear's wells. The Water Authority holds the permits for Fulshear's wells, but it only performs administrative functions, such as renewing the permits, paying the associated fees, and requiring self-reports from well owners to track the amount of groundwater drawn. The Water Authority performs those administrative duties with the aim of meeting requirements set by the Subsidence District regarding

---

[53] Fulshear Reply Brief at 2.

[54] *See* Froelich Affidavit.

[55] *See* Groundwater Reduction Plan at 10.

the amount of groundwater drawn by GRP participants, which is a separate consideration from providing water to the well owners.

Fulshear does not refer to any other acts that the Water Authority performed that might be construed as "furnishing" water to Fulshear, other than the fact that Fulshear's wells lie within the Water Authority's area of responsibility within the Subsidence District. Thus, Fulshear has not established that the Water Authority furnishes water to Fulshear.

Because the ALJ finds that the Water Authority does not furnish water to Fulshear, ALJ finds that the Commission does not have rate-fixing jurisdiction over Fulshear's appeal under Texas Water Code section 12.013.

## B. ISSUE NO. 10: DO THE FACTS DEMONSTRATE THAT THE COMMISSION HAS AUTHORITY UNDER TEXAS WATER CODE SECTION 13.043 TO DECIDE THIS APPEAL?

### 1. Arguments

Texas Water Code section 13.043(f) allows a retail public utility that receives water service to appeal to the Commission a decision of the water service provider that affects the amount paid for that service.

The Water Authority argues that Fulshear neither receives water services from the Water Authority, nor does it pay the Water Authority for water service.[56] For this reason, it maintains, the Commission lacks jurisdiction over this appeal and Fulshear's petition fails to state a claim for which relief may be granted.[57]

The Water Authority cites the interpretation of the phrase "receives water service" discussed in *Crystal Clear*, positing that it stands for the proposition that a property was not "receiving water service" from a water utility where the utility was not actively supplying water to the property, as there were no particular facilities or lines committing to serving the property, and there was no water supply line dedicated to meeting the future demand from the property.[58] In *Johnson County*, the court further crystallized these factors: the water services must be received by the property, a dedicated water line might be sufficient, and a tract of land would not necessarily be receiving water service simply because the utility performed an act, unless that act was performed in furtherance of providing water to the specific tract.[59]

The Water Authority acknowledges that it has taken steps to acquire surface water supplies and transport, treat, sell, and deliver that water to certain customers inside its boundaries.[60] For example, it acquired surface water rights from the City

---

[56] Water Authority Initial Brief at 9-10.

[57] Water Authority Motion at 6.

[58] Water Authority Initial Brief at 11; *Crystal Clear*, 449 S.W.3d at 141.

[59] Johnson County, 2018 WL 2170259 at 8.

[60] Water Authority Initial Brief at 12.

of Houston, and arranged for the design and construction of a pump station and over 50 miles of surface water transmission lines, to deliver surface water to some of its GRP participants.[61] Additionally, it has chosen the pipe size it deems to be appropriate to serve future demand for the GRP participants as a whole, but not to Fulshear in particular.[62]

The Water Authority maintains that it has not sold, transported, or delivered any water to Fulshear.[63] Additionally, contrary to Fulshear's contentions, the Water Authority emphasizes that none of its existing facilities are currently used to provide surface water to Fulshear, none of the existing facilities were designed or constructed solely for the purpose of serving Fulshear, nor are any of the Water Authority existing facilities currently committed to providing water to Fulshear.[64]

The Water Authority acknowledges that it has taken steps to develop surface water supplies and provide treated surface water to certain participants in the GRP, but it distinguishes those actions from providing, and Fulshear receiving, water service.[65] The GRP, created in 2008, details a multi-decade plan to address the goals of the groundwater conservation efforts and a surface water conversion process accomplished in phases, including building facilities and laying down infrastructure

---

[61] Water Authority Initial Brief at 12.

[62] Groundwater Reduction Plan at 21.

[63] Water Authority Initial Brief at 12.

[64] Froehlich Affidavit at 4.

[65] Water Authority Initial Brief at 11.

to deliver potable water.[66] The GRP lists Fulshear as scheduled to begin implementation in the second phase, the 2025 Conversion, but the Water Authority states that it might not even be able to meet that deadline, as they have had to make adjustments.[67] Thus, the Water Authority argues that, Fulshear is not currently receiving water service, has not received water service, and will not receive water service from the Water Authority in the immediate future.

Staff generally agrees with the Water Authority's position, disagreeing only with the contention that Fulshear must actively receive surface water to constitute "receiving water service."[68]

Fulshear's view of receiving water service is broader.[69] It argues that it receives water service from the Water Authority and that it pays the Water Authority for water service. Fulshear argues that it "receives 'water service'" from the Water Authority because the Water Authority designs, constructs, operates, and charges for a surface water system for the GRP participants as a whole, including Fulshear.[70] Moreover, it argues that the Water Authority controls Fulshear's groundwater wells by holding the associated permits for those wells, and, thus, the Water Authority provides "water service" to Fulshear.[71]

---

[66] *See* Groundwater Reduction Plan.

[67] Water Authority Motion at 13.

[68] Commission Staff Reply Brief at 3.

[69] Fulshear Reply Brief at 6.

[70] Fulshear Reply Brief at 1-2.

[71] Fulshear Reply Brief at 6-7.

Alternatively, Fulshear argues that, if the Commission were to find that Fulshear does not receive "water service" from the Water Authority, the Water Authority includes in its GRP an intention to effect a 60 percent reduction in groundwater use, starting in 2025, through 2055.[72] Fulshear admits that it is not yet receiving surface water from the Water Authority, but argues that the Water Authority has "committed facilities or lines" for Fulshear's future use with its inclusion in the GRP.[73]

As to whether Fulshear pays for water service, Fulshear argues that the GRP fee, the disincentive fee it pays for drawing water from the groundwater wells, amounts to paying for water service.[74]

## 2.    Analysis

The ALJ agrees with the Water Authority and Staff that Fulshear is neither receiving water service from the Water Authority, nor paying the Water Authority for water service.

The Water Authority does not have any dedicated water lines serving Fulshear, nor has the Water Authority has committed lines to provide water to Fulshear, as Fulshear argues. Rather, the Water Authority has *plans* to commit lines,

---

[72] Water Authority Ex. A at 1 and 21.

[73] Fulshear Reply Brief at 7.

[74] Fulshear Reply Brief at

which is one crucial step removed from the factors set out in *Crystal Clear* and *Johnson County*.

Because Fulshear admits that it does not currently receive surface water from the Water Authority, the next consideration is whether the Water Authority has committed water lines to serve Fulshear or taken any other steps in furtherance of providing water service to Fulshear. As stated above, the Water Authority established that it has not committed water lines to serve Fulshear. As to the final consideration, Fulshear only refers to actions taken by the Water Authority for the GRP participants as a whole, not specifically with respect to Fulshear. The Water Authority designs, constructs, operates, and charges fees to the GRP participants in accordance with the conversion schedule detailed in the GRP, but none of the plans revolve specifically around serving Fulshear. Thus, the ALJ is not persuaded by Fulshear's arguments and finds that Fulshear is not receiving water service from the Water Authority.

Because it does not receive water service from the Water Authority, it naturally follows that Fulshear does not pay the Water Authority for water service. Moreover, because Fulshear does not pay the Water Authority for water service, the Water Authority did not make a decision in the Amended Rate Order affecting the amount that Fulshear pays for water service. The GRP fee Fulshear pays is a disincentive fee for drawing groundwater from its own wells within a subsidence district, which does not rise to the level of paying the Water Authority for water service. Moreover, if Fulshear received water service, it would trigger the Surface Water fee, which Fulshear acknowledges that it does not pay. The former penalizes

a customer for water drawn by a customer over a certain threshold under a groundwater reduction plan, while the latter is compensation to a utility for services rendered.

Fulshear may, at some point in the future, have the ability to appeal rates set by the Water Authority; however, currently, it does not. Fulshear does not receive water service from the Water Authority, nor does it pay the Water Authority for water service. Accordingly, the ALJ finds that the Commission does not have jurisdiction over Fulshear's appeal under Texas Water Code section 13.043(f).

## V.    RECOMMENDATION

Because the Water Authority does not furnish water or provide water service and because Fulshear does not pay for water service, the Commission does not have jurisdiction over Fulshear's Petition under Texas Water Code section 12.013 or 13.043. Accordingly, the ALJ recommends that the Commission dismiss this proceeding for lack of jurisdiction and failure to state a claim for which relief can be granted.

## VI.    FINDINGS OF FACT

*The Parties*

1.    The North Fort Bend Water Authority (Water Authority) is a political subdivision that functions as a retail public utility.

2.     The City of Fulshear (Fulshear) is a city that owns and operates non-exempt wells within the Water Authority's service territory.

### *The Groundwater Reduction Plan*

3.     The Water Authority has two classes of customers: those subject to the Groundwater Reduction Plan (GRP) by virtue of their location within the Water Authority's territory, and those that enter into a contract to participate in the GRP. Fulshear is categorized into the former class of customers.

4.     The Water Authority charges three types of fees: the GRP Fee, the Surface Water Fee, and the Imported Water Fee.

5.     The GRP Fee is the fee imposed by the Water Authority in accordance with the GRP adopted by the Water Authority in March 2008.

### *Ordinance Setting Rates Being Appealed*

6.     On December 16, 2021, the Water Authority issued an Amended Rate Order, enacting new rates for the GRP Fee, the Surface Water Fee, and the Imported Water Fee.

### *The Appeal*

7.     Within 90 days, on March 16, 2022, Fulshear filed a petition appealing the Water Authority's new fees (Petition) with the Public Utility Commission of Texas (Commission).

8.     Fulshear appeals changes to the GRP Fee and the Surface Water Fee.

9.     On June 22, 2022, the Commission Administrative Law Judge (ALJ) found the Petition sufficient.

### *Referral to SOAH*

10.    On August 24, 2022, the Commission referred this case to the State Office of Administrative Hearings (SOAH).

11. On August 25, 2022, the Commission issued its Preliminary Order on Phase One Issues (Preliminary Order), establishing a list of issues to be addressed in the proceeding.

12. The Commission listed the following issues, among others, in the Preliminary Order:

   a. Do the facts demonstrate that the Commission has authority under TWC section 12.013 to decide this appeal?

      i. Does the water authority furnish water to Fulshear on a wholesale basis under TWC section 12.013(d)?

   b. Do the facts demonstrate that the Commission has authority under TWC section 13.043(f) to decide this appeal?

      i. Does Fulshear receive water service under TWC section 13.043(f) from the water authority?

On November 7, 2022, the SOAH ALJ convened a prehearing conference. Fulshear, the Water Authority, and Commission staff (Staff) appeared through legal counsel.

*Water Authority's Motion to Dismiss*

13. On December 15, 2022, the Water Authority filed a Motion to Dismiss (Motion).

14. Fulshear and Staff filed responses to the Water Authority's Motion on December 15, 2022, and all parties filed replies on February 27, 2023.

15. On April 27, 2023, SOAH Order No. 7 notified the parties that the ALJ granted the Water Authority's Motion and that a Proposal for Decision (PFD) would be forthcoming.

16. On May 9, 2023, SOAH Order No. 8 abated the proceeding pending the issuance of the PFD.

17. Fulshear pays the GRP Fee for drawing water from its wells.

18.    Fulshear does not pay Surface Water Fees.

19.    Fulshear does not receive water service from the Water Authority, because the Water Authority does not have any water lines serving Fulshear, the Water Authority has not committed lines to specifically providing water service to Fulshear, and it has not taken steps in furtherance of providing water service specifically to Fulshear.

20.    Fulshear does not pay for water service from the Water Authority.

21.    The Water Authority does not furnish water to Fulshear.

## VII.  CONCLUSIONS OF LAW

1.    A retail public utility that receives water service from another retail public utility or political subdivision of the state, may appeal to the utility commission a decision of the provider of water or sewer service affecting the amount paid for water or sewer service. Texas Water Code § 13.043(f).

2.    The Water Authority is a political subdivision operating as a retail public utility. Texas Water Code § 13.002(16).

3.    This docket was processed in accordance with the requirements of the Texas Water Code and Commission rules.

4.    SOAH has jurisdiction to conduct a hearing on the merits and issue a PFD with findings of fact and conclusions of law for this proceeding. Tex. Gov't Code § 2003.049.

5.    This appeal was timely filed with the Commission and the Water Authority. Texas Water Code § 13.043(f); 16 Tex. Admin. Code § 24.101(f).

6.    The Commission shall fix reasonable rates for the furnishing of raw or treated water for any purpose mentioned in Chapters 11 or 12 of the Texas Water Code. Texas Water Code § 12.013(a).

7.   The Water Authority does not furnish water to Fulshear under Texas Water Code section 12.013(a).

8.   A retail public utility that receives water … from … [a] political subdivision of the state … may appeal to the utility commission a decision of the provider of water … affecting the amount paid for water or sewer service. Tex. Water Code § 13.043(f).

9.   Fulshear does not receive water service from the Water Authority under Texas Water Code section 13.043(f).

10.  The Water Authority did not make a decision affecting the amount Fulshear pays for water service because Fulshear does not pay the Water Authority for water service.

11.  SOAH has authority to dismiss all issues within a proceeding and issue a PFD. 16 Tex. Admin. Code §§ 22.181(f)(2), .261.

12.  The Petition does not invoke the Commission's jurisdiction under Texas Water Code sections 12.013(a) or 13.043(f) and fails to state a claim for which relief can be granted. 16 Tex. Admin. Code § 22.181(d)(1) and (8).


## VIII. PROPOSED ORDERING PARAGRAPHS

1.   Fulshear's appeal is dismissed.

2.   The Commission denies all other motions and any other requests for general or specific relief that the Commission has not expressly granted.


**Signed June 22, 2023**

Rachelle Nicolette Robles
Presiding Administrative Law Judge

# BEFORE THE
# STATE OFFICE OF ADMINISTRATIVE HEARINGS

---

## PETITION OF THE CITY OF FULSHEAR APPEALING THE DECISION OF NORTH FORT BEND WATER AUTHORITY TO INCREASE GROUNDWATER REDUCTION PLAN AND SURFACE WATER FEES

---

## PROPOSAL FOR DECISION ON REMAND

The City of Fulshear (Fulshear) appealed a decision made by North Fort Bend Water Authority (Water Authority) pursuant to Texas Water Code (Water Code) section 13.043(f). The Public Utility Commission of Texas (Commission) referred this matter to the State Office of Administrative Hearings (SOAH) to address, among other issues, whether the Commission has jurisdiction over Fulshear's petition. For the reasons set out below, the Administrative Law Judge (ALJ) recommends that the Commission does not have jurisdiction.

# I. JURISDICTION, TIMELINESS OF APPEAL, AND PROCEDURAL HISTORY

The timeliness of the appeal is not contested and is therefore addressed only in the Findings of Fact and Conclusions of Law.

The Water Authority issued a rate order on December 16, 2021.[1] Fulshear filed an appeal under Water Code sections 13.043 and 12.013. On August 24, 2022, the Commission referred this matter to SOAH, requesting the assignment of an ALJ to conduct a hearing and issue a Proposal for Decision (PFD), if necessary.

On December 15, 2022, the Water Authority filed a motion to dismiss with prejudice, challenging the appeal and the Commission's jurisdiction over the appeal under Water Code sections 12.013 and 13.043.[2]

On June 23, 2023, the ALJ issued a PFD, finding that the Commission does not have jurisdiction over this proceeding under either statute and recommended granting the motion to dismiss.[3] The Commission adopted the PFD in part and rejected the PFD in part, to the extent that it dismissed the appeal under Water Code section 13.043(f), remanding this proceeding to SOAH for further consideration (Remand Order).[4]

---

[1] Water Authority Motion, Tab B (Rate Order) at 1.

[2] Water Authority Motion at 8 and 9 (Dec. 15, 2022).

[3] Proposal for Decision at 1 (Jun. 23, 2023) (Initial PFD).

[4] Order Remanding Proceeding at 5 (Nov. 1, 2023) (Remand Order).

A prehearing conference convened on December 5, 2023. Following the prehearing conference, all parties timely filed briefs on the sole issue on remand: whether the Commission has jurisdiction under Water Code section 13.043(f). The record closed on February 20, 2024, with the submission of response briefs.

## II.    THE MEANING OF SERVICE

Water Code section 13.043(f) provides that a retail public utility "that receives water or sewer service" from a political subdivision may appeal to the Commission a decision of the service provider affecting the amount paid for water service.[5]

The dispute focuses on whether Fulshear receives water service from the Water Authority.

As applicable here, the Water Code defines "service" as any act performed, anything furnished or supplied, and any facilities or lines committed or used by a retail public utility in the performance of its duties under this chapter to other retail public utilities.[6] A retail public utility includes a political subdivision that operates, maintains, or controls facilities for providing potable water service for

---

[5] Water Code section 12.013(a) gives the Commission authority to fix rates for the furnishing of raw or treated water for any purpose mentioned in Chapters 11 or 12 of the Water Code. The Commission adopted the PFD's finding that the Commission does not have jurisdiction over this appeal under 12.013.

[6] Tex. Water Code § 13.002(21).

compensation.[7] Fulshear is a retail public utility.[8] The Water Authority is a political subdivision.[9]

The initial PFD relied on the *Crystal Clear* standard to find that the Water Authority did not provide service to Fulshear. In *Crystal Clear*, the phrase "receives water service" relates to whether a utility was actively supplying water to the property, whether there were particular facilities or lines committed to serving the property, and whether there are any water supply lines dedicated to meeting the future demand from the property.[10] The Commission rejected the application of *Crystal Clear*'s definition of service, distinguishing it on grounds that *Crystal Clear* addressed an application for streamlined expedited release, whereas the instant proceeding is an appeal involving rates.[11] The Commission determined that there is sufficient guidance from the Water Code's definition of "service" to determine whether Fulshear receives water service from the Water Authority.[12]

---

[7] Tex. Water Code § 13.002(19).

[8] Petition by the City of Fulshear Appealing the Decision of North Fort Bend Water Authority Affecting the Amount Paid for Water Service at 1 (Mar. 16, 2022) (Petition).

[9] Initial PFD at 3.

[10] Initial PFD at 14

[11] Remand Order at 4, referencing *Tex. Gen. Land Off. v. Crystal Clear Water Supply Corp.*, 449 S.W.3d 130 (Tex. App.—Austin 2014, pet. denied). In *Crystal Clear*, the Texas Third Court of Appeals held that whether the retail public utility provided water service to the owner of the tract of land seeking decertification is a fact-based inquiry regarding whether the retail public utility has facilities or lines committed to providing water to the particular tract of land or has performed acts or supplied anything to that tract in furtherance of its obligation to provide water to that tract under its certificate of convenience and necessity.

[12] Remand Order at 4.

## III. DISCUSSION

### A. BACKGROUND

As discussed more fully in the initial PFD, the Water Authority has developed a strategy to comply with the regulations set by the Fort Bend Subsidence District (Subsidence District).[13] The goal is to reduce groundwater use, and thereby subsidence, and convert users to surface water. To that end, groundwater users within the Water Authority's territory are subject to the Subsidence District's disincentive fee, otherwise known as the groundwater reduction plan (GRP) fee, limiting pumpage to a percentage of their total water demand.[14] This GRP fee is separate from the Surface Water fee, which is based on the actual amount of water a customer receives.[15] The City of Fulshear, along with other GRP participants, pays the GRP fee to collectively comply with relevant regulatory requirements; it does not pay the Surface Water fee because it does not receive actual water from the Water Authority.[16]

### B. ARGUMENTS

No party contends that Fulshear in fact receives water from the Water Authority. Thus, the parties' arguments focus on whether Fulshear receives water service from the Water Authority by some other theory.

---

[13] Initial PFD at 3.

[14] Initial PFD at 3.

[15] Initial PFD at 7.

[16] Initial PFD at 7.

The Water Authority contends that the definition of service does not support Fulshear's assertion that it receives water service from the Water Authority.[17] Because Fulshear neither currently receives actual water from the Water Authority, nor does the Water Authority have any facilities or lines committed to serving Fulshear, the Water Authority argues that it does not provide water service to Fulshear and, thus, the Commission does not have jurisdiction over the petition.[18]

Fulshear argues for an expansive view of the definition of "service," tied to the GRP fee.[19] First, it argues that achieving collective compliance (along with the other GRP participants), through the GRP fee, is the "water service" the Water Authority provides to Fulshear .[20] It states that, even if it never receives surface water from the Water Authority, it nevertheless receives "water service" from the Water Authority because of the service the Water Authority provides to the GRP participants as a collective in achieving compliance goals.[21]

---

[17] Initial Post-Remand Brief of Respondent North Fort Bend Water Authority at 10-20 (Jan. 29, 2024) (Water Authority Remand Initial Brief). Additionally, the Water Authority argues that uses the doctrine of *in pari materia* to argue that the analysis should include reading the defined term "service" with that of "furnish" in Water Code § 12.013(a), but the ALJ declines this application, focusing only on an analysis of the term "service," as requested by the Commission. *See* Water Authority Remand Initial Brief at 12-14.

[18] Reply of North Fort Bend Water Authority to Initial Post-Remand Brief of the City of Fulshear at 9-10 (9-11) (Water Authority Remand Reply Brief).

[19] City of Fulshear's Reply Brief on Preliminary Order Issue No. 10.a. at 5-6. (Feb. 20, 2024) (Fulshear Remand Reply Brief).

[20] Fulshear Remand Initial Brief at 3.

[21] Fulshear Remand Initial Brief at 7-8.

Next, Fulshear argues that "water service" begins with the obligation to pay for the construction of the facilities, not with the actual delivery of water.[22] Because the GRP fee, at least in part, funds the construction of infrastructure that will eventually provide surface water to Fulshear, it argues that it is an affirmative step in the direction of receiving water service and should be sufficient to confer jurisdiction upon the Commission over this proceeding.[23] Since Fulshear has a contract with the Water Authority for the eventual receipt of water, it argues that it is already receiving water service.[24]

Staff makes similar arguments.[25] It posits that, although Fulshear is not receiving water service in the form of water conveyed to Fulshear, it is receiving water service from the Water Authority from its steps taken in developing a water system to eventually deliver water to Fulshear.[26]

The Water Authority disputes that paying the GRP fee constitutes receiving water service.[27] It notes that the Surface Water fee compensates the Water Authority

---

[22] City of Fulshear's Initial Brief on Preliminary Order Issue No. 10 at 7 (Jan. 29, 2024) (Fulshear Remand Initial Brief).

[23] Fulshear Remand Reply Brief at 2-3.

[24] Fulshear Remand Initial Brief at 6.

[25] Commission Staff's Reply Brief on Preliminary Order Issue No. 10A at 1 and 4 (Feb. 20, 2024) (Staff Remand Reply Brief).

[26] Staff Remand Reply Brief at 1.

[27] Water Authority Remand Initial Brief at 17.

for actual water received by customers, while the GRP fee penalizes customers for surpassing a water withdrawal threshold.[28]

While conceding that revenue from the GRP fee might be used with other funds (such as *ad valorem* taxes or impact fees) to pay for the design and construction of infrastructure that would eventually serve its GRP participants, including Fulshear, that action, the Water Authority argues, is not sufficient to confer jurisdiction onto the Commission.[29]

## C.    ANALYSIS

"Service" means any act performed, anything furnished or supplied, and any facilities or lines committed or used by a retail public utility in the performance of its duties under this chapter to its patrons, employees, other retail public utilities, and the public, as well as the interchange of facilities between two or more retail public utilities.[30] Thus, the ALJ examines whether Water Authority may be viewed as providing water service to Fulshear by any of the following acts:

1. any act performed,
2. anything furnished or supplied, or

---

[28] Water Authority Remand Reply Brief at 6-7.

[29] Water Authority Remand Reply Brief at 11.

[30] Tex. Water Code § 13.002(21). The definition further clarifies that the scope of the duties retail public utility is limited to those under Chapter 13, namely, providing potable water service. *See* Tex. Water Code § 13.002(20)("retail public utility" includes a political subdivision that provides potable water service for compensation).

3. any facilities or lines committed or used by a retail public utility in the performance of its duties.

The parties agree that Fulshear does not receive actual water from the Water Authority, supporting a finding that the Water Authority does not "furnish" or "supply" water to Fulshear. Thus, the question becomes whether Fulshear receives water service from the Water Authority under any other component in the definition of the term "service."

Fulshear does not dispute that that the Water Authority does not have any existing "facilities or lines committed to or used" in providing water. However, Fulshear argues that "water service" began with Fulshear's obligation to pay for the construction of the facilities. Fulshear argues that the Water Authority is paying for the construction of the facilities by paying the GRP fee. The Water Authority disputes that service begins with the *obligation* to pay for facilities. The Water Authority argues that the analysis ends with the fact that the Water Authority does not currently have any facilities or lines committed to providing actual water to Fulshear.

The ALJ agrees with the Water Authority. The plain meaning of "any facilities or lines committed or used" is not broad enough to encompass a mere obligation to pay for facilities or lines. The reference to "any facilities or lines committed or used" indicates infrastructure that currently exists, or in ratemaking terms, used and useful. There are undoubtedly many steps approaching the provision of service. The statute draws the line at those facilities or lines being

committed. A financial obligation for those lines and facilities in the future is too removed from committing those lines and facilities in the performance of its duties under Chapter 13. Thus, the ALJ finds that the Water Authority does not have any facilities or lines committed to or used in providing water service to Fulshear.

Finally, the ALJ considers whether "any act performed" by the Water Authority can be construed as providing water service. Fulshear again references its payment of the GRP fee to show that it receives water service from the Water Authority.

The ALJ previously rejected Fulshear's arguments that the GRP fee is the provision of water service[31] and rejects it again here. The GRP fee is a regulatory fee based on the amount of groundwater pumped in exchange for complying, as a collective, with relevant regulations. The GRP fee penalizes a customer for water drawn by a customer over a certain threshold under the groundwater reduction plan, while a rate is compensation paid for water service.[32] This is different from a rate, the Surface Water fee, paid for water received by a customer, which Fulshear acknowledges that it does not pay.

Moreover, a plain reading of the statute does not support Fulshear's argument that, even in the absence of receiving water, it nevertheless receives water service by paying the GRP fee in the form of collective compliance with regulatory

---

[31] Initial PFD at 19-20.

[32] Initial PFD at 19-20.

requirements. The acts performed by a retail public utility that constitute service must be in the performance of its duties under Chapter 13. A retail public utility provides potable water service for compensation. Paying a fee to collectively comply with other GRP participants is not the same as paying a fee to the Water Authority for potable water received. Thus, the ALJ concludes that payment of the GRP fee does not constitute compensation for water service.

Under an analysis of the statutory definition of the term "service," there is no basis for finding that Fulshear receives water service from the Water Authority. Thus, the ALJ finds that Fulshear does not receive water service from the Water Authority. Accordingly, the ALJ concludes that the Commission does not have jurisdiction over this proceeding under Water Code section 13.043(f) and recommends dismissal of the petition for lack of jurisdiction.

In support of this recommendation, the ALJ makes the following findings of fact and conclusions of law.

## IV. FINDINGS OF FACT

*The Parties*

1. The North Fort Bend Water Authority (Water Authority) is a political subdivision that functions as a retail public utility.

2. The City of Fulshear (Fulshear) is a city that owns and operates non-exempt wells within the Water Authority's service territory.

*Fees*

3.  The Water Authority charges three types of fees: the GRP Fee, the Surface Water Fee, and the Imported Water Fee.

4.  The Water Authority has two classes of customers: those subject to the Groundwater Reduction Plan (GRP) by virtue of their location within the Water Authority's territory, and those subject to the GRP by contract. Fulshear is subject to the GRP by virtue of its location.

5.  The GRP Fee penalizes customers for surpassing a water withdrawal threshold to disincentivize groundwater use.

6.  The GRP Fee, in part, funds the construction of infrastructure that will eventually provide surface water to Fulshear.

7.  The Surface Water Fee is based on the actual amount of water a customer receives.

8.  Fulshear does not receive actual water from the Water Authority.

9.  Fulshear does not pay Surface Water Fees to the Water Authority.

*Ordinance Setting Rates Being Appealed*

10. On December 16, 2021, the Water Authority approved an Amended Rate Order (Rate Order), enacting new rates for the GRP Fee, the Surface Water Fee, and the Imported Water Fee, effective January 1, 2022.

*The Appeal*

11. Within 90 days of the approval of the Rate Order, on March 16, 2022, Fulshear filed a petition appealing the Water Authority's new fees (Petition) with the Public Utility Commission of Texas (Commission).

12. Fulshear appeals changes to the GRP Fee and the Surface Water Fee.

13. On June 22, 2022, the Commission Administrative Law Judge (ALJ) found the Petition sufficient.

## Referral to SOAH

14. On August 24, 2022, the Commission referred this case to the State Office of Administrative Hearings (SOAH).

## Water Authority's Motion to Dismiss

15. On December 15, 2022, the Water Authority filed a Motion to Dismiss (Motion).

16. Fulshear and Staff filed responses to the Motion on December 15, 2022, and all parties filed replies on February 27, 2023.

17. On April 27, 2023, SOAH Order No. 7 notified the parties that the ALJ granted the Water Authority's Motion and that a Proposal for Decision (PFD) would be forthcoming.

18. On May 9, 2023, SOAH Order No. 8 abated the proceeding pending the issuance of the PFD.

19. On November 1, 2023, the Commission adopted the PFD in part and rejected it in part, remanding the balance of the proceeding to SOAH for further processing.

20. SOAH Order No. 11 set a schedule for parties to file briefs on the remaining issues.

21. SOAH Order No. 12 admitted evidence and granted a motion to extend the time for parties to file briefs.

22. Fulshear does not pay Surface Water Fees.

23. Fulshear does not pay for water service from the Water Authority.

24. Fulshear does not receive water service from the Water Authority: the Water Authority does not have any water lines serving Fulshear, and the Water Authority has not committed lines or facilities to specifically providing water service to Fulshear.

## V. CONCLUSIONS OF LAW

1. A retail public utility that receives water service from another retail public utility or political subdivision of the state, may appeal to the utility commission a decision of the provider of water or sewer service affecting the amount paid for water or sewer service. Texas Water Code § 13.043(f).

2. The Water Authority is a political subdivision operating as a retail public utility. Texas Water Code § 13.002(16).

3. Fulshear is a municipality operating as a retail public utility. Texas Water Code § 13.002(19).

4. This docket was processed in accordance with the requirements of the Texas Water Code and Commission rules.

5. SOAH has jurisdiction to conduct a hearing on the merits and issue a PFD with findings of fact and conclusions of law for this proceeding. Tex. Gov't Code § 2003.049.

6. This appeal was timely filed with the Commission and the Water Authority. Texas Water Code § 13.043(f); 16 Tex. Admin. Code § 24.101(f).

7. "Service" means any act performed, anything furnished or supplied, and any facilities or lines committed or used by a retail public utility in the performance of its duties under this chapter to other retail public utilities, as well as the interchange of facilities between two or more retail public utilities. Texas Water Code § 13.002(21).

8. Fulshear does not receive water service from the Water Authority under Texas Water Code section 13.043(f).

9. The Water Authority did not make a decision affecting the amount Fulshear pays for water service.

10. The Commission does not have jurisdiction under Texas Water Code section 13.043(f).

11.  The Petition fails to state a claim for which relief can be granted. 16 Tex. Admin. Code § 22.181(d)(1) and (8).

12.  SOAH has jurisdiction to dismiss all issues within a proceeding and issue a PFD. 16 Tex. Admin. Code §§ 22.181(f)(2), .261.

13.  The Petition does not invoke the Commission's jurisdiction under Texas Water Code sections 12.013(a) or 13.043(f) and fails to state a claim for which relief can be granted. 16 Tex. Admin. Code sections 22.181(d)(1) and (8).

## II.  PROPOSED ORDERING PARAGRAPHS

1.  The petition is dismissed.

2.  The Commission denies all other motions and any other requests for general or specific relief that the Commission has not expressly granted.

**Signed April 4, 2024**

_____
Rachelle Nicolette Robles,
Administrative Law Judge

| PETITION BY THE CITY OF | § | PUBLIC UTILITY COMMISSION |
|---|---|---|
| FULSHEAR APPEALING THE | § | |
| DECISION OF NORTH FORT BEND | § | OF TEXAS |
| WATER AUTHORITY TO INCREASE | § | |
| GROUNDWATER REDUCTION PLAN | § | |
| AND SURFACE WATER FEES | § | |

## THE CITY OF FULSHEAR'S MOTION FOR REHEARING

The City of Fulshear (Fulshear) files the following motion for rehearing of the Commission's Order in this docket signed on May 23, 2024. Pursuant to Texas Government Code § 2001.146 and 16 TAC § 22.254(a), the deadline for filing a motion for rehearing is due not later than the 25th day after the date the order was signed, which is June 17, 2024. This motion, therefore, is timely filed.

### I.     Introduction

On March 16, 2022, Fulshear filed a petition appealing the "GRP Fee" charged Fulshear by the North Fort Bend Water Authority (Water Authority) for every gallon of groundwater pumped from wells permitted to the Water Authority and used by Fulshear to provide retail water service. Fulshear's petition was filed pursuant to Texas Water Code § 13.043(f):

> A retail public utility that receives water or sewer service from another retail public utility or political subdivision of the state, including an affected count, may appeal to the utility commission a decision of the provider of water or sewer service affecting the amount paid for water or sewer service.

The Commission divided the appeal into two phases,[1] with the first phase to determine whether the Commission has jurisdiction to hear the appeal, and the second phase to review the merits of the appeal. On August 24, 2022, the Commission referred Phase One to SOAH.[2]

On June 23, 2023, the SOAH ALJ filed a proposal for decision granting the Water Authority's motion to dismiss finding that the Commission lacked jurisdiction because Fulshear did not receive surface water from the Water Authority.[3] On November 1, 2023, the Commission

---

[1] Preliminary Order on Phase One (Aug. 23, 2022).
[2] Order of Referral (Aug. 24, 2022).
[3] Proposal for Decision (June 23, 2023).

overturned the ALJ's decision with regard to jurisdiction under Texas Water Code § 13.043(f) on the basis that the ALJ applied the wrong legal analysis and remanded the matter back to SOAH.[4]

The matter was heard by the SOAH ALJ on remand through briefing based on stipulated facts and evidence. On April 4, 2024, the ALJ entered a proposal for decision on remand again recommending dismissal for lack of jurisdiction.[5] The basis for the ALJ's recommendation was that Fulshear does not receive "water service" from the Water Authority because the GRP Fee (unlike the Water Authority's Surface Water Fee) is a regulatory fee paid to the Water Authority to allow Fulshear to achieve compliance with Fort Bend Subsidence District's groundwater reductions requirements.[6] The ALJ based her conclusion on that GRP Fee is the same as the Subsidence District's disincentive fee. Both Fulshear and the Water Authority filed exceptions noting that the GRP Fee is not the same as the Subsidence District's disincentive fee.[7] On May 20, 2024, the ALJ filed an exceptions letter changing the conclusion in the narrative that the GRP Fee is equivalent of the Subsidence District's disincentive fee and amending Finding of Fact No. 5.[8]

On May 23, 2024, the Commission entered its final order in this proceeding.[9] The Commission filed no proposed order or Commissioner memorandum after receipt of the ALJ's exceptions letter. In the Order, the Commission modified the PFD to make non-substantive changes, and modified Finding of Fact No. 5, but made no reference to the ALJ's modification. In the Order the Commission agreed that it lacks jurisdiction to hear the appeal because "Fulshear does not receive water service from the Water Authority under Texas Water Code § 13.043(f).

## II.     Points of Error

### A.     Point of Error No. 1

**The Commission erred in concluding that Fulshear does not receive water service from the Water Authority.**

The Commission has jurisdiction under Texas Water Code § 13.043(f) to hear appeals from retail public utilities, such as Fulshear, who receive water service from another retail public utility

---

[4] Order Remanding Proceeding (Nov. 1, 2023).
[5] Proposal for Decision on Remand (April 4, 2024).
[6] *Id.*
[7] NFBWA's Exceptions to the PFD on Remand at 4-5 (May 1, 2024); Fulshear's Exceptions to the PFD on Remand (May 1, 2024).
[8] SOAH's Exceptions Letter (May 20, 2024).
[9] Order (May 23, 2024).

or political subdivision, such as the Authority, regarding decisions of the provider of water service affecting the amount paid for water service. "Water service" as used in Texas Water Code § 13.043(f) is not defined, but "service" is defined by Chapter 13 as "any act performed, anything furnished or supplied, and any facilities or lines committed or used *by a retail public utility in performance of its duties under this chapter.*"[10]

Contrary to the Commission's finding, the uncontroverted facts in the record demonstrate that Fulshear receives water service from the Water Authority.[11] Fulshear receives this service in three distinct ways: (1) Fulshear receives "water service" from the Water Authority in the form of the groundwater that the Water Authority allows Fulshear to pump from wells permitted to the Water Authority, for which Fulshear pays the GRP Fee; (2) Fulshear receives "water service" from the Water Authority in the form of the surface water system being constructed by the Water Authority to ultimately provide surface water to Fulshear and the commitment of those surface water supplies to serve Fulshear; for which Fulshear pays the GRP Fee (which is used to pay for the water system and to secure the Water Authority's bonds); and (3) Fulshear, as well as all the other GRP Participants (those using only groundwater and those receiving surface water), receive "water service" from the Authority in the form of the surface water supply system used to satisfy the GRP Participants' collective obligation to reduce groundwater production to comply with Subsidence District rules for which the GRP Participants pay the GRP Fee and the Surface Water Fee. Each and all of these services that Fulshear receives from the Water Authority constitute "water service" for purposes of Texas Water Code § 13.043(f).

It is unquestioned that Fulshear obtains all of its drinking water from groundwater wells permitted to and controlled by the Water Authority. To obtain water from these wells, Fulshear pays the Water Authority $4.55 per thousand gallons for all water pumped from the wells. Having all GRP Participants pay for all water use is consistent with the structure of the Water Authority, which controls all of the water used by the GRP Participants (including Fulshear) to provide retail water utility service within their service areas, regardless of whether the water originates as groundwater produced from GRP Participant wells, surface water provided by the Water Authority, or other water acquired by a GRP Participant.

---

[10] Tex. Water Code § 13.002(21) (emphasis added).
[11] The facts supporting Fulshear's motion are summarized in Fulshear's Initial Brief on Preliminary Order Issue 10a at 4-6 (Jan. 31, 2024)

If the fact that the Water Authority charges Fulshear for water pumped from Water Authority permitted wells is not sufficient to demonstrate that Fulshear receives "water service" from the Water Authority, then the fact that Fulshear is paying the Water Authority to build a surface water system to deliver surface water to Fulshear should be sufficient to make this demonstration. The Order clearly recognizes that "GRP fee, in part, funds the construction of infrastructure that will eventually provide surface water to Fulshear."[12] This finding unquestionably demonstrates that the Water Authority has committed lines and facilities for providing surface water to Fulshear. The facts conclusively show that the Water Authority planned, designed, and built a portion of its existing facilities to have sufficient capacity to serve Fulshear once the system is extended far enough to reach Fulshear, and that Fulshear is paying its share of the costs of the construction of these facilities through its payment of the GRP Fee. The Water Code does not define "committed," but the dictionary defines the term as "having made a pledge or commitment." The Water Authority has made a commitment to provide Fulshear with surface water once the system reaches Fulshear, has reserved capacity in its existing and future facilities to provide the surface water to Fulshear, and has received millions of dollars in payment from Fulshear in return. Clearly, the Water Authority has facilities "committed" to provide service to Fulshear, and Fulshear is, consequently, receiving "water service" from the Water Authority.

Finally, it is unquestioned that the GRP Participants (all entities subject to the Water Authority's statutory reach) collectively are receiving water service from the Water Authority. As a part of that collective, Fulshear is receiving "water service "from the Water Authority just like all of the other GRP Participants.

The primary purpose of the Water Authority is to provide the GRP Participants with an alternative source of water so that the GRP Participants collectively can reduce their groundwater pumping. The Water Authority accomplishes this purpose by purchasing water at wholesale from the City of Houston and transporting it to the GRP Participants who each pay essentially the same rate for water. The only difference between the GRP Fee and the Surface Water Fee is the $0.35 per thousand gallons, which is intended to credit those paying the GRP Fee for their costs in producing the groundwater supplied by the Water Authority. The "water service" provided to the entities paying the Surface Water Fee is the same "water service" provided to the entities paying the GRP Fee. Fulshear is receiving this water service from the Water Authority, and the changes

---

[12] Order, Finding of Fact No. 6.

to the GRP Fee, the Surface Water Fee, and the Imported Water Fee made by the Water Authority's December 16, 2021, order affected the amount paid by Fulshear for water service.

For the reasons set out above, the Commission erred in concluding that Fulshear does not receive water service from the Water Authority under Texas Water Code § 13.043(f).

**B.      Point of Error No. 2**

**The Commission's Order is arbitrary and capricious because the order fails to set out a rational connection between the facts and the decision.**

An administrative order is arbitrary if it is made without regard for the facts, relies on fact findings that are not supported by any evidence, or lacks a rational connection between the facts and the decision.[13] In other words, an administrative order is arbitrary if the agency has not "genuinely engaged in reasoned decision-making."[14] The Commission' Order in this docket is arbitrary because it lacks a rational connection between the facts and the decision. The Commission fails to explain how it reached the conclusion that Fulshear is not receiving "water service" from the Water Authority.

The facts in this case are not disputed. The Water Authority supplies Fulshear with groundwater produced from wells permitted to the Water Authority. The Water Authority is building a surface water supply system to supply Fulshear (and the other GRP Participants) with a surface water alternative to groundwater. Fulshear does not yet receive surface water from the Water Authority, but based on the Water Authority's own planning documents, Fulshear should begin receiving surface water in the near future. In return for these "services," Fulshear pays the GRP Fee to the Water Authority. Do these services constitute "water service" as used in Texas Water Code § 13.043(f)? The Commission, in its Order, concludes that they do not, but the Commission offers no explanation of how it reached that conclusion.

The SOAH ALJ concluded that the services provided by the Water Authority did not constitute water service based on the ALJ's conclusion that the GRP Fee was the same as the Subsidence District's disincentive fee, and that the GRP Fee was not a charge for water service, but that it was a charge to coerce reductions in pumping.[15] The ALJ, however, after reviewing the

---

[13] *CPS Energy v. Public Util. Comm'n*, 537 S.W.3d 157, 168-169 (Tex. App. Austin 2017) (analyzing cases), *rev'd on other grounds*, 593 S.W.3d 291 (Tex. 2019).
[14] *Id.* (quoting *Starr Cty. v. Starr Indus. Servs., Inc.*, 584 S.W.2d 352, 356 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.)).[14]
[15] PFD on Remand at 10.

exceptions filed by Fulshear and the Water Authority, changed her analysis to conclude that the GRP Fee is not a penalty, but that it is a fee to "achieve collective compliance with the groundwater reduction requirements" of the Subsidence District.[16]

This change in analysis undermines the rational for finding that Fulshear does not obtain water service from the Water Authority because the manner in which the Water Authority "achieves collective compliance" with the reduction requirements is by providing surface water to the GRP Participants collectively. In other words, the ALJ's revised position is that Fulshear still does not receive water service but instead receives another service (collective compliance) that just happens to involve the provision of water. The ALJ's revised position is simply semantics -- calling water service by another name does not change the nature of the service.[17] Would calling the service provided to retail customers "dehydration prevention service" allow a utilities to avoid the Commission's rate regulation? The SOAH Exceptions Letter provides no rational basis between the facts and the Commission's Order.

Another potential basis for the Commission's conclusion is that Fulshear does not receive water service because it does not receive actual surface water from the Water Authority. As explained in Point of Error No. 1, however, Fulshear receives water service from the Water Authority in the form of groundwater, the development and commitment of a surface water system to serve Fulshear, and a part of the collective that receives surface water from the Water Authority.

The final basis that might support the Commission's Order is that the service proved by the Water Authority is not performed by a retail public utility as part of a duty under Chapter 13 of the Water Code.[18] As explained in detail in Fulshear's Replies to Exceptions to the PFD on Remand, the definition of "service" in Texas Water Code § 13.002(21), which applies to retail service, cannot directly control the definition of "water service" in Texas Water Code § 13.043(f), which applies to wholesale service.[19] It cannot directly apply because otherwise the definition of "service" would render § 13.043(f) meaningless. No retail public utility as a "duty" to provide wholesale service under Chapter 13, which only imposes duties on retail service. Moreover, the

---

[16] SOAH Exceptions Letter at 2.
[17] The other issue raised by the change in the analysis is whether the Commission has the jurisdiction to hear an appeal brought by an entity paying the Surface Water Fee. Entities paying the Surface Water Fee and the GRP Fee receive the exact same service ("collective compliance") but do only those entities paying the Surface Water Fee have the right to appeal the rate to the Commission?
[18] PFD on Remand at 13.
[19] Fulshear Replies to Exceptions to the PFD on Remand at 2-3 (May 8, 2024).

definition of "service" only applies to "retail public utilities," while § 13.043(f) applies to both "retail public utilities" as well as "political subdivisions of the state." If "water service" in § 13.043(f) is controlled by the definition of "service" in § 13.002(21) then the Commission has no jurisdiction to review wholesale rates, particularly wholesale rates charged by political subdivisions, which would render § 13.043(f) meaningless.[20] The Commission must avoid adopting an interpretation that "renders any part of the statute meaningless."[21]

As explained herein, the Commission has failed to articulate a rational connection between the facts and its conclusion that Fulshear does not receive water service from the Water Authority. Not only does this failure provide a basis for a court to overturn the Commission's Order, but it also represents the loss of an opportunity for the Commission to clarify the scope of its appellate jurisdiction. When possible, the Commission should provide the regulated community with a clear picture of the Commission's view of its jurisdiction. If the Commission's position is that a wholesale purchaser has to be receiving water (instead of merely paying for it) before the Commission has jurisdiction, the Commission should make that clear. If the Commission's position is that it has no jurisdiction to hear an appeal from any GRP Participant (GRP Fee or Surface Water Fee), the Commission should make that clear. By providing clarity, the Commission might minimize future appeals and minimize the waste of resource associated therewith.

### III. CONCLUSION AND PRAYER

The Commission erred in concluding that Fulshear does not receive water service from the Water Authority. Fulshear receives such service through the groundwater provided to Fulshear from wells permitted to the Water Authority, through the Water Authority's commitment of facilities to provide Fulshear with surface water in the future, and as a GRP Participant who collectively receive water service from the Water Authority.

The Commission further erred in failing to articulate a rational link between the facts in the record (and in the Order) and the Commission's conclusion that Fulshear does not receive

---

[20] Under a literal application of the definition of "service" to Texas Water Code § 13.043(f), the Commission would have lacked jurisdiction over North Texas Municipal Water District in Docket No. 46662 because the District is not a retail public utility and had no duty to provide water under Chapter 13.
[21] *City of Dallas v. TCI W. End, Inc.*, 463 S.W.3d 53, 55 (Tex. 2015)

water service. Without such a link, neither Fulshear, other GRP Participants, or a reviewing court can know whether the Commission's conclusion is supported by law and fact.

Fulshear respectfully requests that the Commission grant rehearing and enter a revised order determining that, as a matter of law based on the facts in the record, that the Commission has authority under Texas Water Code § 13.043(f) to decide Fulshear's petition. Fulshear further requests that Commission request lists of issues from the parties and prepare a supplemental preliminary order to scope phase two of this proceeding.

**Filed: June 17, 2024**

Respectfully submitted,

C. Joe Freeland
State Bar No. 07417500
**Mathews & Freeland, LLP**
8140 N. MoPac Expy, Ste 4-240
Austin, Texas 78759
Telephone (512) 404-7800
Facsimile (512) 703-2785
jfreeland@mandf.com

ATTORNEYS FOR THE
CITY OF FULSHEAR

## CERTIFICATE OF SERVICE

I certify that, unless otherwise ordered by the presiding officer, notice of the filing of this document was provided to all parties of record via electronic mail on June 17, 2024, in accordance with the Orders Suspending Rules filed in Project No. 50664.

C. Joe Freeland

# Fort Bend Subsidence District

301 Jackson St. Suite 639 - Richmond, TX 77469
www.fbsubsidence.org
281-342-3273


**FORT BEND
SUBSIDENCE DISTRICT**

## WATER WELL PERMIT

October 06, 2022

**I. PERMITTEE:**
North Ft. Bend Water Authority
Contact: Brown & Gay Engineers
10777 Westheimer, Ste. 400
Houston, TX 77042

**PERMIT NO.:** W2022-107-29287-0

**II. LOCATION OF WELL:**

LATITUDE: 29.66666600

LONGITUDE: -95.63472200

**III. WELL NO.:** 493      Well Owner: Fulshear, City of

The authorized withdrawal below is the TOTAL COMBINED amount that may be withdrawn from the following wells:

147, 353, 723, 912, 932, 938, 1029, 1116, 1122, 1148, 1154, 1238, 1273, 1296, 1363, 1389, 1395, 1481, 1507, 1611, 1910, 2003, 2185, 2341, 148, 235, 244, 724, 780, 884, 910, 939, 1027, 1088, 1158, 1178, 1181, 1187, 1213, 1239, 1245, 1248, 1271, 1274, 1303, 1306, 1361, 1390, 1422, 1491, 1511, 1576, 1579, 1612, 1978, 2100, 2103, 2126, 2135, 2433, 251, 738, 744, 827, 926, 929, 1046, 1052, 1075, 1107, 1142, 1171, 1226, 1316, 1380, 1406, 1533, 1753, 1901, 1936, 2335, 245, 248, 824, 911, 1037, 1101, 1127, 1130, 1153, 1188, 1252, 1275, 1278, 1281, 1304, 1307, 1336, 1339, 1394, 1518, 1550, 1577, 1580, 1982, 1985, 2072, 2104, 2262, 243, 493, 825, 828, 886, 918, 976, 979, 1038, 1128, 1157, 1247, 1276, 1282, 1465, 1519, 1522, 1525, 1931, 1954, 2079, 2137, 2289, 2353, 247, 250, 823, 887, 925, 980, 1074, 1106, 1138, 1222, 1286, 1503, 1523, 1691, 108, 538, 686, 716, 743, 839, 905, 937, 999, 1022, 1028, 1060, 1115, 1118, 1150, 1205, 1231, 1237, 1263, 1295, 1301, 1321, 1388, 1411, 1544, 1637, 1851, 2057, 171, 380, 505, 718, 865, 927, 956, 1047, 1114, 1137, 1143, 1175, 1236, 1291, 1323, 1352, 1413, 1531, 1850, 2056, 2365, 2391, 2488, 107, 2439, 2188

**IV. PERMIT TERM:**   October 01, 2022    **THROUGH**   September 30, 2023

**V. AUTHORIZED WITHDRAWAL:**

Only that which is required without being wasteful during the permit term, but not to exceed 11,500.00 million gallons (combined total for all wells listed above).

Any pumpage in excess of the amount authorized in this permit is a violation of the District's rules. Applications for an amendment to increase authorized withdrawal must be submitted prior to exceeding the permitted amount.

**VI. SPECIAL PROVISIONS:**

D1, E, G1, M, O

SUBJECT TO CONDITIONS AND REQUIREMENT ON ATTACHED PAGE
APPROVED THIS 24 DAY OF August 2022
Fort Bend Subsidence District

BY: _(signature)_

General Manager

NFBWA000312

APPENDIX 2 - TAB H

# Fort Bend Subsidence District

301 Jackson St. Suite 639 - Richmond, TX 77469
www.fbsubsidence.org
281-342-3273



## WATER WELL PERMIT

October 06, 2022

**PERMIT NO.:**  W2022-107-29287-0

### SPECIAL PROVISIONS FOR PERMIT

PROV-G1     This permit is exempt from disincentive permit fees based on and subject to the permittee's continued compliance with the requirements and provisions outlined in its groundwater reduction plan certified by the Board of Directors on ___. The permittee shall timely achieve the implementation actions, milestones, and other requirements set forth in its groundwater reduction plan. Any change in the plan with respect to the amount or source of surface water or in the timing of reduction of groundwater shall be filed with the District for its approval in the form of an amendment to the GRP. The permittee shall submit any required progress reports in a form that adequately addresses the projects that have been undertaken to timely reduce its use of groundwater in accordance with its GRP.

PROV-E     AUTHORIZED WITHDRAWAL is the total aggregate allocation for all wells.

PROV-D1     On January 9, 2013 the Board of Directors of the Subsidence District adopted the 2013 District Regulatory Plan. There have been significant changes between the 1999 and the 2013 District Plans. As a result, some of the changes may directly affect you. You can obtain a copy of the 2013 District Plan at our web site www.subsidence.org. If you have any questions or if you do not have access to the Internet, you can contact the Subsidence Districts office.

PROV-O     The permittee shall furnish the District with proof that the meter is installed according to the manufacturers specifications or a certified affidavit confirming the accuracy of the water meter in accordance with Rule 8.5 of the Rules of the District, on or before __

PROV-M     Within sixty days of the beginning of the permit term, the permittee shall furnish the District with proof that the meter is installed according to the manufacturers specifications or a certified affidavit confirming the accuracy of the water meter in accordance with Rule 8.5 of the Rules of the District.

NFBWA000313

# Fort Bend Subsidence District

301 Jackson St. Suite 639 - Richmond, TX 77469
www.fbsubsidence.org
281-342-3273



**FORT BEND
SUBSIDENCE DISTRICT**

# WATER WELL PERMIT

October 06, 2022

**PERMIT NO.:** W2022-107-29287-0

**CONDITIONS AND REQUIREMENTS**

a.      This permit is granted in accordance with the provisions of Chapter 8834, and the rules and orders of the District, and acceptance of this permit constitutes an acknowledgment and agreement that the permittee will comply with Chapter 8834, all the terms, provisions, conditions, requirements, limitations, and restrictions embodied in this permit and with the rules, regulations, and orders of the District.

b.      This permit confers no vested rights in the holder, and it may be revoked or suspended, or its terms may be modified or amended pursuant to the provisions of Chapter 8834. Any person who becomes the owner of a permitted well must notify the District of the name and contact information for the new owner within 90 calendar days from the date of the change in ownership.

c.      The operation of the well for the authorized withdrawal must be conducted in a non- wasteful manner.

d.      Except as provided in Rule 8.2, a water meter must be installed and operated in accordance with Section Eight of the District's Rules.

e.      The permittee must keep accurate records, on a monthly basis, of the amount of groundwater withdrawn and the purpose of the withdrawal, and such records must be provided to the District and available for inspection by District representatives. If a meter is required, the meter must be read, and the meter reading and actual amount of pumpage recorded each month in accordance with Rule 8.7 of the District's rules. Immediate written notice must be given to the District in the event a withdrawal exceeds the quantity authorized by this permit.

f.      The well site must be accessible to District representatives for inspection, and the permittee agrees to cooperate fully in any reasonable inspection of the well and well site by the District representatives.

g.      The application pursuant to which this permit has been issued is incorporated in this permit, and this permit is granted on the basis of and contingent upon the accuracy of the information supplied in that application and in any amendments to the application. A finding that false information has been supplied is grounds for immediate revocation of the permit. In the event of conflict between the provisions of this permit and the contents of the application, the provisions of this permit shall control.

h.      Violation of this permit's terms, conditions, requirements, or special provisions, including pumping amounts in excess of authorized withdrawal, is punishable by civil penalties as provided by Section 8834.252, Special District Local Laws Code.

i.      Wherever special provisions are inconsistent with other provisions or rules of the District, the special

NFBWA000314

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Greta Duran on behalf of Drew Miller
Bar No. 786857
gduran@kempsmith.com
Envelope ID: 106620382
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Brief of Appellant North Fort Bend Water Authority
Status as of 10/8/2025 4:53 PM CST

Associated Case Party: PUBLIC UTILITY COMMISSION OF TEXAS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jordan Pratt | | Jordan.Pratt@oag.texas.gov | 10/8/2025 4:44:43 PM | SENT |

Associated Case Party: CITY OF FULSHEAR, TEXAS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Clarence Freeland | 7417500 | jfreeland@mandf.com | 10/8/2025 4:44:43 PM | SENT |

Associated Case Party: NORTH FORT BEND WATER AUTHORITY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Andrew Miller | 786857 | Drew.Miller@kempsmith.com | 10/8/2025 4:44:43 PM | SENT |
| Sharnezia Mitchell | | sharnezia.mitchell@kempsmith.com | 10/8/2025 4:44:43 PM | SENT |
| Greta Duran | | greta.duran@kempsmith.com | 10/8/2025 4:44:43 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| David Laurent | | david.laurent@oag.texas.gov | 10/8/2025 4:44:43 PM | SENT |
| Colton Halter | | colton.halter@oag.texas.gov | 10/8/2025 4:44:43 PM | SENT |